Bond Counsel has not opined as to other federal tax consequences of holding the Series 1998 Bonds. However, prospective purchasers should be aware that (i) section 265 of the Code denies a deduction for interest on indebtedness incurred or continued to purchase or carry the Series 1998 Bonds or, in the case of a financial institution, that portion of a holder's interest expense allocated to the Series 1998 Bonds, (ii) with respect to insurance companies subject to the tax imposed by section 831 of the Code, section 832 (b)(5)(B)(1) reduces the deduction for losses incurred by 15 percent of the sum of certain items, including interest on the Series 1998 Bonds, (iii) interest on the Series 1998 Bonds earned by certain foreign corporations doing business in the United States could be subject to a foreign branch profits tax imposed by section 884 of the Code, (iv) passive investment income, including interest on the Series 1998 Bonds, may be subject to federal income taxation under section 1375 of the Code for an S Corporation that has Subchapter C earnings and profits at the close of the taxable year if greater than 25% of the gross receipts of such S Corporation is passive investment income, (v) section 86 of the Code requires recipients of certain Social Security and Railroad Retirement benefits to take into account in determining gross income, receipts or accruals of interest on the Series 1998 Bonds and (vi) receipt of investment income, including interest on the Series 1998 Bonds may, pursuant to Section 32(i) of the Code, disqualify the recipient from obtaining the earned income credit otherwise provided by section 32(a) of the Code.

In the opinion of Bond Counsel, interest on the Series 1998 Bonds and any profit made on the sale thereof are also exempt from Massachusetts personal income taxes and the Series 1998 Bonds are exempt from Massachusetts personal property taxes. Bond Counsel has not opined as to the other Massachusetts tax consequences resulting from holding the Series 1998 Bonds. However, prospective purchasers should be aware that the Series 1998 Bonds are included in the measure of Massachusetts estate and inheritance taxes, and the Series 1998 Bonds and the interest thereon are included in the measure of Massachusetts corporate excise and franchise taxes. Bond Counsel has not opined as to the taxability of the Series 1998 Bonds, their transfer and the income therefrom, including any profit made on the sale thereof, under the laws of states other than the Commonwealth.

For federal and Massachusetts tax purposes, interest includes original issue discount. Original issue discount with respect to the Series 1998 Bonds is equal to the excess, if any, of the stated redemption price at maturity of the Series 1998 Bonds over the initial offering price thereof to the public, excluding underwriters and other intermediaries, at which price a substantial amount of all Series 1998 Bonds with the same maturity were sold. Original issue discount accrues actuarially over the term of the Series 19998 Bonds. Holders should consult their own tax advisers with respect to the computations of original issue discount on such accruals of interest during the period in which any Series 1998 Bond is held.

On the date of delivery of the Series 1998 Bonds, the original purchasers will be furnished with an opinion of Bond Counsel substantially in the form attached hereto as Appendix E-1 - "FORM OF OPINION OF BOND COUNSEL."

## LEGALITY OF SERIES 1998 BONDS FOR INVESTMENT

The Act provides that the Series 1998 Bonds are legal investments in which all public officers and public bodies of the Commonwealth of Massachusetts, its political subdivisions, all municipalities and municipal subdivisions, all insurance companies and associations, including cooperative banks, building and loan associations, investment companies and other fiduciaries may properly and legally invest funds in their control or belonging to them. The Act also provides that the Series 1998 Bonds are securities which may properly and legally be deposited with and received by all public officers and bodies of The Commonwealth of Massachusetts or any agency or political subdivision thereof and all municipalities and public corporations for any purposes for which the deposit of bonds or other obligations of The Commonwealth of Massachusetts is now or may hereafter by authorized by law.

## CONTINUING DISCLOSURE

In order to assist the Underwriter in complying with Rule 15c2-12 promulgated by the Securities and Exchange Commission under the Securities Exchange Act of 1934, as amended ("Rule 15c2-12"), the Institution will undertake in a Continuing Disclosure Agreement dated as of the date of delinquency of the Bonds, (the "Undertaking") between the Institution and the Trustee, for the benefit of the holders of the Series 1998 Bonds, to provide the Trustee certain annual information and notices required to be provided by Rule 15c2-12. The proposed form of the Undertaking is set forth in Appendix F – "Form of Continuing Disclosure Agreement". The Undertaking may be amended or modified with Bondowners' consent under certain circumstances set forth herein. Copies of the Undertaking when executed by the parties thereto upon the delivery of the Series 1998 Bonds will be on file at the principal office of the Trustee. The Issuer has not committed to provide any continuing disclosure to the owners of the Series 1998 Bonds or to any other person.

