

1

Appendix E-1

Form of Opinion of Bond Counsel

[THIS PAGE INTENTIONALLY LEFT BLANK]

APPENDIX E-1

## Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111

'01 Pennsylvania Avenue, N.W.
Vashington, D.C. 20004
'elephone: 202/434-7300
'ax: 202/434-7400

Telephone: 617/542-6000
Fax: 617/542-2241

## PROPOSED FORM OF LEGAL OPINION

[Closing Date]

Massachusetts Industrial Finance Agency
75 Federal Street
Boston, Massachusetts 02110

Re:    Massachusetts Industrial Finance Agency Revenue Bonds, Bradford College Issue,
Series 1998 (the "Bonds")

We have examined Chapter 23A, and to the extent incorporated therein, Chapter 40D of the General Laws of the Commonwealth of Massachusetts, as amended (the "Act"), and other applicable statutes. We have also examined executed copies of the Loan and Trust Agreement dated as of May 1, 1998 (the "Agreement") among the Massachusetts Industrial Finance Agency (the "Agency"), Bradford College (the "Institution") and Chittenden Trust Company, as Trustee (the "Trustee"). and the Purchase Contract dated April 30, 1998 (the "Purchase Contract") between the Agency and Advest, Inc.. We have also examined certified copies of the Resolutions of the Agency adopted on February 12, 1998 and April 16, 1998 relating to the Bonds (the "Resolutions"), the Institution's Tax Certificate, a Certificate as to Arbitrage given by the Institution, the No Arbitrage Certificate given by the Agency and other papers submitted in connection with the issuance of the Bonds.

Capitalized terms which are defined in the Agreement and not otherwise defined herein are used herein as so defined.

Reference is made to an opinion of even date herewith of Jason S. Cohen, counsel to the Institution, with respect to, among other matters, the corporate status and qualification to do business of the Institution, the status of the Institution as an organization described in Section 501(c)(3) of the Internal Revenue Code, the power of the Institution to enter into and perform the Agreement, the authorization, execution and delivery of the Agreement by the Institution and the extent to which the Agreement is binding and enforceable upon the Institution.

In rendering the opinions set forth herein, we have relied upon the accuracy of the representations of the Institution as set forth in such papers and documents as we have deemed necessary in connection with

Massachusetts Industrial Finance Agency
[Closing Date]
Page 2

this opinion, including without limitation, the Purchase Contract, the Agreement and the above-referenced Institution's Tax Certificate, the Institution's Certificate as to Arbitrage and the Agency's No Arbitrage Certificate.

Based upon our examination, we are of the opinion that:

(a)     The Agency is a validly existing body politic and corporate and public instrumentality under the laws of The Commonwealth of Massachusetts, authorized and empowered by the Act to borrow money and to issue the Bonds in evidence thereof, to loan the proceeds of the Bonds to the Institution in order to finance and refinance the cost of the Project, as defined in the Agreement, and to enter into and perform its obligations under the Agreement.

(b)     The Bonds have been duly authorized and issued by the Agency for the purpose of providing funds to be loaned to the Institution in order to finance and refinance the cost of the Project as described in the Resolutions.

(c)     The Agreement has been duly executed and delivered on behalf of the Agency and constitutes a valid and legally binding obligation of the Agency, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, moratorium or other laws of general applicability from time to time in effect which affect the rights and remedies of creditors and secured parties and by the exercise of judicial discretion in accordance with legal and equitable limitations of general applicability.

(d)     The Bonds have been duly executed, authenticated and delivered and are the valid and legally binding limited obligations of the Agency, enforceable in accordance with their terms, except as enforcement may be limited by applicable bankruptcy, moratorium or other laws of general applicability from time to time in effect which affect the rights and remedies of creditors and secured parties and by the exercise of judicial discretion in accordance with legal and equitable limitations of general applicability. The Bonds are entitled to the benefits of the Agreement and the Act. However, neither The Commonwealth of Massachusetts nor any political subdivision thereof, nor the Agency is obligated to pay principal of or redemption premium, if any, or interest on the Bonds except from the income and revenue to be derived by the Agency pursuant to the Agreement and from moneys held from time to time by the Trustee under the Agreement, and neither the faith and credit nor the taxing power of The Commonwealth of Massachusetts nor of any political subdivision thereof, nor of the Agency is pledged to the payment of the principal of or redemption premium, if any, or interest on the Bonds.

