UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 MAR -1  P 4: 09

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| T. ROWE PRICE TAX-FREE HIGH YIELD FUND, INC., et al., | ) ) ) | |
| Plaintiffs, | ) | C.A. No. 04-11667-RGS |
| v. | ) | |
| KAREN M. SUGHRUE, et al., | ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF BRADFORD DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

PROCEDURAL BACKGROUND ................................................................................1

ARGUMENT ...........................................................................................................2

I.    THE COURT SHOULD DISMISS THE STATE-LAW CLAIMS BECAUSE
      THEY FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE
      GRANTED...................................................................................................2

      A.    Count IV Fails to State a Claim Against the Bradford Defendants for
            a Violation of the Massachusetts Uniform Securities Act (M.G.L. c.
            110A, §410) ........................................................................................2

            1.    The Bradford Defendants Cannot Be Held Liable Under §410
                  Because They Are Not Alleged to Have Sold or Offered the
                  Bonds or to Have Controlled the Seller .......................................2

            2.    Plaintiffs Do Not Allege the Standing Requirements for a §410
                  Claim ...................................................................................6

            3.    Plaintiffs Have Failed to Allege Any Actionable
                  Misrepresentation or Omission in the Official Statement..........6

            4.    Count IV Is Barred by the Four-Year Statute of Repose...........9

      B.    Count V, for Fraud and Intentional Misrepresentation, Fails to State
            a Claim Against the Bradford Defendants ............................................12

            1.    Plaintiffs Have Failed to Plead the Elements of a Fraud Claim,
                  Much Less with the Particularity Required by Fed. R. Civ. P.
                  9(b)......................................................................................12

            2.    Plaintiffs' Allegations Establish that They Did Not Reasonably
                  Rely on the Purported Misrepresentations or Omissions in the
                  Official Statement ...................................................................16

      C.    Count VI Fails to Plead a Viable Claim Against the Bradford
            Defendants for Negligent Misrepresentation.........................................18

            1.    Massachusetts Law Does Not Recognize a Claim of Negligent
                  Misrepresentation Without Privity Against the Bradford
                  Defendants ............................................................................18

            2.    Plaintiffs Have Failed to Adequately Plead the Elements of
                  Negligent Misrepresentation ......................................................21

D.   The Complaint Fails to State a Claim for Breach of Fiduciary
Duty ...........................................................................................22

E.   The Complaint Fails to State a Claim Under
Chapter 93A ..............................................................................28

1.   Plaintiffs Have Failed to Plead a Sufficient Relationship
Between Them and Any of the Bradford Defendants...............28

2.   The Chapter 93A Claim Is Based on Allegations that Are Not
Actionable .....................................................................................29

II.   ALL THE STATE-LAW CLAIMS AGAINST THE TRUSTEE
DEFENDANTS ARE BARRED AS A MATTER OF LAW BY THE
DOCTRINE OF CHARITABLE IMMUNITY.................................................31

A.   The State-Law Claims Against the Trustee Defendants Are Barred by
M.G.L. c. 231, §85W ...............................................................31

B.   The State-Law Claims Against the Trustee Defendants Are Barred by
M.G.L. c. 231, §85K ...............................................................36

CONCLUSION ...........................................................................................37

## TABLE OF AUTHORITIES

### Cases

*Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676 (D. Mass. 1993)............................5

*Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420 (10th Cir. 1991)....................................11

*Armstrong v. Rohm & Haas Co., Inc.*, 349 F. Supp. 2d 71 (D. Mass. 2004) .............12, 13

*Atherton v. Emerson*, 199 Mass. 199, 85 N.E. 530 (1908) ................................................23

*Austin v. Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36 (D. Mass. 1993) ...................15

*Bamberg v. SG Cowen*, 236 F. Supp. 2d 79 (D. Mass. 2002)............................................15

*Berliner v. Lotus Development Corp.*, 783 F. Supp. 708 (D. Mass. 1992)........................19

*Cantell v. Hill Holliday Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 772 N.E.2d 1078

    (2002)..................................................................................................................30

*Conners v. Northeast Hospital Corp., Inc.*, 439 Mass. 469, 789 N.E.2d

    129 (2003)........................................................................................................33, 34

*Cooperman v. Individual, Inc.*, Civ. A. 96-12272-DPW (D. Mass. May 27, 1998)

    (1998 WL 953726)...............................................................................................22

*Cote v. Astra USA, Inc.*, No. 962501J (Mass. Super. Ct. Feb . 4, 1998)

    (1998 WL 1184110)..............................................................................................17

*Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628 (3rd Cir. 1989)......................7

*Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, Civ. A.

