could not reasonably have relied on the "vague and general statements of optimism," or "vague, soft statements" on which they claimed to have relied. As the court explained, "any reliance on [defendant's] vague statements would not be reasonable and would be unimportant to a reasonable investor in light of the total mix of information available." *Id.* at 43.

Massachusetts courts have similarly recognized that, under appropriate circumstances, a court may conclude as a matter of law that the plaintiff could not reasonably have relied on alleged oral misrepresentations that are contradicted by writings. *See Marram*, 809 N.E.2d at 1031 ("in some circumstances a plaintiff's reliance on oral statements in light of contrary written statements is unreasonable as a matter of law"), *citing Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 433-34, 737 N.E.2d 920, 926 (2000) ("no reasonable basis [existed] for ignoring the plain language of the merger clause, in which [the plaintiff] agreed that it was entering into the contract free from influence by or in reliance upon any representations other than those set out in the contract"). *See also Kuwaiti Danish Computer Co., v. Digital Equipment Corp.*, 438 Mass. 459, 468, 781 N.E.2d 787, 795-96 (2003) (prospective buyer could not reasonably rely on statements that conflicted with qualifying language of quotation; "[a]ll that was required of [plaintiffs] was that they read the document to ascertain the obvious") (emphasis added); *Cote v. Astra USA, Inc.*, No. 962501J (Mass. Super. Ct. Feb . 4, 1998) (1998 WL 1184110 at *5) ("Massachusetts courts have denied relief in those instances where the plaintiff alleging fraudulent misrepresentation knew of facts which made his reliance on the misrepresentation unreasonable") (emphasis added). This principle

likewise precludes reliance on a misrepresentation in a written document that is not misleading or material in the context of other information and warnings in the document.

The allegations of the Amended Complaint establish as a matter of law that, if plaintiffs relied at all on any alleged misstatement or omission in the Official Statement, such reliance was not reasonable in view of the disclosures and warnings in the Official Statement about the very matters plaintiffs claim were misrepresented. Original MTD at 17-22. No less than where written statements contradict an oral one, the disclosures and cautions in the Official Statement were part of the mix of information that was available to investors such as plaintiffs. In the face of those disclosures and cautions, no reasonable investor could have relied on what plaintiffs claim were unduly optimistic statements about the College and its prospects. *Id.* The fraud claim should be dismissed for this reason as well.

  **C.**  **Count VI Fails to Plead a Viable Claim Against the Bradford Defendants for Negligent Misrepresentation.**

    **1.**  **Massachusetts Law Does Not Recognize a Claim of Negligent Misrepresentation Without Privity Against the Bradford Defendants.**

Count VI purports to assert a claim for negligent misrepresentation against the Bradford Defendants, alleging that they "negligently made materially untrue and misleading statements to the Plaintiffs, or aided and abetted in the making of such statements, which the Defendants knew or should have known but for their negligence were untrue and misleading at the time they made such statements." Am. Cp. ¶100. This claim cannot stand because, absent circumstances that are not pertinent here, Massachusetts law does not recognize a claim for negligent misrepresentation unless there is privity between the plaintiff and the defendant. For this reason, a number of

courts in securities cases have dismissed negligent misrepresentation claims against officers or directors of a corporation based on allegedly false statements in the company's public disclosures. *See, e.g., Hurley v. Federal Deposit Ins. Corp.,* 719 F. Supp. 27, 34 (D. Mass. 1989) (dismissing Massachusetts-law negligent misrepresentation claim against all defendants based on allegedly false representations in corporate documents, on ground that claim "requires privity between the parties" or "actual knowledge by defendants of the nature and extent of plaintiff's reliance on defendants' statements"); *Steiner v. Unitrode Corp.,* 834 F. Supp. 40, 46 (D. Mass. 1993) (same); *Berliner v. Lotus Development Corp.,* 783 F. Supp. 708, 713 (D. Mass. 1992) (same); *In re Computervision,* 869 F. Supp. at 65 (dismissing negligent misrepresentation claim based on statements in stock sale prospectus, as against all defendants other than those underwriters who were alleged to have sold shares directly to plaintiffs and who were therefore in privity with them).

Plaintiffs have not alleged any facts suggesting privity between any of the plaintiffs and any of the Bradford Defendants, and plainly there is none, where none of them, and not even the College, is alleged to have sold the bonds to the plaintiffs, and where plaintiffs instead allege unequivocally that Advest sold the bonds. *See* Section I(A)(1) above. Nor have plaintiffs pleaded that the Bradford Defendants actually knew of

the nature and extent of the plaintiffs' purported reliance.[8]  Accordingly, they have failed

to plead a viable claim for negligent misrepresentation under Massachusetts law.