## UNDERWRITING

The Bonds are being purchased by Advest, Inc., as Underwriter. The Underwriter has agreed to purchase the Bonds at a discount of $161,370. The Institution has agreed to indemnify the Underwriter and the Issuer against certain liabilities, including certain liabilities arising under federal and state securities laws. The Underwriter may offer and sell the Bonds to certain dealers (including dealers depositing Series 1998 Bonds into unit investment trusts) and others at prices lower than the public offering prices stated on the cover page hereof. The initial offering price may be changed from time to time by the Underwriter.

## LEGAL MATTERS

All legal matters incidental to the authorization and issuance of the Series 1998 Bonds by the Issuer are subject to approval of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Massachusetts, Bond Counsel and Krokidas & Bluestein, Boston, Massachusetts, as Co-Bond Counsel. The unqualified approving opinions of such counsel, in substantially the forms attached hereto as Exhibits E-1 and E-2, will be delivered at settlement. Jason Cohen, Esq., Haverhill, Massachusetts will pass upon certain legal matters for the Institution. Certain legal matters will be passed upon for the Underwriter by its counsel, Bingham Dana, LLP, Boston, Massachusetts.

## RATINGS

Standard & Poor's has assigned a rating of "BBB-" to the Series 1998 Bonds. Such ratings reflect only the view of the rating agency at the time of issuance of the Series 1998 Bonds. An explanation of the significance of the rating may be obtained from Standard & Poor's. There is no assurance that such rating will continue for any given period of time or that it will not be revised or withdrawn entirely by the rating agency, if in its judgment circumstances so warrant. A revision or withdrawal of the rating may have an effect on the market price of the Series 1998 Bonds.

## MISCELLANEOUS

The references to the Act and the Trust Agreement are brief summaries of certain provisions thereof. Such summaries do not purport to be complete, and reference is made to the Act and the Trust Agreement for full and complete statements of such provisions. The agreements of the Issuer with the holders of the Series 1998 Bonds are fully set forth in the Trust Agreement, and neither any advertisement of the Series 1998 Bonds nor this Official Statement is to be construed as constituting an agreement with the Bondowners. So far as any statements are made in this Official Statement involving matters of opinion, whether or not expressly so stated, they are intended merely as such and not as representations of fact. Copies of the documents mentioned in this paragraph are on file at the offices of the Issuer and of the Trustee.

Information relating to DTC and the book-entry system described herein under the heading "THE DEPOSITORY TRUST COMPANY – Book-Entry Only System" has been furnished by DTC and is believed to be reliable, but none of the Issuer, the Institution or the Underwriter make any representations or warranties whatsoever with respect to any such information.

Appendix A contains a letter from the Institution to the Issuer which contains certain information relating to the Institution. With respect to the letter from the Institution, while the information contained therein is believed to be reliable, the Issuer and the Underwriter make no representations or warranties whatsoever with respect to the information contained therein.

Appendix B to this Official Statement contains the audited financial statements of the Institution together with the report of its independent public accountants, Gordon, Harrington & Osborn, P.C.

The Issuer and the Underwriter have relied on the information contained in Appendix A and the Financial Statements contained in Appendix B.

Appendix C – "Summary of Definitions" and Appendix D – "Summary of the Agreement" have been prepared by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Bond Counsel. The proposed forms of legal opinions contained in Appendix E-1 and Appendix E-2 have been prepared by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Bond Counsel and Krokidas & Bluestein, Co-Bond Counsel, respectively. Appendix F – "Form of Continuing Disclosure Agreement" has been prepared by Bingham Dana LLP, Counsel to the Underwriter.

The Appendices are incorporated herein as an integral part of this Official Statement.

The Institution has reviewed the portions of this Official Statement describing it, "The Series 1998 Project," "Estimated Sources and Uses of Funds," "Bondowners' Risks," "Litigation" as it relates to the Institution and Appendix B, and has furnished Appendix A to this Official Statement, and has approved all such information for use with this Official Statement. At the closing, the Institution will certify that such portions of this Official Statement, except for any projections and opinions contained in such portions, do not contain an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made therein, in the light of the circumstances under which they are made, not misleading.