(e)     (i)     Under existing law, interest on the Bonds will not be included in the gross income of holders of the Bonds for federal income tax purposes. This opinion is rendered subject to the condition that certain requirements of the Internal Revenue Code of 1986, as amended, be met subsequent to the date of issuance of the Bonds, in order that interest be and remain excluded from gross income for federal income tax purposes. Failure to comply with such requirements with respect to the Bonds could cause the interest on the Bonds to be included in gross income retroactive to the date of issuance of the Bonds.

(ii)     While interest on the Bonds is not an item of tax preference for purposes of the alternative minimum tax imposed under federal tax law on individuals and corporations, interest on the Bonds will be included in the "adjusted current earnings" of corporate holders of the Bonds and therefore will be taken into account in computing the alternative minimum tax imposed on certain corporations.

(iii)  We express no opinion regarding other federal tax consequences arising with respect to the Bonds.

(f)    Under existing Massachusetts law, interest on the Bonds and any profit on the sale thereof are exempt from Massachusetts personal income taxes and the Bonds are exempt from Massachusetts personal property taxes.  We express no opinion as to other Massachusetts tax consequences arising with respect to the Bonds or as to the taxability of the Bonds, their transfer and the income therefrom, including any profit made on the sale thereof, under the laws of states other than Massachusetts.

(g)    For federal and Massachusetts tax purposes, interest includes original issue discount. Original issue discount with respect to the Bonds is equal to the excess, if any, of the stated redemption price at maturity of such Bonds over the initial offering price thereof to the public, excluding underwriters and other intermediaries, at which price a substantial amount of all Bonds with the same maturity were sold. Original issue discount accrues actuarially over the term of the Bonds. Holders should consult their own tax advisers with respect to the computation of original issue discount on such accruals of interest during the period in which any such Bond is held.

Very truly yours,

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

TRADOCS: 1092749.2 (nf6502!.doc)

[THIS PAGE INTENTIONALLY LEFT BLANK]

**2**

Appendix E-2

Form of Opinion of Co-Bond Counsel

[THIS PAGE INTENTIONALLY LEFT BLANK]

KROKIDAS & BLUESTEIN

ATTORNEYS

141 TREMONT STREET

BOSTON, MASSACHUSETTS 02111

RICHARD M. BLUESTEIN
MARIA J. KROKIDAS
SAMUEL NAGLER
JANET STECKEL LUNDBERG
ROBERT J. GRIFFIN
KAREN J. KEPLER
VINCENT J. PISEGNA
PAUL V. HOLTZMAN

TELEPHONE
(617) 482-7211

TELECOPIER
(617) 482-7212

ELKA T. SACHS
ANTHONY J. CICHELLO
JENNIFER GALLOP
MARTIN RIS

JAMES L. BUECHL
OF COUNSEL

**Appendix E-2**

## PROPOSED FORM OF LEGAL OPINION

[Closing Date]

Massachusetts Industrial Finance Agency
75 Federal Street
Boston, MA  02110

RE:    Massachusetts Industrial Finance Agency Revenue Bonds, Bradford College
Issue, Series 1998 (the "Bonds")

We have examined Chapter 23A, and to the extent incorporated therein, Chapter 40D
of the General Laws of the Commonwealth of Massachusetts, as amended (the "Act"), and
other applicable statutes.  We have also examined executed copies of the Loan and Trust
Agreement dated as of May 1, 1998 (the "Agreement") among the Massachusetts Industrial
Finance Agency (the "Agency"), Bradford College (the "Institution") and Chittenden Trust
Company, as Trustee (the "Trustee") and the Purchase Contract dated _____, 1998
(the "Purchase Contract") between the Agency and Advest, Inc.  We have also examined
certified copies of the Resolution of the Agency adopted on February 12, 1998 and April 16,
1998 relating to the Bonds (the "Resolutions") and other papers submitted in connection with
the issuance of the Bonds.

Capitalized terms which are defined in the Agreement and not otherwise defined herein
are used herein as so defined.

Reference is made to an opinion of even date herewith of Jason S. Cohen, counsel to
the Institution, with respect to, among other matters, the corporate status and qualification to
do business of the Institution, the status of the Institution as an organization described in
Section 501(c)(3) of the Internal Revenue Code, the power of the Institution to enter into and
perform the Agreement, the authorization, execution and delivery of the Agreement by the
Institution and the extent to which the Agreement is binding and enforceable upon the
Institution.