    No. 12150 (Del. Ch. Dec. 30, 1991) (1991 WL 2727613) ....................................25, 26

*Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563 (D.N.J. 2002) ....................................11

*DeLuca v. Jordan*, 57 Mass. App. Ct. 126, 781 N.E.2d 849 (2003)..................................20

*Driscoll v. Landmark Bank for Savings,* 758 F. Supp. 48 (D. Mass. 1991) .......................13

*Egan v. Athol Memorial Hospital*, 971 F. Supp. 37 (D. Mass. 1997)................................29

*Engl v. Berg*, 511 F. Supp. 1146 (E.D. Pa. 1981)................................................................11

*Enman v. Trustees of Boston University*, 270 Mass. 299, 170 N.E. 43(1930).............31, 35

*Finn v. Genrad, Inc.,* No. 20003292C (Mass. Super. Ct. Jan. 17, 2002)

    (2002 WL 532607).......................................................................................................13

*Frohberg v. Merrimack Mut. Fire Ins. Co.,* 34 Mass. App. Ct. 462, 612 N.E.2d 273

    (1993)..........................................................................................................................30

*Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 787-89 (1992)...................................25

*Goldberg v. Northeastern University*, 60 Mass. App. Ct. 707, 805 N.E.2d 517

    (2004).................................................................................................................31, 33

*Greenstone v. Cambex Corp.,* 975 F.2d 22 (1st Cir. 1992) ...............................................13

*Haft v. Eastland Financial Corp.,* 755 F. Supp. 1123 (D.R.I. 1991)..................................14

*Hathaway v. Huntley*, 284 Mass. 587, 188 N.E. 616 (1933) .............................................24

*Hayduk v. Lanna*, 775 F.2d 441 (1st Cir. 1985) ................................................................13

*Hurley v. Federal Deposit Ins. Corp.,* 719 F. Supp. 27 (D. Mass. 1989).........................19

*In re Ben Franklin Retail Stores*, 225 B.R. 646, 653-54 (Bankr. N.D. Ill. 1998).............25

*In re Boston Regional Medical Center, Inc.,* 328 F. Supp. 2d 130

    (D. Mass. 2004)...............................................................................................23, 33, 35

*In re Computervision Securities Litigation*, 869 F. Supp. 56 (D. Mass. 1994) ..................4

*In re Fidelity/Apple Securities Litigation*, 986 F. Supp. 42 (D. Mass. 1997)...................12

*In re Lernout & Hauspie Securities Litigation*, 286 B.R. 33 (D. Mass. 2002)............16, 17

*In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148

    (D. Mass. 2003).................................................................................................16

*In re Stratus Computer, Inc. Securities Litigation*, No. Civ. A. 89-2075-Z

    (D. Mass. Mar. 27, 1992) (1992 WL 73555) .................................................21

*In re Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993)..............................................7, 8

*Jackson Nat. Life Ins. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697 (2d Cir. 1994)..............11

*Johnson v. Brown & Williamson Tobacco Corp.*, 122 F. Supp. 2d 194

    (D. Mass. 2000)...............................................................................................16

*Kaufman v. Magid*, 539 F. Supp. 1088 (D. Mass. 1982) .....................................................6

*Kuwaiti Danish Computer Co., v. Digital Equipment Corp.*, 438 Mass. 459,

    781 N.E.2d 787 (2003)....................................................................................17

*Lalor v. Omtool, Ltd.*, No. Civ. 99-469M (D.N.H. Dec. 14, 2000)

    (2000 WL 1843247)..........................................................................................4

*Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson*, 501 U.S. 350 (1991)..............10

*Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 396 N.E.2d 149 (1979) .........29

*Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49 (D. Mass. 1995) ..........21

*Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 679 N.E.2d 191

    (1997)..........................................................................................................31, 33

*Loan v. Federal Deposit Insurance Corp.*, 717 F. Supp. 964 (D. Mass. 1989)...............3, 4

*LoCicero v. Hartford Ins. Group*, 25 Mass. App. Ct. 339, 518 N.E.2d 530 (1988)..........30

*Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 809 N.E.2d 1017

    (2004)....................................................................................4, 6, 7, 10, 11, 17, 22

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26
(1st Cir. 1998) ..................................................................................................30

*Masso v. United Parcel Serv. of America, Inc.*, 884 F. Supp. 610 (D. Mass. 1995) .........22

*McGuinness v. Cotter*, 412 Mass. 617, 591 N.E.2d 659 (1992) ..........................................9

*Merrian v. Smith*, 599 S.W.2d 548 (Tenn. App. 1979)........................................................24

*Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698 (5th Cir. 2004) .....................................10

*Missett v. Cardinal Cushing High School*, 43 Mass. App. Ct. 5, 680 N.E.2d 563
(1997)..............................................................................................................33

*Moose v. Massachusetts Institute of Technology*, 43 Mass. App. Ct. 420, 683 N.E.2d 706
(1997)..............................................................................................................31

*Mosko v. Defilippo*, No. 91-10675-Z (D. Mass. Sep. 10, 1991) (1991 WL 191211) ........21

*Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 446 N.E.2d 681 (1983)..............28

*Nett v. Bellucci*, 437 Mass. 630, 774 N.E.2d 130 (2002)...............................................9, 10

*Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 688 N.E.2d 1368 (1998)......20

*Paparella v. Idreco Invest S.P.A.*, No. 9401190 (Mass. Super. Ct. Oct. 6, 1995)
(1995 WL 1146158)........................................................................................14

*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539 (8th Cir. 1997) ..............................................8

*Pinter v. Dahl*, 486 U.S. 622 (1988) ....................................................................................3

*P.J. Gear & Son, Inc. v. City of Medford*, No. 02-03408 (Mass. Super. Ct. Apr. 24, 2003)
(2003 WL 21027159).......................................................................................29

*PMP Assoc., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915 (1975) .......29

*Pobieglo v. Monsanto Co.,* 402 Mass. 112, 521 N.E.2d 728 (1988) ...................................9

*Pond v. Framingham & Lowell Railroad Co.,* 130 Mass. 194 (1881) ...........................24