Although Massachusetts courts have recognized a limited sort of claim for

negligent misrepresentation without privity under §552 of the Restatement (Second) of

Torts, plaintiffs allege no facts that suggest that such a theory would apply here. *See,*

*e.g., Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 688 N.E.2d 1368 (1998);

*Reisman*, 57 Mass. App. Ct. at 121-22, 787 N.E.2d at 1075.  As the SJC described such a

claim in *Marram*, "[a] defendant is liable for negligent misrepresentation if in the course

of his business, he supplies false information for the guidance of others in their business

transactions, causing and resulting in pecuniary loss to others by their justifiable reliance

on the information, with failure to exercise reasonable care or competence in obtaining or

communicating the information."  442 Mass. at 60 n.25.  Massachusetts courts have

applied this theory of negligent misrepresentation only in the case of the negligent

provision of professional services, such as by accountants, attorneys, and architects. *See,*

*e.g., Nycal*, 688 N.E.2d at 495-96 (accountants); *Reisman*, 787 N.E.2d at 1075

(accountants); *DeLuca v. Jordan*, 57 Mass. App. Ct. 126, 137 & n.12, 781 N.E.2d 849,

856 & n.12 (2003) (noting that liability under §552 has been applied "in professional and

business contexts," such as those involving "information provided to third-party

nonclients by accountants, financial institutions, and real estate brokers engaged by the

client"); *Reder v. Travelers Plan Administrators of Connecticut, Inc.*, 44 F. Supp. 92,

102-03 (D. Mass. 1999) ("[l]iability under section 552 is specifically predicated on

---

[8]      Plaintiffs' conclusory allegation that the "Defendants" as a group "knew the Plaintiffs would rely
upon the misrepresentations to their detriment" does not meet this requirement, particularly where plaintiffs
allege no facts suggesting that any of the Bradford Defendants actually knew about any of the particular
plaintiffs, had any relationship with any of them, or solicited the sale of the bonds to any of them. Am. Cp.
¶97.

negligent misrepresentations made in the context where a professional is employed to provide guidance for others"). There is no suggestion in Massachusetts law that this line of cases was intended to eliminate the long-standing requirement of privity in cases alleging negligent misrepresentation in other situations.

Because the Bradford Defendants are not alleged to be professionals who provided any sort of professional judgment or information in the course of their business, but were merely officers and trustees of an educational institution, §552 cannot support the negligent misrepresentation claim. Count VI should therefore be dismissed, without more.

### 2.    Plaintiffs Have Failed to Adequately Plead the Elements of Negligent Misrepresentation.

Even if it were viable, the negligent misrepresentation claim should be dismissed because plaintiffs have failed sufficiently to plead the elements of negligent misrepresentation. Courts in this district have held that the particularity requirements of Rule 9(b) apply to negligent misrepresentation claims in the securities context because "the same policy against 'strike suits' appl[ies] to negligent misrepresentation claims as appl[ies] to outright claims of fraud.'" *See Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 57 (D. Mass. 1995), *quoting In re Stratus Computer, Inc. Securities Litigation*, No. Civ. A. 89-2075-Z (D. Mass. Mar. 27, 1992) (1992 WL 73555 at *6); *Mosko v. Defilippo*, No. 91-10675-Z (D. Mass. Sep. 10, 1991) (1991 WL 191211 at *4 n.2) (in securities fraud suit, allegations of negligent misrepresentation must comply with Rule 9(b) to extent they are premised upon fraud); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 95 (D. Mass. 1998) (negligent misrepresentation claim requires

plaintiff to plead reliance with particularity).[9]  Rule 9(b) applies to plaintiffs' negligent

misrepresentation claim because the Amended Complaint sounds in fraud, expressly

alleging both common-law fraud and violations of §10(b) of the Securities Exchange Act

of 1934.

For many of the same reasons discussed above at Section I(B) with respect to the

fraud claim, plaintiffs have failed to adequately plead the elements of a claim for

negligent misrepresentation, much less with particularity.  They have failed to plead an

actionable material misrepresentation, they have failed to plead statements by the

Bradford Defendants, and they have failed to plead reliance on any particular statement.