The Issuer neither has nor assumes any responsibility as to the accuracy or completeness of the information contained in this Official Statement, other than that appearing under the captions "The Issuer" and "Litigation" (but only insofar as it relates to the Issuer).

The execution and delivery of this Official Statement by its Executive Director has been duly authorized by the Issuer.

MASSACHUSETTS INDUSTRIAL FINANCE AGENCY

/s/ Michael P. Hogan
Executive Director

[THIS PAGE INTENTIONALLY LEFT BLANK]

## TABLE OF CONTENTS

Page

Introduction ........................................................................................................................................... 1

The Issuer ............................................................................................................................................. 2

Sources of Payment and Security for the Series 1998 Bonds ............................................................. 3

The Series 1998 Bonds ........................................................................................................................ 4

The Depository Trust Company ........................................................................................................... 8

Estimated Sources and Uses of Funds .............................................................................................. 10

The Series 1998 Project ..................................................................................................................... 10

Bondowners' Risks ............................................................................................................................ 11

Litigation ........................................................................................................................................... 12

Tax Exemption ................................................................................................................................... 12

Legality of Series 1998 Bonds for Investment .................................................................................. 13

Continuing Disclosure ....................................................................................................................... 14

Underwriting ...................................................................................................................................... 14

Legal Matters ..................................................................................................................................... 14

Rating ................................................................................................................................................. 14

Miscellaneous .................................................................................................................................... 14

Appendix A  -  Certain Information Regarding the Institution ......................................................... A-1

Appendix B  -  Audited Financial Statements for Fiscal Years ending June 30, 1997 and June 30, 1995 ........... B-1

Appendix C  -  Summary of Definitions ........................................................................................... C-1

Appendix D  -  Summary of Loan and Trust Agreement ................................................................. D-1

Appendix E-1  - Form of Opinion of Bond Counsel ....................................................................... E-1

Appendix E-2  - Form of Opinion of Co-Bond Counsel .................................................................. E-2

Appendix F  -  Form of Continuing Disclosure Agreement ............................................................. F-1

[THIS PAGE INTENTIONALLY LEFT BLANK]

Official Statement
$17,930,000

## MASSACHUSETTS INDUSTRIAL FINANCE AGENCY
## REVENUE BONDS, BRADFORD COLLEGE ISSUE, SERIES 1998

### INTRODUCTION

This Official Statement, including the cover page, and the Appendices hereto, sets forth certain information concerning the $17,930,000 Massachusetts Industrial Finance Agency Revenue Bonds, Bradford College Issue, Series 1998 (the *"Series 1998 Bonds"*).

The Series 1998 Bonds will be issued pursuant to a Loan and Trust Agreement dated as of May 1, 1998 (the *"Trust Agreement"*), among the Massachusetts Industrial Finance Agency, a body politic and corporate and a public instrumentality of The Commonwealth of Massachusetts (the *"Issuer"*), Bradford College, a non-profit corporation formed under Chapter 180 of the General Laws of The Commonwealth of Massachusetts (the *"Institution"*) and Chittenden Trust Company, as trustee (the *"Trustee"*, which term includes any successor trustee under the Trust Agreement). Pursuant to the Trust Agreement, the Issuer will loan proceeds from the sale of the Series 1998 Bonds to the Institution (the *"Loan"*), and the Institution will agree in the Trust Agreement to make payments to the Issuer sufficient to pay the principal of and interest on the Series 1998 Bonds, and the Issuer will assign to the Trustee in trust for the benefit and security of the Series 1998 Bondholders, the Issuer's rights under the Trust Agreement and the revenues to be received from the Institution except as otherwise provided therein. The definitions of certain terms used and not defined herein are contained in Appendix C – "Summary of Definitions."

The Institution will apply the Loan to (i) refund the Issuer's Variable Rate Demand Revenue Bonds, (Bradford College Issue, 1995 Series A), dated November 3, 1995 (the "Series 1995 Bonds"); and (ii) finance costs incurred in connection with certain renovations at the facilities of the Institution or the construction of new facilities of the Institution. See "THE SERIES 1998 PROJECT" herein and Appendix A – "Certain Information Regarding the Institution" under the heading "The Project." In addition, a portion of the proceeds of the Series 1998 Bonds will be used to fund a debt service reserve fund for the Series 1998 Bonds and to pay costs of issuing the Series 1998 Bonds. A more detailed description of the use of proceeds of the Series 1998 Bonds and other moneys, including approximate amounts and purposes, is set forth below under "ESTIMATED SOURCES AND USES OF FUNDS."