In rendering the opinions set forth herein, we have relied upon the accuracy of the
representations of the Institution as set forth in such papers and documents as we have deemed
necessary in connection with this opinion, including, without limitation, the Purchase Contract
and the Agreement.

KROKIDAS & BLUESTEIN

Massachusetts Industrial Finance Agency
[Closing Date]
Page -2-

Based upon our examination, we are of the opinion that:

(a)    The Agency is a validly existing body politic and corporate and public instrumentality under the laws of The Commonwealth of Massachusetts, authorized and empowered by the Act to borrow money and to issue the Bonds in evidence thereof, to loan the proceeds of the Bonds to the Institution in order to finance and refinance the cost of the Project, as defined in the Agreement, and to enter into and perform its obligations under the Agreement.

(b)    The Bonds have been duly authorized and issued by the Agency for the purpose of providing funds to be loaned to the Institution in order to finance and refinance the cost of the Project as described in the Resolutions.

(c)    The Agreement has been duly executed and delivered on behalf of the Agency and constitutes a valid and legally binding obligation of the Agency, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, moratorium or other laws of general applicability from time to time in effect which affect the rights and remedies of creditors and secured parties and by the exercise of judicial discretion in accordance with legal and equitable limitations of general applicability.

(d)    The Bonds have been duly executed, authenticated and delivered and are the valid and legally binding limited obligations of the Agency, enforceable in accordance with their terms, except as enforcement may be limited by applicable bankruptcy, moratorium or other laws of general applicability from time to time in effect which affect the rights and remedies of creditors and secured parties and by the exercise of judicial discretion in accordance with legal and equitable limitations of general applicability. The Bonds are entitled to the benefits of the Agreement and the Act.  However, neither The Commonwealth of Massachusetts nor any political subdivision thereof, nor the Agency, is obligated to pay principal of or redemption premium, if any, or interest on the Bonds except from the income and revenue to be derived by the Agency pursuant to the Agreement and from moneys held from time to time by the Trustee under the Agreement, and neither the faith and credit nor the taxing power of The Commonwealth of Massachusetts nor of any political subdivision thereof, nor of the Agency, is pledged to the payment of the principal of or redemption premium, if any, or interest on the Bonds.

Very truly yours,


Krokidas & Bluestein

KB/bs
1414\0002\55542.1



Appendix F


Form of Continuing Disclosure Agreement

[THIS PAGE INTENTIONALLY LEFT BLANK]

## CONTINUING DISCLOSURE AGREEMENT

This Continuing Disclosure Agreement (the "Disclosure Agreement") is executed and delivered by Bradford College (the "Institution") and Chittenden Trust Company, as trustee (the "Trustee") in connection with the issuance of $_____ Massachusetts Industrial Finance Agency Revenue Bonds, Bradford College Issue, Series 1998 (the "Bonds"). The Bonds are being issued pursuant to a Loan and Trust Agreement dated as of May 1, 1998 (the "Agreement") among the Massachusetts Industrial Finance Agency (the "Agency"), the Trustee and the Institution, and the proceeds of the Bonds are being loaned by the Agency to the Institution pursuant to the Agreement. The Institution and the Trustee covenant and agree as follows:

SECTION 1. <u>Purpose of the Disclosure Agreement</u>. This Disclosure Agreement is being executed and delivered by the Institution and the Trustee for the benefit of the Bondowners and in order to assist the Participating Underwriter (defined below) in complying with the Rule (defined below). The Institution and the Trustee acknowledge that the Agency has undertaken no responsibility with respect to any reports, notices or disclosures provided or required under this Disclosure Agreement, and has no liability to any person, including any Bondowner, with respect to any such reports, notices or disclosures. The Trustee, except as provided in Section 3(c), has undertaken no responsibility with respect to any reports, notices or disclosures provided or required under this Disclosure Agreement, and has no liability to any person, including any Bondowner, with respect to any such reports, notices or disclosures except for its negligent failure to comply with its obligations under Section 3(c).

SECTION 2. <u>Definitions</u>. In addition to the definitions set forth in the Agreement, which apply to any capitalized terms used in this Disclosure Agreement unless otherwise defined in this Section, the following capitalized terms shall have the following meanings:

"Annual Report" shall mean any Annual Report provided by the Institution pursuant to, and as described in Sections 3 and 4 of this Disclosure Agreement.