*Post v. Belmont Country Club, Inc.,* 60 Mass. App . Ct. 645, 805 N.E.2d 63 (2004) .........9

*Production Resources Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772

    (Del. Ch. 2004) ...........................................................................................25

*Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.,* 884 F.2d 1510

    (1st Cir. 1989) .............................................................................................30

*Reder v. Travelers Plan Administrators of Connecticut, Inc.,* 44 F. Supp. 92

    (D. Mass. 1999)...........................................................................................20

*Reisman v. KPMG Peat Marwick LLP,* 57 Mass. App. Ct. 100, 787 N.E.2d 1060

    (2003) .............................................................................................12, 20, 29

*Schultz v. Rhode Island Hospital Trust National Bank,* 94 F.3d 721 (1st Cir. 1996)........15

*Sebago, Inc. v. Beazer East, Inc.,* 18 F. Supp. 2d 70 (D. Mass. 1998) .............................21

*Shaw v. Digital Equipment Corp.,* 82 F.3d 1194 (1st Cir. 1996).........................................3

*Sound Techniques, Inc. v. Hoffman,* 50 Mass. App. Ct. 425, 737 N.E.2d 920 (2000) ......17

*Steiner v. Unitrode Corp.,* 834 F. Supp. 40 (D. Mass. 1993) ...........................................19

*Summers v. Cherokee Children's & Family Services, Inc.,* 112 S.W.2d 486
    (Tenn. App. 2002)........................................................................................26

*Super Valu Stores, Inc. v. First National Bank of Columbus, Georgia,* 463 F. Supp. 1183

    (M.D. Ga. 1979)..........................................................................................24

*Sutton v. Reagan & Gee,* 405 S.W.2d 828 (Tex. App. 1966)...........................................24

*Suzuki of Western Mass., Inc. v. Outdoor Sports Expo, Inc.,* 126 F. Supp. 2d 40 (D. Mass. 2001) ......................................................................................................................................29

*Tabankin v. Kemper Short-Term Global Income Fund*, No. 93C5231 (N.D. Ill. Feb. 1, 1994) (1994 WL 30541) ...........................................................................................6

*TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 439 (1976) ......................................................7

*Valley Stream Teachers Federal Credit Union v. Commissioner of Banks*, 376 Mass. 845, 384 N.E.2d 200 (1978).............................................................................................5

*Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 575 N.E.2d 70 (1991).............................12, 14

## **Statutes**

15 U.S.C. §77l.......................................................................................................... 3-7, 10

15 U.S.C. §77m...............................................................................................................10

Fed. R. Civ. P. 9(b) .............................................................................................1, 13, 21, 22

Fed. R. Civ. P. 12(b) .........................................................................................................1

M.G.L. c. 93A, § 2 ...........................................................................................................29

M.G.L. c. 93A, §11 ..........................................................................................................28

M.G.L. c. 110A, §410 ................................................................................................. 2, 3, 5, 6-11

M.G.L. c. 180, §6C ..........................................................................................................26

M.G.L. c. 231, §85K .........................................................................................................33, 36

M.G.L. c. 231, §85W ........................................................................................................31, 32, 35

M.G.L. c. 260, §2B ...........................................................................................................9, 10

Mass. St. 1972, c. 694 ........................................................................................................10

Mass. St. 1803, c. 74 ..........................................................................................................31

Mass. St. 1932, c. 64 ..........................................................................................................31

**Other Authorities**

T. Dinsmoor, "Director Decision Making in the Zone of Corporate Insolvency,"

    Boston B.J. at 18 (Nov./Dec. 2003) ......................................................................23, 24

H. Goldschmid, "The Fiduciary Duties of Nonprofit Directors and Officers: Paradoxes,

    Problems, and Proposed Reforms," 23 Iowa J. Corp. L. 631, 641 (1998)....................26

Peregrine et al., "The Fiduciary Duties of Healthcare Directors in the Zone of

    Insolvency," 35 Journal of Health Law 227, 236-242 (Spring 2002).....................26, 27

Pursuant to Fed. R. Civ. P. 9(b) and Rule 12(b)(6), the Bradford Defendants[1]
move to dismiss the Amended Complaint against them in its entirety.

## PROCEDURAL BACKGROUND

Plaintiffs' original Complaint in this action alleged only three claims, all under
the federal securities laws. The Bradford Defendants filed a motion to dismiss the
original Complaint on January 20, 2005. On the same day, plaintiffs filed their Amended
Complaint ("Am. Cp."). The Amended Complaint adds five claims under state law
(Counts IV through VIII) as well as a new plaintiff, ACA Financial Guaranty Corporation
("ACA"), which asserts claims only under state law (Counts V, VI, and VII).[2] The
factual allegations of the Amended Complaint are virtually identical to those of the
original Complaint except for the addition of a few allegations that are relevant only to
the state-law claims. *See, e.g.,* Am. Cp. ¶¶66, 67, 72, and 73. There is no difference in
the two complaints' pleading of the federal claims.