Additionally, as the SJC held in *Marram,* "justifiable reliance is integral to a claim for

negligent misrepresentation," and, as discussed above, plaintiffs cannot establish

justifiable reliance on the misrepresentations and omissions they allege.  442 Mass. at 59,

809 N.E.2d at 1031.  Therefore, even if the claim for negligent misrepresentation were

viable, plaintiffs' allegations could not support it.  Count VI should be dismissed for this

reason as well.

### D.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty.

Count VIII asserts a claim of breach of fiduciary duty against the Trustee

Defendants, alleging that they owed a fiduciary duty to the creditors of the College

because the College "was insolvent or operating in the zone of insolvency, and had no

---

[9]    Although some courts in this district have held that Rule 9(b) does not apply to claims of negligent
misrepresentation under some circumstances, those cases are distinguishable because they involve disputes
other than with respect to securities, *see Masso v. United Parcel Serv. of America, Inc.,* 884 F. Supp. 610,
615 (D. Mass. 1995) (employment dispute), or securities claims that did not "sound in fraud" because the
complaint alleged only "negligent or even innocent misrepresentation," *Cooperman v. Individual, Inc.,* Civ.
A. 96-12272-DPW (D. Mass. May 27, 1998) (1998 WL 953726 at *7).

ability to satisfy its Bond obligations." Am. Cp. ¶106.[10]  Plaintiffs allege that the Trustee

Defendants breached this purported duty "by failing to consider in good faith the

Bondholders' interests as creditors of the College and recklessly depleting the collateral

specifically securing their Bonds," and, specifically, by proceeding with the dormitory

project that the bonds were intended to finance. *Id.* ¶¶72, 73, 107. This claim should be

dismissed because no Massachusetts court has ever recognized such a duty. To the

contrary, precedents suggest that Massachusetts courts are unlikely to do so even in the

context of a for-profit corporation, much less with respect to trustees of a non-profit,

charitable educational institution, and particularly trustees who are not alleged to have

had any personal or financial interest in the matter or to have engaged in any self-dealing.

Massachusetts courts have never held that the directors of a corporation in the

zone of insolvency owe a fiduciary duty to the creditors of the corporation. *See, e.g.,*

*Atherton v. Emerson*, 199 Mass. 199, 216, 85 N.E. 530, 534 (1908) ("[w]e do not need

here to consider the much controverted question, as to which there is at present in other

courts an irreconcilable conflict of authority, whether the directors or other managing

officers of an insolvent corporation ... have become subject to such fiduciary obligations

to the creditors, in addition to their original obligations as trustees for the stockholders");

*In re Boston Regional Medical Center, Inc.,* 328 F. Supp. 2d 130, 144 n.4 (D. Mass.

2004) (declining to address the "interesting question" of whether Massachusetts law

would find that directors of a charitable corporation have a duty to creditors when a

corporation enters the "zone of insolvency"); T. Dinsmoor, "Director Decision Making in

---

[10]    The Trustee Defendants are identified in the Amended Complaint as Karen Sughrue, Gary Crago, Jean W. Childs, Paula Edwards Cochran, G. Stevens Davis, Julia B. DeMoss, William R. Dill, Leslie A. Ferlazzo, Joyce Shaffer Fleming, Eric W. Hayden, Catherine Chapin Kobacker, Anne Marcus, Celeste Reid, Richard J. Sheehan, Gregory E. Thomas, Susan K. Turben, and Joseph Short. Am. Cp. ¶31.

the Zone of Corporate Insolvency," Boston B.J. at 18 (Nov./Dec. 2003) (noting that the SJC "has yet to squarely address this 'much controverted' doctrine, or its shift in director fiduciary duty"). Massachusetts precedents suggest that Massachusetts would reject such a doctrine. *See Pond v. Framingham & Lowell Railroad Co.,* 130 Mass. 194, 195 (1881) (dismissing creditors' bill in equity to restrain insolvent business from making an improvident contract); *see also Hathaway v. Huntley,* 284 Mass. 587, 591-92, 188 N.E.2d 616, 618 (1933) (director of insolvent corporation could not be held directly liable to creditors for allegedly mismanaging corporation).