The obligation of the Institution to make payments under the Trust Agreement is a general obligation of the Institution to which the full faith and credit of the Institution is pledged. See "SOURCES OF PAYMENT AND SECURITY FOR THE SERIES 1998 BONDS." The Issuer is obligated to pay the principal of, premium, if any, and interest on the Series 1998 Bonds solely from the revenues and funds pledged therefor as provided in the Trust Agreement.

THE SERIES 1998 BONDS DO NOT CONSTITUTE A GENERAL OBLIGATION OF THE ISSUER OR A DEBT OR PLEDGE OF THE FAITH AND CREDIT OF THE COMMONWEALTH OF MASSACHUSETTS OR ANY POLITICAL SUBDIVISION THEREOF; EXCEPT TO THE EXTENT PAID FROM BOND PROCEEDS, THE PRINCIPAL OF, PREMIUM, IF ANY, AND INTEREST ON THE SERIES 1998 BONDS ARE PAYABLE SOLELY FROM THE REVENUES AND FUNDS PLEDGED FOR THEIR PAYMENT IN ACCORDANCE WITH THE TRUST AGREEMENT. THE ISSUER HAS NO TAXING POWER.

The payment of the principal of, premium, if any, and interest on the Series 1998 Bonds will be payable solely from, and secured by the Issuer's pledge to the Trustee of (i) payments to be received by the Trustee, for the account of the Issuer, from the Institution under the Trust Agreement (except certain rights to payment of indemnification, reimbursement and administrative fees) and (ii) additional amounts, if any received by the Trustee pursuant to the Trust Agreement.

**THE SERIES 1998 BONDS ARE SECURED BY A LIEN ON THE TUITION RECEIPTS OF THE INSTITUTION, WHICH LIEN IS PARI PASSU WITH A LIEN GRANTED TO THE U.S. DEPARTMENT OF EDUCATION TO SECURE A $1,500,000 LOAN TO THE INSTITUTION. THE SERIES 1998 BONDS ARE NOT SECURED BY A MORTGAGE LIEN OR SECURITY INTEREST IN ANY REAL OR OTHER PERSONAL PROPERTY OF THE INSTITUTION.**

The Series 1998 Bonds are subject to redemption prior to maturity including special redemption at par, optional redemption and mandatory sinking fund redemption under certain circumstances. See "THE SERIES 1998 BONDS" herein.

The agreements of the Issuer and the Institution with the Trustee for the benefit of the Bondholders are fully set forth in the Trust Agreement, and neither any advertisement of the Series 1998 Bond nor this Official Statement shall be construed as constituting an agreement with the purchasers of the Series 1998 Bonds. Insofar as any statements are made in this Official Statement involving matters of opinion, regardless of whether expressly so stated, they are intended merely as such and not as representations of fact.

## THE ISSUER

The Issuer is a body politic and corporate and a public instrumentality of The Commonwealth of Massachusetts and is authorized and empowered under the laws of The Commonwealth of Massachusetts, including Chapter 23A and, to the extent incorporated therein, Chapter 40D of the Massachusetts General Laws, each as amended (collectively, the *"Enabling Act"*), to issue the Series 1998 Bonds for the purposes described herein and to enter into the Trust Agreement. **The Issuer has no taxing power.**

The Members of the Board of Directors of the Issuer and the Officers of the Agency are as follows:

Members of the Board of Directors

Robert L. Beal, Chairman; Partner, The Beal Companies, Inc., Boston, Massachusetts; former President, Greater Boston Real Estate Board.

David F. Squire, Vice Chairman; Business Consultant, Weston, Massachusetts; former Vice President of Administration, Brandeis University, Waltham, Massachusetts.

Richard S. Kronish, Member; Associate Professor, University of Massachusetts, Boston, Massachusetts; Advisor to the Boston District Council of Carpenters.

Paul Stelzer, Member; President, Appleton Corporation, Holyoke, Massachusetts.

Lisa Campoli, Member; Principal and Senior Vice President, Lynch Murphy Walsh & Partners, Boston, Massachusetts.

Dix F. Davis, Member; Vice President, Allmerica Asset Management, Inc., Worcester, Massachusetts.

Charles D. Baker, Member; Secretary, Executive Office for Administration and Finance, The Commonwealth of Massachusetts.

2

David Tibbetts, Member, Director, Department of Economic Development, The Commonwealth of Massachusetts.