"Bondowner" shall mean the registered owner of a Bond and any beneficial owner thereof, as established to the reasonable satisfaction of the Trustee or Institution.

"Dissemination Agent" shall mean any Dissemination Agent or successor Dissemination Agent designated in writing by the Institution and which has filed with the Institution, the Trustee and the Agency a written acceptance of such designation. The same entity may serve as both Trustee and

-2-

Dissemination Agent. The initial Dissemination Agent shall be the Trustee. In the absence of a third-party Dissemination Agent, the Institution shall serve as the Dissemination Agent.

"Listed Events" shall mean any of the events listed in Section 5(a) of this Disclosure Agreement.

"National Repository" shall mean any Nationally Recognized Municipal Securities Information Repository for purposes of the Rule. The National Repositories as of the date of execution of this Disclosure Agreement are listed in Exhibit B.

"Participating Underwriter" shall mean any of the original underwriter of the Bonds required to comply with the Rule in connection with offering of the Bonds.

"Repository" shall mean each National Repository and each State Repository.

"Rule" shall mean Rule 15c2-12(b)(5) adopted by the Securities and Exchange Commission under the Securities Exchange Act of 1934, as the same may be amended from time to time.

"State Repository" shall mean any public or private repository or entity designated by The Commonwealth of Massachusetts as a state repository for the purpose of the Rule.

SECTION 3. Provision of Annual Reports.

(a)    Commencing in 1998, the Dissemination Agent, not later than 150 days after the end of each fiscal year of the Institution (the "Filing Deadline"), shall provide to each Repository an Annual Report which is consistent with the requirements of Section 4 of this Disclosure Agreement. Not later than fifteen (15) Business Days prior to said date, the Institution (if it is not the Dissemination Agent) shall provide the Annual Report to the Dissemination Agent. In each case, the Annual Report may be submitted as a single document or as separate documents comprising a package, and may cross-reference other information as provided in Section 4 of this Disclosure Agreement; provided that the audited financial statements of the Institution may be submitted separately from, and at a later date than, the balance of the Annual Report if such audited financial statements are not available as of the date set forth above. If the Dissemination Agent submits the audited financial statements of the Institution at a later date, it shall provide unaudited financial statements by the above-specified deadline (if provided to it by the Institution) and shall provide the audited financial statements as soon as practicable after the audited financial statements become available. The Institution shall submit the audited financial statements to the Dissemination Agent and the Trustee as soon as practicable after they become available and the Dissemination Agent shall submit the

-3-

audited financial statements to each Repository as soon as practicable thereafter. The Institution shall provide a copy of the Annual Report to the Agency and the Trustee.

(b)     The Dissemination Agent shall:

(i)     determine each year within five (5) Business Days of the date for providing the Annual Report the name and address of each National Repository and the State Repository, if any (insofar as determinations regarding National Repositories are concerned, the Dissemination Agent or the Institution, as applicable, may rely conclusively on the list of National Repositories maintained by the United States Securities and Exchange Commission); and

(ii)     file a report with the Institution, the Agency and the Trustee certifying that the Annual Report has been provided to the Repositories pursuant to this Disclosure Agreement, stating the date it was provided, and listing all the Repositories to which it was provided (the "Compliance Certificate"); such report shall include a certification from the Institution that the Annual Report complies with the requirements of this Disclosure Agreement.

(c)     If the Trustee has not received a Compliance Certificate by the Filing Deadline, the Trustee shall send, and the Institution hereby authorizes and directs the Trustee to submit on its behalf, a notice to the Municipal Securities Rulemaking Board and the State Repository, if any, in substantially the form attached as Exhibit A.

(d)     If the Dissemination Agent has not provided the Annual Report to the Repositories by the Filing Deadline, the Institution shall send, or cause the Dissemination Agent to send, a notice substantially in the form of Exhibit A irrespective of whether the Trustee submits such notice.

SECTION 4. Content of Annual Reports. The Institution's Annual Report shall contain or incorporate by reference the following:

(i) Audited financial statements and (ii) summary information of the kind set forth in the charts and tables appearing in Appendix A to the Official Statement for the Bonds under the headings "Enrollment", "Financial Aid", "Endowment and Investments", and "Accounting Matters" for the most recent fiscal year of the Institution.