Because the Bradford Defendants' motion to dismiss the original Complaint
comprehensively addresses the grounds for dismissal of the federal claims, and in the
interest of avoiding repetition and unnecessary duplication of paper, this memorandum
will address only the newly added state-law claims. In support of their motion to dismiss
the federal claims in the Amended Complaint, the Bradford Defendants hereby
incorporate by reference, as though fully set forth, the memorandum in support of their
motion to dismiss the original Complaint ("Original MTD" or "Original Motion to
Dismiss"). Additionally, and because the state-law claims are deficient for many of the

---

[1]    "Bradford Defendants" refers to all defendants in this action except Advest, Inc.
[2]    Plaintiffs added their state-law claims two days after Judge Nonnie Burnes ordered a stay of the
parallel action that plaintiffs had filed in Massachusetts Superior Court. The state action relied on the same
factual allegations as this action, and asserted only the five state-law claims that plaintiffs have recently
added to this action through the Amended Complaint.

same reasons that have already been discussed in the memorandum to dismiss the

original Complaint, the Bradford Defendants will rely on the arguments in the Original

Motion to Dismiss in support of their motion to dismiss the state claims in the Amended

Complaint, and they therefore incorporate it here for that purpose as well.

## ARGUMENT

I.  **THE COURT SHOULD DISMISS THE STATE-LAW CLAIMS BECAUSE THEY FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED.**

    A.  **Count IV Fails to State a Claim Against the Bradford Defendants for a Violation of the Massachusetts Uniform Securities Act (M.G.L. c. 110A, §410).**

        1.  **The Bradford Defendants Cannot Be Held Liable Under §410 Because They Are Not Alleged to Have Sold or Offered the Bonds or to Have Controlled the Seller.**

Count IV of the Amended Complaint asserts that Advest and the Bradford

Defendants violated the Massachusetts Uniform Securities Act, M.G.L. c. 110A, §410, by

reason of the alleged misstatements and omissions in the Official Statement. Am. Cp.

¶¶93-95. Section 410(a)(2) imposes liability on any person who "_offers_ or _sells_ a security

by means of any untrue statement of a material fact or any omission to state a material

fact necessary in order to make the statements made ... not misleading," and provides

that such a person "is liable to the person _buying_ the security _from him_." (Emphasis

added.) In support of this claim, plaintiffs allege that "_the College_, through the Official

Statement, _offered_, and _Advest_, through its firm offer underwriting, _sold_, securities to

each of the Bondholders by means of untrue statements of material facts and/or

omissions...." Am. Cp. ¶93 (emphasis added). Plaintiffs similarly allege that _Advest_

was the "sole underwriter"; that "the Bonds were offered by means of an Official

2

Statement ... prepared by the <u>sole underwriter</u> of the offering, ... <u>Advest</u>"; that Advest "<u>market[ed]</u> the Bonds to various potential investors"; that "<u>Advest</u> was the <u>firm underwriter</u> of the Bonds and <u>sold bonds</u> to all of the plaintiffs"; and that "<u>Advest sold the bonds</u> by means of the Official Statement." Am. Cp. ¶¶2, 66, 67, 90 (emphasis added). **Plaintiffs, however, do not allege that any of the <u>Bradford Defendants</u>, who are all trustees or officers of the College, either "offered" or "sold" the bonds,** and have therefore failed to state a claim under §410.

And even if plaintiffs had paid lip service to the statutory requirements, the facts plaintiffs have alleged could not support imposing liability on the Bradford Defendants under §410. Federal courts applying §12(2) of the Securities Act of 1933, on which §410 is patterned, have held that where a company sells its securities through a firm underwriter and by means of a prospectus, the claim should be dismissed against the company and its officers or directors unless they actively solicited plaintiffs' purchase of the securities. As the court noted in *Loan v. Federal Deposit Insurance Corp.,* 717 F. Supp. 964, 968 (D. Mass. 1989), the Supreme Court in *Pinter v. Dahl,* 486 U.S. 622, 642, 647 (1988), "explained that §12 only imposes liability on two classes of persons:  those who actually transfer title to securities, and those that 'successfully solicit[ ]' the purchase." 717 F. Supp. at 968.  In *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1215 (1st Cir. 1996), which involved the sale of stock through a firm underwriter, the court held that neither the company nor its directors could be liable under §12(2) for alleged misrepresentations or omissions "unless they actively 'solicited' the plaintiffs' purchase of securities to further their own financial motives, in the manner of a broker or a vendor's agent."

3

Similarly in *Lalor v. Omtool, Ltd.*, No. Civ. 99-469M (D.N.H. Dec. 14, 2000)
(2000 WL 1843247 at *7-8), the court dismissed a §12(2) claim against a company that
issued securities, as well as its officers and directors, where the securities were sold
through underwriters. The Court held that the plaintiff's conclusory allegations that
defendants "solicited the sale" of stock and were "motivated by financial gain" did not
suggest any "sort of relationship" between plaintiffs and defendants that could support a
claim under §12(2). *Id.* at *8. It noted, for example, that plaintiffs had not alleged "that
plaintiffs had any contact whatsoever with any of the defendants, or received any
'solicitations' from them (apart from the Prospectus)." *Id. See also Loan, supra*, 717 F.
Supp. at 968 (dismissing §12(2) claim where complaint alleged that company's officers
and directors had made material misrepresentations and omissions in the Subscription
Offering Circular, but did not allege any facts "connecting the individual defendants to
the sale of the securities"; "[c]ollateral participants in the sale of securities cannot be held
liable under §12(2)"); *In re Computervision Securities Litigation*, 869 F. Supp. 56, 64 n.8
(D. Mass. 1994) (dismissing issuing company and its officers where there was "no
sufficient allegation that they were 'sellers' within the meaning of §12(2)" of securities
that were sold through an underwriter).