Although some jurisdictions, and most notably Delaware, have adopted the doctrine in the context of for-profit corporations, a number of other jurisdictions have rejected it. *See, e.g., Sutton v. Reagan & Gee,* 405 S.W.2d 828, 832 (Tex. App. 1966); *Merrian v. Smith,* 599 S.W.2d 548, 555 (Tenn. App. 1979); *Super Valu Stores, Inc. v. First National Bank of Columbus, Georgia,* 463 F. Supp. 1183, 1196 (M.D. Ga. 1979). And even in jurisdictions that have recognized such a duty, the doctrine has never been applied to allow creditors to second-guess management decisions in general, as plaintiffs seek to do here with respect to the Trustee Defendants' decision to continue with the dormitory project. Instead, as another court has noted, "[a]ll of the decisions in which the courts have allowed creditors to recover for breach of fiduciary duty have involved directors of an insolvent corporation diverting corporate assets for the benefit of insiders

or preferred creditors." *In re Ben Franklin Retail Stores*, 225 B.R. 646, 653-54 (Bankr. N.D. Ill. 1998) (emphasis added).[11]

Moreover, no court has held that creditors are owed a fiduciary duty by trustees of a nonprofit or charitable corporation. The reasoning on which other jurisdictions have recognized such a duty in the for-profit context does not apply to charitable organizations, and imposing such a duty on trustees of a charitable organization would create a host of potential conflicts and problems of application that weigh heavily against adopting such a doctrine. The courts that have recognized such duties in the for-profit context have based their decision primarily on the conclusion that insolvency creates a conflict between the interests of the stockholders and the corporation, and have held that, in insolvency, the directors' duty is no longer solely to the shareholders but to the interests of the corporation as a whole (not, as plaintiffs' allegations suggest, primarily to the creditors). *See Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787-89 (1992) ("fiduciary duties at the moment of insolvency may cause directors to choose a course of action that best serves the entire corporate enterprise rather than any single group interested in the corporation") (emphasis added). As the Delaware Chancery Court explained in the seminal modern case recognizing this doctrine in the for-profit context, *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, Civ. A. No. 12150 (Del. Ch. Dec. 30, 1991) (1991 WL 2727613 at *34), "a board of directors [of a for-profit corporation] is not merely the agent of the residue risk bearers [i.e., the

---

[11]    Even the Delaware Court of Chancery has suggested that creditors may not assert claims for mismanagement absent self-dealing or bad faith, stating: "absent self-dealing or other evidence of bad faith," courts have no "measure … fairly to critique" the decisions made by directors of a for-profit corporation when they "face a difficult choice between pursuit of a plausible, but risky, business strategy that might increase the firm's value to the level that equityholders will receive value, and another course guaranteeing no return for equity but preservation of value for creditors." *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 790 n.57 (Del. Ch. 2004).

shareholders] but owes its duty to the corporate enterprise," and the duty of directors is "to exercise judgment in an informed, good faith effort to maximize the corporation's long-term wealth creating capacity."

In contrast, the College, as a charitable organization, was not created to generate profits, but to pursue a charitable mission of providing education, and its trustees were charged with furthering the interests of the College and its charitable mission. *See* Section II(A) below; M.G.L. c. 180, §6C (trustee of charitable organization must "perform his duties ... in a manner he reasonably believes to be in the best interests of the corporation"). Accordingly, the Trustee Defendants had no obligation to "maximize" the College's profits, nor any obligation to shareholders, but instead were charged only with furthering the College's charitable purposes.[12] Imposing any duty on the trustees toward creditors would thus conflict directly with their express statutory duty to further the College's charitable purpose.

Recognizing any such duty in the charitable context would also create difficult problems of application. For example, would the trustees continue to owe duties to anyone or anything else besides the creditors at the time they were also found to have duties to creditors, as they presumably must; how would the conflicts among such duties be resolved; what are the contours of those duties; are trustees are protected by the business judgment rule with respect to such duties; do the trustees owe the creditors a duty of loyalty as well, and, if so, how are conflicts as among the creditors resolved; and are creditors owed a duty of full disclosure? *See* Peregrine et al., "The Fiduciary Duties

---

[12]    *See, e.g., Summers v. Cherokee Children's & Family Services, Inc.,* 112 S.W.2d 486, 504-05 (Tenn. App. 2002) ("the duty of loyalty requires that a director or officer faithfully pursue the interest of the organization, and its nonprofit purpose, rather than his or her own financial or other interests, or those of another person or organization"), *citing* H. Goldschmid, "The Fiduciary Duties of Nonprofit Directors and Officers:  Paradoxes, Problems, and Proposed Reforms," 23 Iowa J. Corp. L. 631, 641 (1998).

of Healthcare Directors in the Zone of Insolvency," 35 Journal of Health Law 227, 236-242 (Spring 2002).