Officers of the Issuer

Michael P. Hogan, Executive Director.

Patricia G. Simard, Director of Finance.

David T. Slatery, Secretary/General Counsel.

## SOURCES OF PAYMENT AND SECURITY FOR THE SERIES 1998 BONDS

### General

THE SERIES 1998 BONDS DO NOT CONSTITUTE A GENERAL OBLIGATION OR A DEBT OR PLEDGE OF THE FAITH AND CREDIT OF THE ISSUER OR A DEBT OR A PLEDGE OF THE FAITH AND CREDIT OF THE COMMONWEALTH OF MASSACHUSETTS OR ANY SUBDIVISION THEREOF, AND EACH COVENANT AND UNDERTAKING OF THE ISSUER IN THE TRUST AGREEMENT AND IN THE SERIES 1998 BONDS IS NOT A GENERAL OBLIGATION OF THE ISSUER OR A DEBT OR PLEDGE OF THE FAITH AND CREDIT OF THE COMMONWEALTH OF MASSACHUSETTS, BUT IS A LIMITED OBLIGATION PAYABLE SOLELY FROM THE REVENUES AND OTHER FUNDS PROVIDED UNDER THE TRUST AGREEMENT. THE TRUST AGREEMENT DOES NOT REQUIRE THE ISSUER TO PAY ANY FUNDS OR REVENUES FROM ANY SOURCE OTHER THAN PLEDGED RECEIPTS. THE ISSUER HAS NO TAXING POWER.

The Trust Agreement provides that the Institution will make Loan payments sufficient to pay in full the purchase price or principal of and interest on the Series 1998 Bonds. Such payments from the Institution are required to be made monthly in advance of the dates that payments are due on the Bonds. The Trust Agreement also provides for the Institution to pay certain fees and expenses (consisting generally of fees, charges and expenses of the Trustee and the Issuer) associated with the Series 1998 Bonds. Loan obligations are a general obligation of the Institution to which the full faith and credit of the Institution is pledged.

### Security

Pursuant to the Trust Agreement, the Issuer assigns and pledges to the Trustee in trust for the benefit and security of the Bondowners upon the terms thereof (a) all Revenues to be received from the Institution or derived from any security provided under the Trust Agreement, (b) all rights to receive such Revenues and the proceeds of such rights, and (c) all funds and investments held from time to time in the funds established under the Trust Agreement except for the Rebate Fund. Such assignment and pledge does not include: (i) the rights of the Issuer pursuant to provisions for consent, concurrence, approvals or other action by the Issuer, notice to the Issuer or the filing of reports, certificates or other documents with the Issuer, or (ii) the powers of the Issuer as stated in the Trust Agreement to enforce the provisions of the Trust Agreement. The Trust Agreement shall remain in full force and effect until such time as the Series 1998 Bonds and the interest thereon and certain other required payments have been fully paid or until adequate provision for such payment has been made.

"Revenues" means all rates, payments, rents, fees, charges, and other income and receipts, including proceeds of insurance, eminent domain and sale, and including proceeds derived from any security provided under the Trust Agreement, payable to the Issuer or the Trustee under the Trust Agreement, excluding Additional Payments and other fees of the Issuer or the Trustee, reimbursements to the Issuer or the Trustee for expenses incurred by the Issuer or the Trustee, and indemnification of the Issuer and the Trustee.

3

Pursuant to the Trust Agreement, as additional security for its obligations to make payments under the Trust Agreement, the Institution grants to the Issuer a security interest in and lien on its Tuition Receipts. Such lien is pari passu with a lien granted to the Institution to the U.S. Department of Education (the "Department") to secure a $1,500,000 loan. The intercreditor arrangements among the Issuer, the Department and the Institution provide that upon any exercise of remedies with respect to such lien, the Department and the Issuer would share the proceeds of such liens on a pari passu basis and that after a default under the Department's loan facility or the Trust Agreement, the Department and the Issuer would attempt in good faith to negotiate an intercreditor agreement to regulate and coordinate the exercise of remedies against the Institution. The Series 1998 Bonds are not secured by a mortgage lien or security in any real or personal property.

The Trust Agreement constitutes a general obligation of the Institution. The Trust Agreement imposes certain restrictions on the Institution as to the incurrence of debt, the encumbering of property and the maintenance of investments. The Institution also has covenanted in the Trust Agreement to maintain certain financial covenants for each fiscal year of the Institution. See Appendix C – "Summary of Definitions" and Appendix D – "Summary of the Agreement."