The financial statements provided pursuant to Sections 3 and 4 of this Disclosure Agreement shall be prepared in conformity with generally accepted accounting principles, as in effect from time to time. Any or all of the items listed above may be incorporated by reference from other documents, including official statements of debt issues with respect to which the Institution is an "obligated person" (as defined by the Rule), which have been filed with each of

BOS-BUSN:525532.2

-4-

the Repositories or the Securities and Exchange Commission. If the document incorporated by reference is a final official statement, it must be available from the Municipal Securities Rulemaking Board. The Institution shall clearly identify each such other document so incorporated by reference.

SECTION 5. Reporting of Significant Events.

(a)    This Section 5 shall govern the giving of notices of the occurrence of any of the following events:

1.    Principal and interest payment delinquencies with respect to the Bonds or under the Agreement.

2.    Non-payment related defaults under the Agreement.

3.    Unscheduled draws on debt service reserves reflecting financial difficulties.

4.    Unscheduled draws on credit enhancements reflecting financial difficulties.

5.    Substitution of credit or liquidity providers, or their failure to perform.

6.    Receipt by the Issuer of an adverse tax opinion or the occurrence of any event adversely affecting the tax-exempt status of the Bonds.

7.    Modifications to rights of the Owners of the Bonds.

8.    Giving of notice of redemption of any Bonds (the giving of notice of regularly scheduled mandatory sinking fund redemption shall not be deemed material for this purpose under clause (b) of this Section 5).

9.    Defeasance of the Bonds or any portion thereof.

10.    Release, substitution or sale of property securing repayment of the Bonds.

11.    Any change in the rating on the Bonds or the rating of any obligated person, credit enhancer or liquidity facility provider.

(b)    Whenever the Institution obtains knowledge of the occurrence of a Listed Event, if such Listed Event is material, the Institution shall, in a timely manner and in writing, direct the Dissemination Agent to file a notice of such occurrence with the Municipal Securities Rulemaking Board and each State Repository. The Institution shall provide a copy of each such notice to the Agency and the Trustee. The Dissemination Agent, if other than the Institution, shall have no duty to file a notice of an event described hereunder unless it is directed in writing to do so by the Institution, and shall have no responsibility

-5-

for verifying any of the information in any such notice or determining the materiality of the event described in such notice.

SECTION 6. <u>Termination of Reporting Obligation</u>. The Institution's obligations under this Disclosure Agreement shall terminate upon the defeasance, prior redemption or payment in full of all of the Bonds or upon delivery to the Trustee of an opinion of counsel expert in federal securities laws selected by the Institution and acceptable to the Trustee to the effect that compliance with this Disclosure Agreement no longer is required by the Rule. If the Institution's obligations under the Agreement are assumed in full by some other entity, such person shall be responsible for compliance with this Disclosure Agreement in the same manner as if it were the Institution and the original Institution shall have no further responsibility hereunder.

SECTION 7. <u>Dissemination Agent</u>. The Institution may, from time to time with notice to the Trustee and the Agency, appoint or engage a third-party Dissemination Agent to assist it in carrying out its obligations under this Disclosure Agreement, and may, with notice to the Trustee and the Agency, discharge any such third-party Dissemination Agent, with or without appointing a successor Dissemination Agent. The Dissemination Agent (if other than the Institution) may resign upon 30 days' written notice to the Institution, the Trustee and the Agency.

SECTION 8. <u>Amendment; Waiver</u>. Notwithstanding any other provision of this Disclosure Agreement, the Institution and the Trustee may amend this Disclosure Agreement (and the Trustee shall agree to any amendment so requested by the Institution) and any provision of this Disclosure Agreement may be waived, if such amendment or waiver is supported by an opinion of counsel expert in federal securities laws acceptable to both the Institution and the Trustee to the effect that such amendment or waiver would not, in and of itself, violate the Rule. Without limiting the foregoing, the Institution and the Trustee may amend this Disclosure Agreement if (a) such amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature or status of the Institution or of the type of business conducted by the Institution, (b) this Disclosure Agreement, as so amended, would have complied with the requirements of the Rule at the time the Bonds were issued, taking into account any amendments or interpretations of the Rule, as well as any change in circumstances, and (c) (i) the Trustee determines, or the Trustees receives an opinion of counsel expert in federal securities laws and acceptable to the Trustee to the effect that, the amendment does not materially impair the interests of the Bondowners or (ii) the amendment is consented to by the Bondowners as though it were an amendment to the Agreement pursuant to Section 1101 of the Agreement. The annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment to this Disclosure Agreement and the impact of the change in the type of operating data or financial information being provided. Neither the Trustee nor the Dissemination Agent shall be required to accept or

BOS-BUSN:525532.2

-6-

acknowledge any amendment of this Disclosure Agreement if the amendment adversely affects its respective rights or immunities or increases its respective duties hereunder.