Here, where plaintiffs have not alleged that any of the Bradford Defendants
engaged in any solicitation relating to the bonds, much less for personal financial reasons,
or that any of them had any relationship with any of the plaintiffs, they cannot be deemed
"sellers" under §12(2), nor may they be held liable under §410. As the Supreme Judicial
Court ("SJC") recognized in *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 50,
809 N.E.2d 1017, 1025 (2004), the Massachusetts Legislature has directed courts to

interpret §410 "in coordination with" §12(2) of the Securities Act of 1933, 15 U.S.C. §77l(2). The SJC has also recognized that decisions construing the federal statute are applicable to §410. *Valley Stream Teachers Federal Credit Union v. Commissioner of Banks*, 376 Mass. 845, 857-58, 384 N.E.2d 200, 208 (1978); *see also Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676, 684 n.9 (D. Mass. 1993). The federal decisions therefore establish that plaintiffs' §410 claim is defective because the Bradford Defendants are not persons who may be held liable under that statute.

To the extent plaintiffs appear to rely on §410(b) to support their §410 claim against the Bradford Defendants, that reliance is misplaced.[3] *See* Am. Cp. ¶37 (alleging that Bradford Defendants "were officers, directors or persons of a similar status or performing similar functions within the meaning of §410(b) of Mass. G.L. c. 110A, and had the power and influence to direct the management and activities of the College and its employees, and to cause the College to engage in the unlawful conduct complained of herein") (emphasis added). Section 410(b) cannot support a claim against the Bradford Defendants because its plain terms allow the imposition of liability only on persons who control a seller. Where §410(a) expressly allows the imposition of primary liability on both "sellers" and "offerors," but §410(b) provides for secondary liability with respect to control persons of "sellers" only, it is clear that the legislature did not intend to allow secondary liability for control persons of "offerors." Because the College is not alleged to be a "seller," but only an "offer[or]," the control provision of §410(b) on its face cannot support plaintiffs' claims against the Bradford Defendants. Am. Cp. ¶93.

---

[3]    M.G.L. c. 110A, §410(b), addresses the liability of "[e]very person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker dealer or agent who materially aids in the sale." (Emphasis added.)

Moreover, because plaintiffs' allegations would be insufficient to support the imposition of primary liability on the College as an "offeror," as discussed above, the Bradford Defendants could not be held secondarily liable by reason of their purported "control" over the College in any event. *See, e.g., Tabankin v. Kemper Short-Term Global Income Fund*, No. 93C5231 (N.D. Ill. Feb. 1, 1994) (1994 WL 30541 at *4) (dismissing control claim under §12(2) on dismissal of claim against primary violator; "[w]ithout primary liability, there is no secondary liability").

In short, Count IV of the Amended Complaint should be dismissed because plaintiffs have failed to allege any basis for imposing liability on any of the Bradford Defendants under §410.

### 2.   Plaintiffs Do Not Allege the Standing Requirements for a §410 Claim.

To state a claim for a violation of §410, plaintiffs must allege that they purchased the bonds in Massachusetts. *Kaufman v. Magid*, 539 F. Supp. 1088, 1089 (D. Mass. 1982). Plaintiffs not only fail to allege that they purchased the bonds in the offering, but make no allegation that any of the plaintiffs (four of which are institutions headquartered outside Massachusetts, Am. Cp. ¶¶8-10, 12) purchased the bonds in Massachusetts. Because the Amended Complaint does not allege that any of the plaintiffs have standing to bring a §410 claim, Count IV should be dismissed.

### 3.   Plaintiffs Have Failed to Allege Any Actionable Misrepresentation or Omission in the Official Statement.

Count IV should be dismissed for the further reason that the Amended Complaint as a matter of law fails to allege any material misrepresentation or omission in the Official Statement that could support liability under §410. In *Marram*, the SJC indicated

6

the applicability of federal law in applying §410 and specifically recognized that

"materiality" under §410 is the same as under the federal securities laws:

> The test whether a statement or omission is material is objective: "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

809 N.E.2d at 1030, *quoting Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628,

641 (3rd Cir. 1989), *quoting TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 439, 449

(1976). The SJC in *Marram* further noted that, just as under §12(2) of the Securities Act,

the court may, when appropriate, determine the materiality of a statement under §410 as a

matter of law. Specifically, "if the alleged misrepresentations or omissions are so

obviously unimportant to an investor that reasonable minds cannot differ on the question

of materiality," the court may "rule that the allegations are inactionable as a matter of

law." 809 N.E.2d at 1030, *quoting TSC Indus.*, 426 U.S. at 450, and *citing, inter alia, In

re Trump Casino Sec. Litig.*, 7 F.3d 357, 369 n.13 (3d Cir. 1993).