Indeed, the problems posed by plaintiffs' claim in a charitable context are highlighted quite vividly by the factual allegations on which they seek to impose a fiduciary duty on the Trustee Defendants. The gist of their claim is that the Trustee Defendants breached a purported duty to the bondholders by continuing to use the bond proceeds to further the project of dormitory construction and renovation even though the College was allegedly in "an accelerating financial crisis" in the fall of 1998. Am. Cp. ¶¶69, 72, 73. Plaintiffs do not claim that, in deciding to go forward, any of the Trustee Defendants had any personal financial interest, or that they were acting to benefit anyone else. Instead, plaintiffs appear to suggest that the Trustee Defendants should have put a halt to the project in the fall of 1998, and scrapped the plan to build and renovate dormitories, for the sole purpose of preserving assets that would be available to pay the bondholders. Id. at ¶¶72, 73. But, as plaintiffs' own allegations establish, the College had decided to undertake the dormitory project for the very purpose of improving the College's ability to "attract and retain students," which goal the Official Statement emphasized was critical to the College's chances of success. Plaintiffs thus ask the Court to hold that the Trustee Defendants should have put the bondholders' interests ahead of the College's ability to continue as an educational institution, and, indeed, they fault the Trustee Defendants precisely for seeking to continue the College's charitable purpose. See Am. Cp. ¶73 (alleging that "the Trustees' reckless depletion of the collateral for the Bonds was consistent with their stated intent to operate the College at all costs rather than preserve its assets for the benefit of creditors") (emphasis added).

Because Massachusetts cases do not even hint that directors owe creditors any fiduciary duties, but rather suggest that there is no such duty; because the resolution of the issue, particularly in the context of a charitable organization, would require the Court to expand Massachusetts law far beyond its current limits and to weigh matters of state public policy; and because plaintiffs' allegations would not support a claim even in jurisdictions that have adopted the theory in connection with for-profit corporations, inasmuch as plaintiffs' claim is for alleged mismanagement and not self-dealing, this Court should dismiss plaintiffs' claim for breach of fiduciary duty.

## E.    The Complaint Fails to State a Claim Under Chapter 93A.

### 1.    Plaintiffs Have Failed to Plead a Sufficient Relationship Between Them and Any of the Bradford Defendants.

In Count VII of the Amended Complaint, all the plaintiffs except Lois and John Moore purport to assert a claim against the Bradford Defendants for a violation of M.G.L. c. 93A, §11. They base the claim on the same "conduct" they allege as the basis for all their other claims, namely, the purported misrepresentations and omissions in the Official Statement. Am. Cp. ¶104 ("[t]he conduct of the Defendants described above constituted unfair and deceptive trade practices").

To bring a claim against a defendant under Chapter 93A, §11, a plaintiff must have had some sort of business relationship or transaction with the defendant. *Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 324, 446 N.E.2d 681, 684 (1983). Where a defendant, such as the Bradford Defendants, has not engaged in a direct transaction with the plaintiff, the plaintiff cannot establish a business relationship sufficient to allow him to maintain a claim under chapter 93A unless the defendant played an active role in the underlying transaction that involved the plaintiff. *Compare*

*P.J. Gear & Son, Inc. v. City of Medford,* No. 02-03408 (Mass. Super. Ct. Apr. 24, 2003)

(2003 WL 21027159 at *5 n.6); *Reisman,* 57 Mass. App. Ct. at 125, 787 N.E.2d at 1077

(claim allowed against defendant who played active role in transaction at issue).

Plaintiffs do not allege that the Bradford Defendants played any role, much less an active

one, in any of the various transactions by which plaintiffs purchased the bonds from

Advest. Accordingly, the Chapter 93A claim cannot stand, and Count VII should be

dismissed.

> **2.    The Chapter 93A Claim Is Based on Allegations that Are Not Actionable.**

Count VII should also be dismissed because the Amended Complaint does not

plead any sufficient basis for liability under Chapter 93A. Chapter 93A makes unlawful

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct

of any trade or commerce." M.G.L. c. 93A, § 2(a). The Massachusetts Supreme Judicial

Court has defined "unfair or deceptive acts or practices" as those that are "within at least

the penumbra of some common-law, statutory, or other established concept of unfairness;

[or] (2) [are] immoral, unethical, oppressive, or unscrupulous; [and] (3) ... cause[ ]

substantial injury to consumers (or competitors or other businessmen)." *See PMP Assoc.,*

*Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 596, 321 N.E.2d 915, 917 (1975); *see also*

*Suzuki of Western Mass., Inc. v. Outdoor Sports Expo, Inc.,* 126 F. Supp. 2d 40, 50 (D.

Mass. 2001), *citing Egan v. Athol Memorial Hospital,* 971 F. Supp. 37, 47 (D. Mass.