The Issuer has previously issued the Series 1995 Bonds, which currently are outstanding in the principal amount of $5,210,000 (as of June 30, 1997) and which will be refunded in whole from a portion of the proceeds of the Series 1998 Bonds. See "THE SERIES 1998 PROJECT – Refunding of Series 1995 Bonds" below. In addition, the Institution has outstanding indebtedness in the aggregate amount of approximately $4,800,000 (as of June 30, 1997). For a complete description of the Institution's outstanding indebtedness and the security therefor, see Appendix A – "Certain Information Regarding the Institution" under the heading "Outstanding Indebtedness" and Appendix B – "Audited Financial Statements."

**Debt Service Reserve Fund**

The Trust Agreement provides for the establishment and maintenance of a Debt Service Reserve Fund in an amount equal to the Debt Service Reserve Fund Requirement to be held by the Trustee. The Debt Service Reserve Fund may be drawn upon to pay principal of and interest on the Bonds to the extent there are insufficient funds available therefor in the Debt Service Fund. See Appendix C – "Summary of Definitions" and Appendix D – "Summary of the Agreement" under the heading "Debt Service Reserve Fund."

**Additional Indebtedness**

The Issuer may issue Additional Indebtedness, including Additional Bonds on a parity with the Series 1998 Bonds, to provide additional funds to complete the Project, to provide additional moneys for the Debt Service Reserve Fund, to refund Bonds previously issued under the Trust Agreement and to pay costs of issuance of such Additional Bonds or to finance or refinance any other project or projects of the Institution permitted under the Act only if certain financial covenants and other conditions are met. For other provisions relating to the issuance of Additional Indebtedness, see Appendix D – "Summary of the Agreement" under the heading "Additional Bonds" and "Restrictions on Borrowings."

The Institution is restricted in its ability to mortgage its Core Campus, but it is allowed to grant liens on property or Tuition Receipts in connection with replacement or repair of fixtures. The Institution is permitted to grant mortgages in connection with the construction of new buildings on its Core Campus, and is allowed to grant mortgages, as long as a parity pledge is granted to Series 1998 Bondowners. For other provisions relating to Restricted Indebtedness, see Appendix D – "Summary of the Agreement" under the heading "Restricted Indebtedness."

## THE SERIES 1998 BONDS

The following is a summary of certain provisions of the Series 1998 Bonds. Reference is hereby made to the Series 1998 Bonds and the Trust Agreement, each in their entirety, for the detailed provisions of the Series 1998 Bonds. Certain provisions of the Trust Agreement are summarized in Appendices C and D hereof.

4

Description of the Series 1998 Bonds

The Series 1998 Bonds will be issued in fully registered form, without coupons, in denominations of $5,000 or integral multiples thereof. The Series 1998 Bonds initially will be dated May 1, 1998, and will bear interest from such date payable on November 1, 1998 and on each May 1 and November 1 thereafter at the rate or rates per annum shown on the cover page of this Official Statement. Interest shall be calculated on the basis of a 360-day year consisting of twelve 30-day months. The Series 1998 Bonds will mature on November 1 of each of the years and in the principal amounts shown on the cover page of this Official Statement.

Debt Service Requirements

The following table sets forth, for each respective bond year, the amounts required to be made available in such year by the Institution for payment of the principal or sinking fund installments, interest and total debt service on the Series 1998 Bonds.