SECTION 9. <u>Additional Information</u>. Nothing in this Disclosure Agreement shall be deemed to prevent the Institution from disseminating any other information, using the means of dissemination set forth in this Disclosure Agreement or any other means of communication, or including any other information in any Annual Report or notice of occurrence of a Listed Event, in addition to that which is required by this Disclosure Agreement. If the Institution chooses to include any information in any Annual Report or notice of occurrence of a Listed Event in addition to that which is specifically required by this Disclosure Agreement, the Institution shall have no obligation under this Disclosure Agreement to update such information or include it in any future Annual Report or notice of occurrence of a Listed Event.

SECTION 10. <u>Default</u>. In the event of a failure of the Institution or the Dissemination Agent to comply with any provision of this Disclosure Agreement, the Trustee may (and, at the request of Bondowners representing at least 25% in aggregate principal amount of Outstanding Bonds, shall), take such actions as may be necessary and appropriate, including seeking specific performance by court order, to cause the Institution or the Dissemination Agent, as the case may be, to comply with its obligations under this Disclosure Agreement. Without regard to the foregoing, any Bondowner may take such actions as may be necessary and appropriate, including seeking specific performance by court order, to cause the Institution or the Dissemination Agent, as the case may be, to comply with its obligations under this Disclosure Agreement. A default under this Disclosure Agreement shall not be deemed an Event of Default under the Agreement, and the sole remedy under this Disclosure Agreement in the event of any failure of the Institution or the Dissemination Agent to comply with this Disclosure Agreement shall be an action to compel performance.

SECTION 11. <u>Duties, Immunities and Liabilities of Trustee and Dissemination Agent</u>. As to the Trustee, Article VII of the Agreement is hereby made applicable to this Disclosure Agreement as if this Disclosure Agreement were (solely for this purpose) contained in the Agreement. The Dissemination Agent (if other than the Institution) shall have only such duties as are specifically set forth in this Disclosure Agreement, and the Institution agrees to indemnify and save the Dissemination Agent (if other than the Institution), its officers, directors, employees and agents, harmless against any loss, expense and liabilities which it may incur arising out of or in the exercise or performance of its powers and duties hereunder, including the costs and expenses (including reasonable attorneys' fees) of defending against any claim of liability, but excluding liabilities due to the Dissemination Agent's negligence or willful misconduct. The obligations of the Institution under this section shall survive resignation or removal of the Dissemination Agent and payment of the Bonds. The Institution covenants that whenever it is serving as Dissemination Agent, it

-7-

shall take any action required of the Dissemination Agent under this Disclosure Agreement.

The Trustee shall have no obligation under this Disclosure Agreement to report any information to any Repository or any Bondowner. If an officer of the Trustee obtains actual knowledge of the occurrence of an event described in Section 5 hereunder, whether or not such event is material, the Trustee shall timely notify the Institution of such occurrence, provided, however, that any failure by the Trustee to give such notice to the Institution shall not affect the Institution's obligations under this Disclosure Agreement or give rise to any liability by the Trustee for such failure.

SECTION 12. <u>Beneficiaries</u>.    This Disclosure Agreement shall inure solely to the benefit of the Institution, the Trustee, the Dissemination Agent, the Participating Underwriter and the Bondowners, and shall create no rights in any other person or entity.

-8-

SECTION 13. <u>Disclaimer</u>. No Annual Report or notice of a Listed Event filed by or on behalf of the Institution under this Disclosure Agreement shall obligate the Institution to file any information regarding matters other than those specifically described in Section 4 and Section 5 hereof, nor shall any such filing constitute a representation by the Institution or raise any inference that no other material events have occurred with respect to the Institution or the Bonds or that all material information regarding the Institution or the Bonds has been disclosed. The Institution shall have no obligation under this Disclosure Agreement to update information provided pursuant to this Disclosure Agreement except as specifically stated herein.