As discussed in the Original Motion to Dismiss, *Trump* and a number of other

federal courts have applied the "bespeaks caution" doctrine to conclude as a matter of law

that the sorts of misrepresentations and omissions that plaintiffs allege in the Official

Statement are not material, as a matter of law, in view of cautionary statements and

disclosures that qualify and warn of the risk. *See* Original MTD at 17-20. Although the

SJC in *Marram* concluded that the allegedly misleading oral statements could not be

deemed immaterial as a matter of law under the particular circumstances of that case, the

decision indicates that courts may look to the federal securities laws, including the

"bespeaks caution" doctrine, to decide whether allegations are sufficient to meet the threshold for materiality under §410.[4]

Plaintiffs' §410 claims are based on the same purported misrepresentations and omissions in the Official Statement which they claim violate the federal securities laws. *See* Am. Cp. ¶¶93, 94. For the same reasons discussed in the Bradford Defendants' Original Motion to Dismiss with respect to the federal securities claims, plaintiffs have failed to allege any misrepresentations or omissions in the Official Statement that could support a claim under §410. Their claims of misrepresentations and omissions are belied in the first instance by the plain terms of the Official Statement itself, which discloses the College's financial instability, problems with enrollment and retention, and its uncertain prospects. Original MTD at 5-17.[5] Additionally, the purported misrepresentations cannot support a claim under the federal securities laws, or under §410, because they consist of estimates, predictions, and optimistic statements. *Id.* And even if they were actionable, the alleged statements or omissions are not material, as a matter of law. As discussed in the Original Motion to Dismiss, the Official Statement not only disclosed the College's financial difficulties in detail, but repeatedly and explicitly warned of the risks in the investment, and did so with respect to the very matters plaintiffs claim were misrepresented. *Id.* at 17-22. The alleged misrepresentations and omissions are therefore not actionable under the federal securities laws, or under §410.

---

[4]     The "bespeaks caution" applies to determine the materiality of statements under §12(2) as well as under §10(b) of the Exchange Act. *See, e.g., Trump*, 7 F.3d at 368 n.10 (noting that "materiality requirement" is the same under §10(b) and §12(2), and applying same "bespeaks caution" analysis to determine materiality under both statutes); *see also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 548-549 (8th Cir. 1997) (affirming dismissal of §10(b) and §12(2) claims under bespeaks caution doctrine).
[5]     For the same reasons, plaintiffs cannot establish their burden under §410(a) of proving that they "did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."

4.     **Count IV Is Barred by the Four-Year Statute of Repose.**

Plaintiffs' §410 claim should also be dismissed as time-barred.  Section 410(e) provides that "[n]o person may sue under this section more than four years after the discovery by the person bringing the action of a violation of this chapter...."  (Emphasis added.)  Under Massachusetts law, this provision is a statute of repose that cannot be tolled for any reason.  Plaintiffs' allegations establish that this action should be dismissed because it was brought more than four years after discovery of the matters on which they base their claim.

Massachusetts courts have construed statutory time limits on the commencement of litigation to be statutes of repose when the language of the statute evidences the legislature's intent to impose an absolute limit on suits.  Such expressions of legislative intent have been found in statutes that mandate that an action "shall" be brought within a certain time after a stated event, or where the statute provides that "in no event shall [an action] be commenced more than" a certain number of years after the act or omission on which the claim is based.  *See McGuinness v. Cotter*, 412 Mass. 617, 620-21 & n.6, 591 N.E.2d 659, 662 n.6 (1992) (*citing* G.L. c. 260, §2B, which provides that "in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based," as "expressly" indicating intent to create statute of repose) (emphasis added); *Nett v. Bellucci*, 437 Mass. 630, 635, 774 N.E.2d 130, 134-135 (2002) (same); *Post v. Belmont Country Club, Inc.,* 60 Mass. App . Ct. 645, 653-54 & n.4, 805 N.E.2d 63, 71 & n.4 (2004) (same); *Pobieglo v. Monsanto Co.,* 402 Mass. 112, 118-19, 521 N.E.2d 728, 732

(1988) (statute that directed that suit "shall" be brought within a certain time was a statute of repose).

The language of §410(e) similarly evidences the Legislature's intent to create a statute of repose.  It provides in unambiguous terms that "no person may sue more than four years after discovery of the violation." (Emphasis added).  Like M.G.L. c. 260, §2B, which states that "in no event" may a plaintiff sue more than seven years after the act that gives rise to a medical malpractice claim, §410(e) indicates a definite and clear intent to put an outside limit on lawsuits under §410.  Additionally, the provision of the Securities Act of 1933 establishing a three-year period for suit, 15 U.S.C. §77m, has been recognized to be a statute of repose, further suggesting the Massachusetts Legislature's intent to create a statute of repose under §410 as well.  *See Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson*, 501 U.S. 350, 361-62 (1991); *Miller v. Nationwide Life Ins. Co.,* 391 F.3d 698, 699 (5th Cir. 2004); *see also Marram*, 442 Mass. at 54 n.20, 809 N.E.2d at 1027 n.20 (noting legislature's mandate in St. 1972, c. 694, that courts "coordinate the interpretation and administration of this chapter [Uniform Securities Act] with the related federal legislation," and further noting that limitations period for §12(2) is "in no event more than three years") (emphasis added).

Under Massachusetts law, statutes of repose are not subject to tolling for any reason.  As the SJC held in *Nett*, 437 Mass. at 635, 774 N.E.2d at 134-35, with respect to the statute of repose for medical malpractice claims in that case,

"Like all statutes of repose, '[t]he effect [of these statutes] is to place an <u>absolute time limit</u> on the liability of those within [their] protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired. Unlike statutes of limitation, <u>statutes of repose may not be 'tolled' for any reason</u>, as 'tolling' would deprive the defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose. <u>The only way to satisfy the 'absolute time limit' of a statute of repose is to 'commence' the action prior to the expiration of that time limit</u>."