1997). In addition, where the claim involves transactions between entities who are

"engaged in commerce," as plaintiffs allege here, Am. Cp. ¶103, "the objectionable

conduct must attain a level of rascality that would raise an eyebrow of someone inured to

the rough and tumble world of commerce." *Levings v. Forbes & Wallace, Inc.,* 8 Mass.

App. Ct. 498, 504, 396 N.E.2d 149, 154 (1979); *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1513 (1st Cir. 1989).

Where claims of violations of Chapter 93A are based on and derivative of allegations that are dismissed, the Chapter 93A claims should be dismissed as well. *Suzuki*, 126 F. Supp. 2d at 45; *see also Cantell v. Hill Holliday Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 556, 772 N.E.2d 1078, 1083 (2002); *Frohberg v. Merrimack Mut. Fire Ins. Co.*, 34 Mass. App. Ct. 462, 464, 612 N.E.2d 273, 275-76 (1993), *review denied*, 416 Mass. 1102 (1993) (dismissing Chapter 93A claims that were "wholly derivative" and based on primary allegations of other wrongs that were themselves dismissed), *citing LoCicero v. Hartford Ins. Group*, 25 Mass. App. Ct. 339, 340, 518 N.E.2d 530, 531 (1988); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 42 (1st Cir. 1998) (affirming dismissal on pleadings of Chapter 93A claim; although Chapter 93A violation "need not rest on an independent common law tort ... the conduct must at least come within shouting distance of some established concept of unfairness").

As discussed above, plaintiffs cannot establish any otherwise actionable conduct by the Bradford Defendants, and thus cannot establish that they engaged in "unfair or deceptive conduct" in violation of Chapter 93A. Count VII should therefore be dismissed.

II.   **ALL THE STATE-LAW CLAIMS AGAINST THE TRUSTEE
      DEFENDANTS ARE BARRED AS A MATTER OF LAW BY THE
      DOCTRINE OF CHARITABLE IMMUNITY.**

   A.   **The State-Law Claims Against the Trustee Defendants Are Barred by
        M.G.L. c. 231, §85W.**

All the state-law claims asserted against the Trustee Defendants are barred by the

charitable immunity doctrine of M.G.L. c. 231, §85W, which provides:

> Except as provided otherwise in this section and in section eighty-five V, <u>no
> person who serves without compensation</u>, other than reimbursement for actual
> expenses, as an officer, director or <u>trustee of any nonprofit charitable organization</u>
> including those corporations qualified under 26 USC section 501(c)(3) shall be
> liable for <u>any civil damages</u> as a result of any <u>acts or omissions relating solely to
> the performance of his duties</u> as an officer, director, or trustee; provided, however,
> that the immunity conferred by this section shall not apply to any acts or
> omissions <u>intentionally designed</u> to harm or to any <u>grossly negligent</u> acts or
> omissions which result in <u>harm to the person</u>.  Nothing in this section shall be
> construed as affecting or modifying any existing legal basis for determining the
> liability, or any defense thereto, of any person not covered by the immunity
> conferred by this section.
>
> Nothing in this section shall be construed as affecting or modifying the liability of
> any person subject to this section for acts or omissions which are committed in the
> course of activities <u>primarily commercial in nature</u> even though carried on to
> obtain revenue to be used for charitable purposes, nor for any cause of action
> arising out of such person's operation of an automobile.

(Emphasis added.)  On the face of plaintiffs' complaint, this statute immunizes the

Trustee Defendants against all the state claims asserted in the complaint.  The College

was a non-profit charitable organization.  *See* St. 1803, c. 74 (creating "Bradford

Academy ... for the purpose of promoting piety, religion, and morality, and for the

education of Youth"); St. 1932, c. 64 (changing name to Bradford Junior College).[13]  The

---

[13]      Numerous Massachusetts cases have recognized that colleges and universities are charitable
institutions and subject to charitable immunity. *See, e.g., Goldberg v. Northeastern University*, 60 Mass.
App. Ct. 707, 712-13, 805 N.E.2d 517, 522 (2004); *Moose v. Massachusetts Institute of Technology*, 43
Mass. App. Ct. 420, 421, 683 N.E.2d 706, 708 (1997); *Linkage Corp. v. Trustees of Boston University*, 425
Mass. 1, 28 n.37, 679 N.E.2d 191, 209 n.37 (1997); *Enman v. Trustees of Boston University*, 270 Mass.
299, 300, 170 N.E. 43, 44 (1930).