Series 1998 Bonds

| Year Ending November 1, | Principal or Sinking Fund Installments | Interest | Total Debt Service |
|---|---|---|---|
| 1999 | -- | $965,101.26 | $965,101.26 |
| 2000 | $285,000.00 | 965,101.26 | 1,250,101.26 |
| 2001 | 295,000.00 | 952,276.26 | 1,247,276.26 |
| 2002 | 305,000.00 | 939,001.26 | 1,244,001.26 |
| 2003 | 320,000.00 | 924,666.26 | 1,244,666.26 |
| 2004 | 335,000.00 | 909,306.26 | 1,244,306.26 |
| 2005 | 360,000.00 | 892,891.26 | 1,252,891.26 |
| 2006 | 375,000.00 | 874,891.26 | 1,249,891.26 |
| 2007 | 390,000.00 | 856,141.26 | 1,246,141.26 |
| 2008 | 410,000.00 | 836,251.26 | 1,246,251.26 |
| 2009 | 435,000.00 | 814,931.26 | 1,249,931.26 |
| 2010 | 455,000.00 | 792,093.76 | 1,247,093.76 |
| 2011 | 480,000.00 | 768,206.26 | 1,248,206.26 |
| 2012 | 505,000.00 | 743,006.26 | 1,248,006.26 |
| 2013 | 530,000.00 | 716,493.76 | 1,246,493.76 |
| 2014 | 560,000.00 | 688,668.76 | 1,248,668.76 |
| 2015 | 590,000.00 | 659,268.76 | 1,249,268.76 |
| 2016 | 620,000.00 | 628,293.76 | 1,248,293.76 |
| 2017 | 650,000.00 | 595,743.76 | 1,245,743.76 |
| 2018 | 685,000.00 | 561,618.76 | 1,246,618.76 |
| 2019 | 725,000.00 | 525,656.26 | 1,250,656.26 |
| 2020 | 760,000.00 | 484,875.02 | 1,244,875.02 |
| 2021 | 805,000.00 | 442,125.02 | 1,247,125.02 |
| 2022 | 850,000.00 | 396,843.76 | 1,246,843.76 |
| 2023 | 895,000.00 | 349,031.26 | 1,244,031.26 |
| 2024 | 950,000.00 | 298,687.52 | 1,248,687.52 |
| 2025 | 1,000,000.00 | 245,250.00 | 1,245,250.00 |
| 2026 | 1,060,000.00 | 189,000.00 | 1,249,000.00 |
| 2027 | 1,120,000.00 | 129,375.00 | 1,249,375.00 |
| 2028 | 1,180,000.00 | 66,375.00 | 1,246,375.00 |

Redemption Provisions

### Mandatory Redemption

The Series 1998 Bonds maturing on November 1, 2018 are subject to mandatory sinking fund redemption at a redemption price equal to 100% of the principal amount thereof plus interest, if any, accrued thereon to the date fixed for redemption, on each November 1 of the years and in the principal amounts set forth below:

| Year | Principal Amount | Year | Principal Amount |
|------|------------------|------|------------------|
| 2009 | $435,000 | 2014 | $560,000 |
| 2010 | 455,000 | 2015 | 590,000 |
| 2011 | 480,000 | 2016 | 620,000 |
| 2012 | 505,000 | 2017 | 650,000 |
| 2013 | 530,000 | 2018 | 685,000* |

* Final Maturity

The Series 1998 Bonds maturing on November 1, 2028 are subject to mandatory sinking fund redemption at a redemption price equal to 100% of the principal amount thereof plus interest, if any, accrued thereon to the date fixed for redemption, on each November 1 of the years and in the principal amounts set forth below:

| Year | Principal Amount | Year | Principal Amount |
|------|------------------|------|------------------|
| 2019 | $725,000 | 2024 | $ 950,000 |
| 2020 | 760,000 | 2025 | 1,000,000 |
| 2021 | 805,000 | 2026 | 1,060,000 |
| 2022 | 850,000 | 2027 | 1,120,000 |
| 2023 | 895,000 | 2028 | 1,180,000* |

* Final Maturity

### Optional Redemption

The Series 1998 Bonds maturing on or before November 1, 2008 are not subject to optional redemption prior to maturity, unless redeemed pursuant to the extraordinary optional redemption provisions set forth below. The Series 1998 Bonds maturing after November 1, 2008 are subject to optional redemption prior to maturity at the written direction of the Institution (together with the deposit of necessary moneys in the Redemption Fund) as a whole or in part at any time on and after November 1, 2008 in the order of maturity determined by the Institution at the following redemption prices (expressed as percentages of the principal amount redeemed), plus accrued interest to the date fixed for redemption:

| Redemption Period | Redemption Price |
|-------------------|------------------|
| November 1, 2008 through October 31, 2009 | 102% |
| November 1, 2009 through October 31, 2010 | 101% |
| November 1, 2010 and thereafter | 100% |

### Special Redemption

The Series 1998 Bonds are subject to redemption as a whole or in part at any time, in such order of maturity or sinking fund installments as directed by the Institution at their principal amounts, without premium, plus accrued interest to the redemption date, from any excess moneys in the Project Fund upon completion of the Project or from proceeds of insurance or eminent domain awards, under certain circumstances. See Appendix D -- "Summary of the Agreement" under the headings "Construction Fund" and "Damage to or destruction of the Project".