Date:_____

BRADFORD COLLEGE

By _____
        Authorized Officer

CHITTENDEN TRUST COMPANY,
    as Trustee

By _____
        Authorized Officer

EXHIBIT A

NOTICE TO REPOSITORIES OF FAILURE TO FILE ANNUAL REPORT

Name of Issuer:                    Massachusetts Industrial Finance Agency

Name of Bond Issue:                Bradford College Issue, Series 1998

Name of Obligated Person:          Bradford College

Date of Bonds:                     _____, 1998


NOTICE IS HEREBY GIVEN that the Bradford College (the "Institution") has
not provided an Annual Report with respect to the above-named Bonds as
required by the Continuing Disclosure Agreement dated _____, 1998
between the Institution and Chittenden Trust Company, as Trustee.


Dated:_____

                                   TRUSTEE/DISSEMINATION     AGENT    on
                                   behalf of INSTITUTION

[cc:  Institution]

BOS-BUSN:525532.2

EXHIBIT B

NATIONAL REPOSITORIES

Bloomberg Municipal Repositories
P.O. Box 840
Princeton, New Jersey 08542-0840
PH: (609) 279-3200
FAX: (609) 279-5962
Email: munis@bloomberg.com

Thomson NRMSIR
Attn: Municipal Disclosure
395 Hudson Street
New York, New York 10014
PH: (212) 807-5001
FAX: (212) 989-2078
Email: Disclosure@Muller.com

Kenny Information Systems, Inc.
65 Broadway, 16th Floor
New York, New York 10006
Attn: Kenny Repository Service
PH: (212) 770-4595
FAX: (212) 797-7994

Donnelly Financial
Municipal Securities Disclosure Archive
559 Main Street
Hudson, MA 01749
PH: (800) 580-3670
FAX: (978) 562-1969

DPC Data Inc.
One Executive Drive
Fort Lee, NJ 07024
PH: (201) 346-0701
FAX: (201) 947-0107

G

89032

**MSRB**

**FORM G-36(OS) – FOR OFFICIAL STATEMENTS**

---

**SECTION I – MATERIALS SUBMITTED**

A. THIS FORM IS SUBMITTED IN CONNECTION WITH (check one):

   1. ☑ A FINAL OFFICIAL STATEMENT RELATING TO A PRIMARY OFFERING OF MUNICIPAL SECURITIES (enclose two (2) copies)

     (a) DATE RECEIVED FROM ISSUER: **5/8/98**    (b) DATE SENT TO MSRB: **5/8/98**

   2. ☐ AN AMENDED OFFICIAL STATEMENT WITHIN THE MEANING OF RULE G-36(d) (enclose two (2) copies)

     (a) DATE RECEIVED FROM ISSUER: _____    (b) DATE SENT TO MSRB: _____

B. IF MATERIALS SUBMITTED WITH THIS FORM CONSIST OF MORE THAN ONE DOCUMENT (e.g., preliminary official statement and wrap, even if physically attached), PLEASE CHECK HERE: ☐

C. IF THIS FORM AMENDS PREVIOUSLY SUBMITTED FORM WITHOUT CHANGING MATERIALS SUBMITTED, PLEASE CHECK HERE (include copy of original Form G-34(OS)): ☐

---

**SECTION II – IDENTIFICATION OF ISSUE(S)**

Each issue must be listed separately. If more space is needed to list additional issues, please include on separate sheet and check here: ☐

A. NAME OF ISSUER: **Massachusetts Industrial Finance Agency**    STATE: **MA**

   DESCRIPTION OF ISSUE: **Revenue Bonds, Bradford College Issue, Series 1998**    DATED DATE: **5/1/98**

B. NAME OF ISSUER: _____    STATE: _____

   DESCRIPTION OF ISSUE: _____    DATED DATE: _____

C. NAME OF ISSUER: _____    STATE: _____

   DESCRIPTION OF ISSUE: _____    DATED DATE: _____

---

**SECTION III – TRANSACTION INFORMATION**

A. LATEST FINAL MATURITY DATE OF ALL SECURITIES IN OFFERING: **11/1/2028**

B. DATE OF FINAL AGREEMENT TO PURCHASE, OFFER OR SELL SECURITIES (Date of Sale): **4/29/98**

C. ACTUAL OR EXPECTED DATE OF DELIVERY OF SECURITIES TO UNDERWRITER(S) (Bond Closing): **5/13/98**

D. IF THESE SECURITIES ADVANCE REFUND ALL OR A PORTION OF ANOTHER ISSUE, PLEASE CHECK HERE: ☐

   A separate Form G-36(ARD) and copies of the advance refunding documents must be submitted for each issue advance refunded.