(Citations omitted; emphasis added.) Accordingly, it is plain that, under Massachusetts law, statutes of repose such as §410(e) are jurisdictional; they are not subject to tolling for any reason; and they absolutely require that suit be commenced within the time stated in the statute.[6]

Plaintiffs' own allegations establish that this action was brought more than four years after plaintiffs discovered the matters that they claim constitute a violation of this statute. As the SJC stated in *Marram*, for purposes of applying §410(e), "the plaintiff is on inquiry notice from the time a reasonable investor would have noticed something was amiss." 442 Mass. at 54 n.20, 809 N.E.2d at 1027 n.20. Plaintiffs' allegations establish that, under their theory that the Official Statement purportedly painted the College as having the rosiest of prospects, they should have known that something was "amiss" at the very latest when the College announced in November 1999 that it was closing. This suit was brought July 2004, more than four years later. The tolling agreements on which plaintiffs rely cannot save their claims because §410(e) is a statute of repose that cannot be tolled, and the absolute time for suit therefore outside the parties' power to change by

---

[6]    Federal courts have similarly held that the three-year limit on claims under §12(2) in §77m is not subject to tolling or equitable estoppel. *See Engl v. Berg*, 511 F. Supp. 1146, 1151 (E.D. Pa. 1981); *Jackson Nat. Life Ins. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 704 (2d Cir. 1994); *Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1435-36 (10th Cir.), *amended on denial of reh'g*, 947 F.2d 897 (10th Cir. 1991), *judgment vacated on other grounds sub nom. Dennler v. Trippet*, 503 U.S. 978 (1992); *Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002).

agreement. Am. Cp. ¶79.  Count IV should be dismissed as time-barred, as well as on the merits.

### B.    Count V, for Fraud and Intentional Misrepresentation, Fails to State a Claim Against the Bradford Defendants.

#### 1.    Plaintiffs Have Failed to Plead the Elements of a Fraud Claim, Much Less with the Particularity Required by Fed. R. Civ. P. 9(b).

Count V purports to allege a claim of fraud and intentional misrepresentation against all the Bradford Defendants.  The claim is based on the same alleged misrepresentations and omissions as their federal securities law claims.[7]  To state a claim for intentional misrepresentation under Massachusetts law, plaintiffs must allege that (1) defendants made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act in reliance thereon, (4) plaintiffs relied upon the representation, and (5) plaintiffs acted to their detriment.  *Armstrong v. Rohm & Haas Co., Inc.,* 349 F. Supp. 2d 71, 81 (D. Mass. 2004), *citing Reisman v. KPMG Peat Marwick LLP,* 57 Mass. App. Ct. 100, 108-109, 787 N.E.2d 1060, 1066 (2003).

Opinions, predictions, estimates, and expectations about the future are not actionable as fraud under Massachusetts law.  *See Zimmerman v. Kent,* 31 Mass. App. Ct. 72, 79, 575 N.E.2d 70, 75 (1991) ("[a] statement on which liability for misrepresentation may be based must be one of fact, nor of expectation, estimate, opinion or judgment"); *In re Fidelity/Apple Securities Litigation,* 986 F. Supp. 42, 49 (D. Mass. 1997) ("mere opinions, predictions about future events, and statements that are true when made, are not

---

[7]    Although the Amended Complaint adds an allegation that defendant Donald Kiszka told ACA "that 1999 student applications to the College exceeded historical levels," plaintiffs do not allege that this statement was not true, but instead affirmatively allege that "the College had more applications for Fall 1998." Am. Cp. ¶¶62, 66.

actionable as misrepresentations under Massachusetts law"); *Finn v. Genrad, Inc.,* No. 20003292C (Mass. Super. Ct. Jan. 17, 2002) (2002 WL 532607 at *6) (statements "expressing no more than a well founded hope, do not rise to the level of facts sufficient to support claims for negligent misrepresentation and deceit"). Plaintiffs must also show that their reliance on the alleged misrepresentations was reasonable. *Armstrong*, 349 F. Supp. 2d at 81.

When plaintiffs sue in federal court on state-law fraud claims, Fed. R. Civ. P. 9(b) requires plaintiffs to plead their allegations of fraud with particularity. *See Driscoll v. Landmark Bank for Savings,* 758 F. Supp. 48, 51 (D. Mass. 1991) (particularity requirement applies to state common-law fraud claims). As the court noted in *Driscoll*, "[i]n the securities context, this circuit has strictly applied Rule 9(b)." 758 F. Supp. at 51. Under this rule, "[a]llegations in the form of mere conclusions, accusations, or speculation are not sufficient to meet Rule 9(b)'s particularity requirement without supporting facts surrounding the scheme to defraud or a basis for believing such a scheme existed." *Id.*, *citing Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985). Rule 9(b) also requires the plaintiff, among other things, "to plead a factual basis that would make it reasonable to determine that a statement was materially false or misleading." *Lindner*, 880 F. Supp. at 57, *citing Greenstone v. Cambex Corp.,* 975 F.2d 22, 25 (1st Cir. 1992). Additionally, "'plaintiffs' complaint must convey 'some sense of how they came to believe that fraud was at the heart of their losses' by explaining how the challenged statements were untrue," and "'conclusory statements that pertain more to mismanagement than to misrepresentations' do not satisfy Rule 9(b)." *Id.* at 52, *quoting*

13

*Haft v. Eastland Financial Corp.,* 755 F. Supp. 1123, 1130 (D.R.I. 1991), and *Loan, supra,* 717 F. Supp. at 967.