Trustee Defendants were uncompensated members of the Board of Trustees.[14] *See*
Affidavit of Karen Sughrue at ¶2. Plaintiffs seek to impose liability on the Trustee
Defendants for acts or omissions that relate solely to the performance of their duties as
trustees. Indeed, there is no allegation of any act by any of the Bradford Defendants that
could remotely be deemed to fall outside their duties for the College.

Section 85W immunizes the Trustee Defendants from liability on all the state-law
claims because plaintiffs do not allege that the Trustee Defendants engaged in any acts or
omissions that were "intentionally designed to harm" anybody. In this regard, plaintiffs
allege variously, and in connection with different claims, that the "defendants" "knew, or
[were] reckless in failing to know," or "in the exercise of reasonable care could have
known" of the purported misrepresentations and omissions in the Official Statement; that
they made the alleged misrepresentations "fraudulently, intentionally and/or with reckless
disregard as to the truth or falsity of such statement," and that they "negligently made
materially untrue and misleading statements" or "aided and abetted" others in making
allegedly false statements. Am. Cp. ¶¶81, 97, 100. They also assert that the Trustee
Defendants breached alleged fiduciary duties by "failing to consider in good faith the
Bondholders' interests as creditors of the College and recklessly depleting the collateral"
for the bonds. Am. Cp. ¶107. None of these allegations, which allege recklessness and
negligence in the disjunctive and as alternatives to intent, amounts to a claim that any of
the Trustee Defendants engaged in any act that was "intentionally designed to harm"

---

[14]    Although Trustee Defendant Joseph Short was also an officer of the College and was compensated
for such service, he was not compensated for serving on the Board of Trustees. Affidavit of Karen M.
Sughrue at ¶2. Accordingly, the doctrine of charitable immunity protects him from any liability that is
based on his service as a Trustee.

anybody. Accordingly, §85W precludes the imposition of liability on plaintiffs' state-law claims, as a matter of law.

Plaintiffs' own allegations also establish that they cannot show that the Trustee Defendants' actions were "primarily commercial" in nature. In construing virtually identical language in M.G.L. c. 231, §85K, the SJC recognized that actions are not "primarily commercial" for purposes of charitable immunity unless they are "entirely disconnected" from the charitable purpose.[15] *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 28, n.37, 679 N.E.2d 191, 209 n.37 (1997). The SJC has also recognized that decisions construing statutes relating to charitable immunity apply in construing similar language in other charitable immunity statutes. *Conners v. Northeast Hospital Corp., Inc.*, 439 Mass. 469, 477-80, 789 N.E.2d 129, 135 (2003). *See also In re Boston Regional Medical Center*, 328 F. Supp. 2d at 158 (analogizing §85W to §85K to determine whether an activity is "entirely disconnected" from the charity's purpose, and recognizing that the "primarily commercial activity" exception to immunity should be construed "narrowly").

The Massachusetts Appeals Court recently held that immunity applies to all activities by a charitable organization that are "conducted in pursuit of [the corporation's] charitable purposes," and that such activities are not "primarily commercial." *Goldberg v. Northeastern University*, 60 Mass. App. Ct. 707, 712-13, 805 N.E.2d 517, 522 (2004), *citing Conners*, 439 Mass. at 477-80, 789 N.E.2d at 135. As the Court also held in *Missett v. Cardinal Cushing High School*, 43 Mass. App. Ct. 5, 11, 680 N.E.2d 563, 567 (1997), "[g]enerating revenue does not alone mean that an activity is 'primarily

---

[15]    The Trustee Defendants are immune from liability under §85K, as discussed below at Section II(B).

commercial,'" and, instead, that "an activity is 'primarily commercial' only when it is 'entirely disconnected' from the charity's purposes." Moreover, the court noted that "cases in which courts have concluded that an activity was 'primarily commercial' have involved the operation of full-fledged businesses." *Id.* The Court therefore held in *Missett* that the school's putting on of school dances was not primarily commercial even though the primary purpose of the dances was to raise money for the student council. *Id.* Similarly in *Conners*, the SJC held that a hospital's removal of snow from the parking lot next to a medical building directly accomplished its charitable purpose and was therefore immune from liability, even though snow removal was performed as part of the commercial relationship between the hospital and its doctors. 439 Mass. at 131, 137, 789 N.E.2d at 471, 480. As the SJC explained, "a revenue-generating activity may, and in many circumstances does, 'accomplish directly' the organization's purposes," and if the activity "accomplish[es] directly the charitable purposes," then "the activity, *ipso facto*, is subject to the limitation on liability," and "[n]o further inquiry is necessary." 439 Mass. at 479-80, 789 N.E.2d at 136-37. The SJC stated that "[t]he 'critical question' is whether the revenue-generating activity is 'in conformity with the [corporation's] ... charitable corporate purposes.'" 439 Mass. at 480, 789 N.E.2d at 137.