6

Selection of Bonds to be Redeemed

In the event of a redemption of less than all of the Series 1998 Bonds of a particular maturity, the Series 1998 Bonds or portions of the Series 1998 Bonds of such maturity to be redeemed will be selected in such manner as the Trustee shall determine, provided that so long as DTC or its nominee is the Bondowner, the Series 1998 Bonds or portions of the Series 1998 Bonds to be redeemed shall be selected by DTC in such manner as DTC may determine.

Notice of Redemption and Other Notices

So long as DTC or its nominee is the Series 1998 Bondholder, the Issuer and Trustee will recognize DTC or its nominee as the Series 1998 Bondholder for all purposes, including notices and voting. Conveyance of notices and other communications by DTC to DTC Participants, by DTC Participants to Indirect Participants, and by DTC Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory and regulatory requirements which may be in effect from time to time. In the event DTC or its nominee is not the Series 1998 Bondholder, notices will be sent by the Trustee to the registered holders of the Series 1998 Bonds in accordance with the provisions of the Trust Agreement.

The Trustee shall give notice of redemption to the Series 1998 Bondowners by first class mail not less than 30 days nor more than 45 days prior to the date fixed for redemption. So long as DTC or its nominee is the Series 1998 Bondholder, any failure on the part of DTC or failure on the part of a nominee of a Beneficial Owner (having received notice from a DTC Participant or otherwise) to notify the Beneficial Owner so affected shall not affect the validity of the redemption.

Effect of Redemption

Notice of redemption having been given in the manner provided in the Trust Agreement, and amounts sufficient for the redemption being held by the Trustee for that purpose, the Series 1998 Bonds so called for redemption shall become due and payable on the Redemption Date, and interest thereon shall cease to accrue and the holders of the Series 1998 Bonds so called for redemption shall thereafter no longer have any security or benefit under the Trust Agreement except to receive payment of the redemption price for such Series 1998 Bonds. If such amounts shall not be so sufficient on the Redemption Date, such Series 1998 Bonds or portions thereof shall continue to bear interest until paid at the same rate as they would have borne had they not been called for redemption.

Acceleration

In the event of a default by the Institution, the Trustee may accelerate the Series 1998 Bonds and declare the outstanding principal amount and the accrued interest thereon immediately due and payable. See Appendix D - "Summary of the Agreement" under the heading "Default by the Institution".

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __T. Rowe Price Tax-Free High Yield Fund, Inc., et al. v. Karen__
   __M. Sughrue, et al.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See
   local rule 40.1(a)(1)).

   [ ]   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓]   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.      for patent, trademark or copyright cases

   [ ]   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

   [ ]   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

   [ ]   V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in
   this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                               YES [ ]        NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See
   28 USC §2403)

                                                               YES [ ]        NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                               YES [ ]        NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                               YES [ ]        NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
   Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
   40.1(d)).

                                                               YES [ ]        NO [✓]

   A.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division [ ]        Central Division [ ]        Western Division [ ]

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
       agencies, residing in Massachusetts reside?

       Eastern Division [✓]        Central Division [ ]        Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (if
   yes, submit a separate sheet identifying the motions)

                                                               YES [ ]        NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Thomas G. Hoffman, Esq., Greene & Hoffman, P.C._____
ADDRESS __125 Summer Street, 14th Floor, Boston, MA  02110_____
TELEPHONE NO. __(617) 261-0040_____

(Coversheetlocal.wpd - 10/17/02)

℞JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

T. Rowe Price Tax-Free High Yield Fund, Inc., et at.

## DEFENDANTS

Karen M. Sughrue, et al.

(b) County of Residence of First Listed Plaintiff    Baltimore, MD
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Thomas Hoffman, Esq.     (617) 261-0040
Greene & Hoffman, P.C.
125 Summer St., 14th Floor, Boston, MA  02110

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☒ 3  Federal Question
      (U.S. Government Not a Party)

☐ 4  Diversity
      (Indicate Citizenship of Parties
      in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☒ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☒ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| | | | & Disclosure Act | | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      another district
      (specify)

☐ 6  Multidistrict
      Litigation

☐ 7  Appeal to District
      Judge from
      Magistrate
      Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

Defendants are alleged to be responsible for false statements contained in bond prospectus in violation of Section 10(b) and 20 (a) of the Securities Exchange Act of 1934 and Section 12(a)(2) of the Securities Act of 1933

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE                                    DOCKET NUMBER

DATE   7/27/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____