---

**SECTION IV – UNDERWRITING ASSESSMENT INFORMATION**

This information will be used by the MSRB to compute any rule A-13 underwriting assessment that may be due on this offering. The managing underwriter will be sent an invoice if a rule A-13 assessment is due on the offering.

A. MANAGING UNDERWRITER **Advest, Inc.**    SEC REG. NUMBER: **821409**

B. TOTAL PAR VALUE OF ALL SECURITIES IN OFFERING: $ **17,930,000**

C. PAR AMOUNT OF SECURITIES UNDERWRITTEN (if different from amount shown in item B above): $ _____

D. CHECK ALL THAT APPLY:

   1. ☐ At the option of the holder thereof, all securities in this offering may be tendered to the issuer of such securities or its designated agent for redemption or purchase at par value or more at least as frequently as every nine months until maturity, earlier redemption, or purchase by the issuer or its designated agent.

   2. ☐ At the option of the holder thereof, all securities in this offering may be tendered to the issuer of such securities or its designated agent for redemption or purchase at par value or more at least as frequently as every two years until maturity, earlier redemption, or purchase by the issuer or its designated agent.

   3. ☐ This offering is exempt from SEC Rule 15c2-12 under section (d)(1)(i) of that rule. Section (d)(1)(i) of SEC Rule 15c2-12 states that an offering is exempt from the requirements of the rule if the securities offered have authorized denominations of $100,000 or more and are sold to no more than 35 persons each of whom the participating underwriter believes: (1) has the knowledge and expertise necessary to evaluate the merits and risks of the investment; and (2) is not purchasing for more than one account, or with a view toward distributing the securities.

---

**CONTINUED ON OTHER SIDE**

# SECTION V – CUSIP INFORMATION

MSRB rule G-34 requires that CUSIP numbers be assigned to each new issue of municipal securities unless the issue is ineligible for CUSIP number assignment under the eligibility criteria of the CUSIP Service Bureau.

A. CUSIP-9 NUMBERS OF ISSUE(S)

| Maturity Date | CUSIP Number | Maturity Date | CUSIP Number | Maturity Date | CUSIP Number |
|---|---|---|---|---|---|
| 11/1/2000 | 575925 PL0 | 11/1/2018 | 575925 PR7 | | |
| 11/1/2001 | 575925 PM8 | 11/1/2028 | 575925 PS5 | | |
| 11/1/2002 | 575925 PN6 | | | | |
| 11/1/2003 | 575925 PP1 | | | | |
| 11/1/2004 | 575925 PK2 | | | | |
| 11/1/2005 | 575925 QE5 | | | | |
| 11/1/2006 | 575925 QF2 | | | | |
| 11/1/2007 | 575925 QG0 | | | | |
| 11/1/2008 | 575925 PQ9 | | | | |

B  IF ANY OF THE ABOVE SECURITIES HAS A "CUSIP-6" BUT NO "CUSIP-9", CHECK HERE AND LIST THEM BELOW:   ☐
(Please see instructions in Form G-36 Manual)

LIST ALL CUSIP-6 NUMBERS ASSIGNED: _____

State the reason why such securities have not been assigned a "CUSIP-9": _____

_____

C  IF ANY OF THESE SECURITIES IS INELIGIBLE FOR CUSIP NUMBER ASSIGNMENT, PLEASE CHECK HERE:   ☐

State the reason why such securities are ineligible for CUSIP number assignment:_____

_____

# SECTION VI – MANAGING UNDERWRITER'S CERTIFICATION AND SIGNATURE

THE UNDERSIGNED CERTIFIES THAT THE MATERIALS ACCOMPANYING THIS FORM ARE AS DESCRIBED IN SECTION I ABOVE AND THAT ALL OTHER INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT. THE UNDERSIGNED ACKNOWLEDGES THAT SAID MATERIALS WILL BE PUBLICLY DISSEMINATED.

RECEIVED

MAY 11 1998

"M.S.R.B"

TIFIED IN