Plaintiffs have failed sufficiently to allege the elements of fraud against the Bradford Defendants, much less with the particularity required by Rule 9(b). First, plaintiffs have not alleged with sufficient particularity that any of the Trustee Defendants, who met only three times a year and are not alleged either to have signed or approved the Official Statement, was actually responsible for any of the alleged misrepresentations or omissions in the Official Statement. Original MTD at 23. *See also Paparella v. Idreco Invest S.P.A.,* No. 9401190 (Mass. Super. Ct. Oct. 6, 1995) (1995 WL 1146158 at *3) (dismissing fraud claims where complaint did not allege participation in alleged fraud by defendants "other than in conclusory fashion").

Second, plaintiffs have failed sufficiently to allege that the Official Statement actually made any misstatement or omission, much less an actionable one. Original MTD at 5-17. "The first requirement to sustain a claim of misrepresentation is that the representation must be false." *Zimmerman, supra,* 31 Mass. App. Ct. at 78, 575 N.E.2d at 74. Where the Official Statement cannot reasonably be deemed to have made the misstatements plaintiffs claim, and where plaintiffs rely on opinions, estimates, and optimistic expectations that are not actionable as fraud, plaintiffs' fraud claim cannot stand. Original MTD at 5-17. For the same reasons, and also because of the disclosures and warnings in the Official Statement, the alleged misrepresentations and omissions cannot be deemed material, and therefore cannot support a fraud claim. Original MTD at 17-22.

14

Third, plaintiffs have failed to plead any facts that could support a reasonable inference that any of the Bradford Defendants made any statements that were <u>knowingly</u> false. Plaintiffs have conclusorily pleaded that the "Defendants" as a group made purportedly false statements "fraudulently, intentionally and/or with reckless disregard as to [their] truth or falsity ... <u>or aided and abetted</u> in the making of such statements." Am. Cp. ¶97 (emphasis added). This conclusory and disjunctive allegation is insufficient on its face. Although Massachusetts law recognizes liability for "aiding and abetting" a tort, including fraud, such a claim requires the defendant to have "'unlawful intent,' i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Bamberg v. SG Cowen*, 236 F. Supp. 79, 90-91 (D. Mass. 2002), *quoting Austin v. Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36, 40 (D. Mass. 1993). Plaintiffs must "at least demonstrate some measure of 'active participation' and the knowing provision of substantial assistance ... to the principal's ... alleged fraud." *Id.* at 91, *quoting Schultz v. Rhode Island Hospital Trust National Bank*, 94 F.3d 721, 730 (1st Cir. 1996). Such a claim is also subject to the particularity requirements of Rule 9(b). *Bamberg*, 236 F. Supp. 2d at 90-91. Plaintiffs' bare allegation that one or more unspecified "defendants" purportedly "aided and abetted in the making of ... statements" that plaintiffs claim were made either fraudulently, intentionally, or recklessly by some other unspecified "defendant" does not state a claim, even in conclusory fashion. Am. Cp. ¶97.

Plaintiffs have similarly failed to allege any specific supporting facts that might suggest that any of the Bradford Defendants actually intended to deceive the plaintiffs. Am. Cp. ¶97. Plaintiffs allege no facts suggesting any wrongdoing or improprieties by

15

the Bradford Defendants, nor any facts that would allow a reasonable inference that any

of the Bradford Defendants knew that anything in the Official Statement was false or

misleading. Original MTD at 25-34.

Finally, plaintiffs have failed to plead reliance on the alleged misrepresentations

with particularity, as they must to state a claim. *See In re Lupron Marketing and Sales*

*Practices Litigation*, 295 F. Supp. 148, 181-82 (D. Mass. 2003); *Johnson v. Brown &*

*Williamson Tobacco Corp.,* 122 F. Supp. 2d 194, 208 (D. Mass. 2000) (Rule 9(b)

requires plaintiff to allege "reliance on particular statements"). Their most specific

claims of reliance are that they were "misled regarding the College's inability to service

the debt that it incurred by reason of the issuance of the Bonds, or otherwise to repay the

Bonds," as well as their assertion that they were harmed by "[t]he fraudulent statements

and omissions made by the Defendants, including the concealment of the actual financial

and operating condition of the College." Am. Cp. ¶¶85, 98. Neither of these allegations

amounts to an allegation of detrimental reliance on any particular statement or omission.

### 2.    Plaintiffs' Allegations Establish that They Did Not Reasonably Rely on the Purported Misrepresentations or Omissions in the Official Statement.

The fraud claim should be dismissed for yet another reason: plaintiffs' allegations

establish as a matter of law that they did not reasonably rely on any of the alleged

misrepresentations and omissions, if they relied at all. Like federal securities fraud

claims, Massachusetts fraud claims cannot stand if no reasonable investor could have

relied on the alleged misrepresentation. In *In re Lernout & Hauspie Securities Litigation,*

286 B.R. 33, 42-43 (D. Mass. 2002), for example, the court dismissed Massachusetts

claims of fraud and negligent misrepresentation on the ground that the plaintiff investors