These cases establish that the conduct that plaintiffs allege as the basis for the state-law claims against the Trustee Defendants is immune from liability under §85K because it accomplished directly, and was in conformity with, the College's charitable purposes. Plaintiffs seek to impose liability on the Trustee Defendants for the Official Statement, which the Amended Complaint makes clear was issued in connection with an effort to build and renovate dormitories on campus. *See, e.g.,* Am. Cp. ¶¶42, 46.

34

Dormitories and their maintenance have been recognized to be part of a college's charitable function, and the construction and renovation of dormitories thus directly accomplished the charitable purpose. *Enman v. Trustees of Boston University*, 270 Mass. 299, 300, 170 N.E. 43, 44 (1930) (college immune from liability for injuries caused by ice that fell from student dormitory that was used for college's charitable purposes). Where, as the Amended Complaint recognizes, the bonds were issued primarily for the purpose of dormitory renovation and expansion, acts related to the issuance of the bonds cannot be deemed "entirely disconnected" from the charitable purpose.

For similar reasons, the allegation that the trustees breached fiduciary duties in connection with their purported management of the College asserts acts that furthered the College's charitable purposes, virtually by definition. As the court recently held in *BRMC,* the ordinary activities of the trustees of Boston Regional Medical Center in carrying on the purposes of the charity's finances were necessarily connected with the charitable purpose, were therefore not "primarily commercial" under §85W, and were thus immune from the creditors' claims of mismanagement and breach of fiduciary duty. 328 F. Supp. 2d at 158-162. As Judge Wolf explained, "[a]lthough BRMC was a business, it was not a business existing separately from the charity's purpose," and therefore, "serving as trustees, the defendants helped [the organization] accomplish directly its charitable purpose rather than some other goal that was commercial in nature." *Id.* at 160-61.

Similarly here, because the alleged acts of the Trustee Defendants on which plaintiffs seek to impose liability on them were all conducted in the performance of their duties for the College and to accomplish directly the College's charitable purpose of

35

providing education, and thus were not primarily commercial in nature, §85W shields the

Trustee Defendants from liability on the state-law claims.

**B.    The State-Law Claims Against the Trustee Defendants Are Barred by
M.G.L. c. 231, §85K.**

For similar reasons, the Trustee Defendants are also immune from state-law

liability under the second paragraph of M.G.L. c. 231, §85K, which provides in pertinent

part as follows:

> No person who serves as a director, officer or <u>trustee of an educational institution</u>
> which is, or at the time the cause of action arose was, a charitable organization,
> qualified as a tax-exempt organization under 26 U.S.C. §501(c)(3) and who is <u>not</u>
> <u>compensated</u> for such services, except for reimbursement of out of pocket
> expenses, shall be liable solely <u>by reason of such services as a</u> director, officer or
> <u>trustee</u> for any act or omission resulting in damage or injury to another, if such
> person was acting <u>in good faith</u> and <u>within the scope of his official functions</u> and
> duties, unless such damage or injury was caused by willful or wanton misconduct.

As noted above, plaintiffs do not allege that the Trustee Defendants did not act in good

faith with respect to the matters for which they are claimed to be liable, nor do they allege

any facts suggesting that they engaged in willful or wanton misconduct.  Under these

circumstances, the immunity in §85K as a matter of law precludes the assertion of the

state-law claims against the Trustee Defendants.

## CONCLUSION

For the foregoing reasons, and for those set forth in the Original Motion to Dismiss, the Amended Complaint fails to state a claim against any of the Bradford Defendants, and should therefore be dismissed against each of them in its entirety.

THE BRADFORD DEFENDANTS

By their attorneys,

Robert E. Sullivan, BBO #487820
Scott A. Roberts, BBO #550732
A. Lauren Carpenter, BBO #551258
SULLIVAN, WEINSTEIN & McQUAY, P.C.
Two Park Plaza
Boston, MA 02116
(617) 348-4300

## CERTIFICATE OF SERVICE

I, A. Lauren Carpenter, hereby certify that a true and correct copy of the foregoing document was served today by hand on all counsel of record.

A. Lauren Carpenter

37