# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

T. ROWE PRICE TAX-FREE HIGH YIELD
FUND, INC., SMITH BARNEY INCOME
FUNDS/SMITH BARNEY MUNICIPAL
HIGH INCOME FUND,  DRYDEN
NATIONAL MUNICIPALS FUND, INC.,
LOIS AND JOHN MOORE and  ACA
FINANCIAL GUARANTY
CORPORATION

<em>Plaintiffs</em>,

v.

KAREN M. SUGHRUE, GARRY L.
CRAGO, JEAN W. CHILDS, PAULA
EDWARDS COCHRAN, G. STEVENS
DAVIS, JR., JULIA B. DEMOSS, WILLIAM
R. DILL, LESLIE A. FERLAZZO, JOYCE
SHAFFER FLEMING, ERIC W. HAYDEN,
CATHERINE CHAPIN KOBACKER,
ANNE MARCUS, CELESTE REID,
RICHARD J. SHEEHAN, JR., JOSEPH
SHORT, GREGORY E. THOMAS, SUSAN
K. TURBEN, DONALD W. KISZKA and
ADVEST, INC.,

<em>Defendants.</em>

Civil Action No.   04-11667 RGS
Consolidated into
Civil Action No. 05-10176-RGS*

## PLAINTIFFS  OPPOSITION TO DEFENDANTS  MOTIONS TO DISMISS

*The original Motion to Dismiss was filed in the 04-11667-RGS case but the case has since been consolidated into 05-10176.  For the Court s convenience, Plaintiffs have filed their Opposition to the Motion to Dismiss under both civil action numbers.

# TABLE OF CONTENTS

**FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

I.     PPLPLAINTIFFS PLAINTIFFS HAVE SUCCESSFULLY ALLEGED VIOLATIONS OF T
SECURITIES EXCHANGE ACT OF 1934 AGAINST ALL DEFENDANTS . . . . . . . 11

      A.     TheThe StandardsThe Standards For Determining Whether PlaintiffsThe Standards For Determini
Action For Violating Rule 10b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.     Defendants Defendants Disclosure of Information RegardDefendants Disclosure of Info
Misleading and Plaintiffs Have Sufficiently Alleged Necessary Scienter. . . . . 14

           1.     FailureFailure to disclose BFailure to disclose Bradford Failure to disclose Bradford s
nunumbernumber number of deposits was misleading, particularly in light of its mislead
disclosure of an increased number of acceptances. . . . . . . . . . . . . . . . . 14

           2.     TheThe Amended CompThe Amended ComplaintThe Amended Complaint The Amended C
expected fall enrollment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      C.     DefDefendants Defendants Defendants DisclosureDefendants Disclosure Defendants Disclosur
Was Misleading and Plaintiffs Have Sufficiently Alleged Necessary Scienter. . 24

           1.     TheThe statedThe stated expectation that financial aidThe stated expectation that financial a
misleading,misleading, particularly in light of the fact thmisleading, particularly in light
actually increasing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

           2.     Defendants Defendants failure to disclose the financial aDefendants failure to disclos
contradictedcontradicted the disclosures in the Officialcontradicted the disclosures in the Of
in a negative light is strong evidence of scienter. . . . . . . . . . . . . . . . . . 29

      D.     Defendants Defendants Failure To DisDefendants Failure To Disclose Defendants Fail
Misleading and Plaintiffs Have Sufficiently Alleged Necessary Scienter. . . . . 32

           1.     ByBy failing to make necessary disclosures of BrBy failing to make necessary disclosure
retain students, the Official Statement was materially false and misleading.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

           2.     FaFailureFailure Failure toFailure to Failure to discloseFailure to disclose Failure to disclose a
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E.      PlaintiffsPlaintiffs Have SufficientlyPlaintiffs Have Sufficiently Alleged Defendants  FalsePlainti
of a Strategic Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

F.      Defendants Defendants  DisclosurDefendants  Disclosure ThaDefendants  Disclosure That E
RenovationRenovation Project When ItRenovation Project When It HadRenovation Project When
False, Misleading and Intentional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

G.      PlaintiffsPlaintiffs Have Met The Minimal Burden NecePlaintiffs Have Met The Minimal B
Adequately . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

H.      PlaintiffsPlaintiffs Can Sufficiently Tie AllPlaintiffs Can Sufficiently Tie All ofPlaintiffs Can Suf
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

1.      AdvestAdvest wAdvest waAdvest was reckless in failing to confirm easily accessible
relevant to the bond offering . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

2.      PlaiPlaintiffsPlaintiffs Have Stated Causes of Action Under Section 10(b) Against Plaint
Officer Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

3.      TheThe Trustee Defendants May Be Found LiaThe Trustee Defendants May Be Fo
Bradford . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

II.     PLAINTIFFSPLAINTIFFS HAVE STATED A CLAIMPLAINTIFFS HAVE STATED A CLAIM AGAIN
THE SECURITIES ACT OF 1933. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

A.      Plaintiffs Plaintiffs  IPlaintiffs  InterPlaintiffs  Interest In Bradford s Contract To Repay The Bo
Security That Is Not Exempt From The Antifraud Provisions of the 1933 Act.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

1.      TheThe agreement of a beneficiary of conduit financing to repayThe agreement of a benefic
aa municipal bond offeringa municipal bond offering is a separate security which may be su
antifraud provisions of the 1933 Act. . . . . . . . . . . . . . . . . . . . . . . . . . . 53

2.      NeitherNeither the structure ofNeither the structure ofexemptions permitted underNeither t
purposepurpose of the governmental issued security exemption supporpurpose of the go
position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

B.      Plaintiffs  Have Properly Pled The Elements of a Section 12(a)(2) Claim . . . . . 61

1.      Rule 9(b) Pleading Standards Do Not Apply To This Count . . . . . . . . . 61

2.      PlaintiffsPlaintiffs have appropriately pled that the OPlaintiffs have appropriately ple
materially false statements and misleading material omissions. . . . . . . . 62

3.      Plaintiffs have standing as purchasers in the initial offering . . . . . . . . . . 62

III.   PLAINTIFFSPLAINTIFFS PLAINTIFFS HAVEPLAINTIFFS HAVE PLAINTIFFS HAVE STATEDPLA
       STATUTORY AND COMMON LAW CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

       A.   PlaintiffsPlaintiffs Have Stated Claims Against All DefendantsPlaintiffs Have Stated Claims Agai
            Securities Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

            1.   TheThe Massachusetts Uniform The Massachusetts Uniform SeThe Massachusetts U
                 Massachusetts Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

            2.   TheThe Bradford Defendants cannot escape liabilityThe Bradford Defendants cannot escap
                 ofof the entity that issof the entity that issueof the entity that issued a misleading Off
                 Advest underwrote a firm commitment bond offering. . . . . . . . . . . . . . 64

                 a.   TheThe Uniform Securities Act did not intend issuersThe Uniform Securities Act d
                      inin public offerin public offeringin public offerings and the opposite holdi
                      purposes of the civil liability provisions. . . . . . . . . . . . . . . . . . . . 66

                 b.   Some of the Plaintiffs were solicited by Bradford. . . . . . . . . . . . 73

            3.   PlaintiffsPlaintiffs have sufficiently stated a clPlaintiffs have sufficiently stated a claim
                 Uniform Securities Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

            4.   Plaintiffs  Claims Are Not Precluded By A Statute of Repose . . . . . . . . 75

       B.   Plaintiffs  Fraud Claims Plead Reliance With The Requisite Specificity and
            Plaintiffs Could Reasonably Rely on the Representations In Bradford s Official
            Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

       C.   TheThe Bradford Defendants Responsible For the Misrepresentations In the Official
            StatementStatement Can Be Held Liable ForStatement Can Be Held Liable For NegligentStateme
            Bond Purchasers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

       D.   There Is No Basis To Dismiss The Plaintiffs  Chapter 93A Claims . . . . . . . . . 86

       E.   ThTheThe The Court Cannot Consider The Trustee Defendants  Affirmative Defense That
            MassachusettsMassachusetts Statutes Immunize Them FromMassachusetts Statutes Immunize The
            EstablishEstablish The Defense Cannot Be Found InEstablish The Defense Cannot Be Found In Th
            Documents The Court May Consider On a Motion To Dismiss . . . . . . . . . . . . 89

IV.    PLAINTIFFSPLAINTIFFS SHOULD BE GIVEN LEAVE TO AMENPLAINTIFFS SHOULD BE GIVEN
       HAVE FAILED TO PROPERLY PLEAD ANY OF THE CAUSES OF ACTION . . . . 90

**CONCLUSION**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **91**

On May 13, 1998, Bradford College ( Bradford  or the  College ), a small private liberal arts college in Haverhill, Massachusetts floated a $17.93 million bond issue, the proceeds of which were to be used to build and renovate dormitories for the school s students.   The financing was bold, given that the college had failed to generate any surplus for nine straight years, and had only balanced its budgets by withdrawing money from its endowment or soliciting gifts.  Nonetheless, the Official Statement, the offering memorandum pursuant to which the bonds were sold, described a plan to operate profitably in the future based on an increased enrollment and reductions of financial aid.  The key to the viability of this vision was selective evidence described in the Official Statement that indicated that the college was successfully attracting increasing numbers of students without having to purchase such admissions by large grants of financial aid.  As a result of the representations described in the Official Statement, the five bondholder plaintiffs[1] in this action purchased $8.37 million of the bonds.  The sixth plaintiff, ACA Financial Insurance Corp. ( ACA ), insured an additional $5.51 million.

Unfortunately, the representations in the Official Statement regarding the College s ability to attract larger numbers of lower cost students were entirely false.  The increase in student enrollment was a one year blip, not a long term trend, and the Official Statement failed to include critical information that would have made it apparent that the College would not reach

---

[1]    ThreeThree of the bondholder plaintiffs, T. Rowe Price Tax-Free High Yield Fund, Three of the bondholder plaint IncomeIncome Funds/Smith Barney Municipal High Income Fund and Dryden National Municipals Fund, Inc. (collectively, thethe Institthe  Institutional Bonthe  Institutional Bondholders ) are institutional investors who purchased the Bonds for mutual fund TheThe remaining bondholderplaintiffs, Lois and John Moore (the  Moores ) are a married couple The remaining bondholderplaintiffs, Lo from Advest for their own account.

its enrollment targets.  With regard to financial aid, the statements regarding financial aid

commitments were simply false; aid awards for the present and upcoming years were increasing,

not decreasing.  The Offering Statement also failed to inform potential bond purchasers of the

most serious financial problem facing Bradford, its inability to retain students who enrolled in its

classes.  The Offering Statement also misrepresented the  Plan  pursuant to which the College

was going to turn around its financial performance.  There was no such plan.

In this lawsuit, Plaintiffs seek to hold the trustees and officers of Bradford[2] and the

underwriter of the bonds, Defendant Advest, Inc. ( Advest ) liable for the misrepresentations

contained in the Official Statement.  All Defendants have moved to dismiss all claims, but

because the Plaintiffs have adequately pled the existence of the misrepresentations, even under

enhanced pleading rules applicable to securities actions, and because of Defendants

responsibility for those misrepresentations, Defendants  motions must be denied.

## FACTUAL BACKGROUND

Bradford was a small liberal arts college with an enrollment of less than 500 full time

students for most of the 1990s.  As noted above, starting in 1989, the College began to routinely

operate in the red, running a deficit from its operations for every academic year between 1989

and 2000.  Amended Complaint ( AC ), ¶ 60.  By 1987, negative cash flow due to the recurrent

annual operating losses had reached a critical point.  The College s chief financial officer,

Defendant Donald Kiszka informed the Board of Trustees in February 1987 that the College only

---

[2]        DefendantDefendant Joseph Short wasDefendant Joseph Short was theDefendant Joseph Short was the President of Br
1998.1998.  Defendant Donald Kiszka was1998.  Defendant Donald Kiszka was the1998.  Defendant Donald Kiszka was the chief fina
ViceVice President for Administration and Finance.  Short and Kiszka are collectively refeVice President for Administration and Fin
Defendants.  Defendants.  TheDefendants.  The sixteen remaining individual defendants were trustees of Bradford at the time of the
aandand through and through the announcement of the College s closing. They will be referred to herein collectively as the  Trustee
Defendants.

2

had enough cash to survive another 2 to 3 years.  AC, ¶ 47.  Only by enacting  devastating  and

 disruptive  cuts and freezing salaries  measures the officers and trustees were unwilling to

make   would there be sufficient cash to operate for five years.  AC, ¶ 47.  At the very same

meeting Defendant Thomas, a member of the Board committee that oversaw the College s

admissions admitted there was  insufficient enrollment to assure the financial well-being of the

College.   AC, ¶ 52.

        There were several sources for the College s financial problems.  Perhaps most pressing

was its continued inability to retain students.  Only 40 % of its students graduated after

matriculation, an extraordinarily high attrition rate.  AC, ¶ 49.  The New England Association of

Schools and Colleges ( NEASC ), the College s accrediting body, found that student retention at

Bradford was a  crisis  and the  pre-eminent financial fact   NEASC found that attrition was the

major cause of Bradford s financial instability and gave the institution  scant hope  of fulfilling

its aspirations.  AC, ¶ 53.

        Those students who did attend were given generous financial aid awards to entice them.

The level of financial aid given to attract students had risen every year since 1989, and had

reached a level well above average for comparable institutions in Massachusetts.  AC, ¶ 56, 58.

In the last full academic year prior to the bond offering, financial aid contributed by Bradford

reduced its gross tuition by almost 50%.  Official Statement (Exhibit A to the Amended

Complaint) at A-14.[3]  Effectively, Bradford was purchasing its admissions by awarding

---

        [3]        AsAs is customary in municipal bond offerings, the OffiAs is customary in municipal bond offerings, the Official
describingdescribing the offering, which was signeddescribing the offering, which was signed by MIFA, the state agency formally issui
describeddescribed the operations and financialdescribed the operations and financials of the institdescribed the operations and finan
signedsigned by Short and Kiszka.  Most of thesigned by Short and Kiszka.  Most of the misrepresentations and othersigned by Short and Ki
and Plaintiffs will designate the appendix s pages as  A-_

3

substantial financial aid.

For the 1997-98 school year, however, full-time enrollment jumped 13% and the school s matriculation rate for accepted students climbed from 25% to 34%.  Official Statement at A-8.  The Trustees and Administration at Bradford came to believe that if they could keep increasing enrollment, the College could generate sufficient revenues to survive.  The Administration and the Trustees decided to build new dormitories and renovate existing ones  to house the new students they hoped to attract.  AC, ¶ 42.  To finance the construction project, they turned to Defendant Advest to underwrite a tax exempt conduit financing through the Massachusetts Industrial Financing Agency ( MIFA ).  Advest determined that $17.93 million was the maximum bonding capability of the College and agreed to underwrite the issue. AC, ¶ 45.  The Trustee Defendants authorized the bond offering in February 1998 on the recommendations of Advest and Defendants Short and Kiszka, the current president and chief financial officer of the College.  AC, ¶ 42.   One Bradford Trustee, William Nofsker, resigned rather than approve the offering, on the ground that the college did not have sufficient enrollment to justify the expansion plan.  AC, ¶ 50.

MIFA issued a $17.93 million revenue bond offering, dated as of May 1, 1998.  The Official Statement described the offering and contained Bradford financial statements and an appendix that summarized the financials and provided operational information relating to Bradford.  This section of the Offering Statement was signed by Defendants Kiszka and Short.  Official Statement at A-18.  Although issued by MIFA, a body politic of the Commonwealth of Massachusetts, the bonds were not an obligation of the Commonwealth or MIFA and were solely payable by Bradford.  Offering Memorandum Cover, 1.

4

For potential investors, the critical questions necessary to evaluate the risks in the Bradford offering were whether the 1997 increase in enrollment was the beginning of a trend, as opposed to a random occurrence, and whether the school was subsidizing its increased enrollments by liberal financial aid awards. The Official Statement provided false and materially misleading information on both of these critical areas. With regard to admissions, after setting forth a table showing increases in the fall semester headcount from 484 full time equivalent students in 1993 to 584 students in 1997, the Official Statement, at A-13, stated:

> To attain the final goal of a balanced budget . . . the College is planning to increase enrollment to the level of at least 725 full-time students by fall 2000, with approximately 80% of those students living in campus facilities. As of April 3, 1998, applications received by the College to date total 879, an increase of more than 18% from April 3, 1997. The total of 879 exceeds total applications received for the fall 1997. . . .Based on this increase in applications, historic rates for conversion of applications into enrollments, the number of applications from freshmen and deposits received to date, the College believes that it can reach its goal of enrolling 225 new students for the fall of 1998 while increasing the quality of its students and reducing slightly the average amount of financial aid awards to such students from College funds.

While application numbers had technically risen, the Official Statement failed to disclose critical information investors needed to know to assess the realistic likelihood that the College would meet its goals. The College did not disclose that despite the increase in applications, the College s acceptance rate the percentage of applicants it deemed worthy of admission had sharply dropped, from 80% to 70%. The number of actual acceptances had also dropped. AC, ¶ 62. Perhaps even more importantly, the number of students who had committed to attend Bradford by actually paying a deposit the best indication of how many new students would actually enroll had declined by almost 20%. AC, ¶ 63.

Moreover, disclosing the increase in the number of applications, even if technically

correct, was misleading because of the College s decision to accept applications off the internet. The college knew that it was easier for web applicants to apply to several schools, making it less likely that such applicants would attend if accepted. The College knew that accepting web applications would artificially inflate the application numbers, but reduce the institution s acceptance and matriculation percentages. AC, ¶ 61.

If the College s disclosure of admission trends was misleading, its disclosures relating to financial aid were outright fraudulent. The Official Statement, at A-13, recited:

> [D]uring the 1997-98 academic year, the College estimates that financial aid will be reduced to 29.9% of student income versus 30.3% the previous year. This expected reduction is a result of change in methodology of aiding students with college-funded support versus additional loans funded by students and/or parents. The College s financial plan currently calls for a further reduction of financial aid spending for 1998-1999 academic year to 28.8% of student income.

The Official Statement was dated as of May 1, and not formally released until May 13, AC, ¶ 67,[4] near the end of Bradford s academic year, and long after the financial aid commitments to students attending the fall and spring terms had been made, as well as long after the college had determined the amount of student income it would receive for those two terms. AC, ¶ 56. Financial aid for the 1997-98 academic year actually consumed over 35% of student income, a 17% increase over the preceding year, not a reduction. Moreover, the College knew

---

[4]      TheThe Amended Complaint has inconsistent allegations regarding when the Official Statement was releasedreleased to the public. Paragraph 46 states that thereleased to the public. Paragraph 46 states that the bondsreleased to the public. I financingfinancing closed six days priorfinancing closed six days prior to Mayfinancing closed six days prior to May 19, 1998, which, o TheThe bonds were issued  as of  May 1,The bonds were issued  as of  May 1, 1998, and all papersThe bonds were issued  as of  May MayMay 13, including, Advest s underwritingMay 13, including, Advest s underwriting agreement, the Loan and Trust AgreementMay 1 issued,issued, and an Officers  Certificate signedissued, and an Officers  Certificate signed by Defendants Kiszka and Short certifying t hashas occurred since the date ofhas occurred since the date of the finalhas occurred since the date of the financial and statistical eventevent has occurred which needs to be disclosed so that any information in the Official Statement will not be misleading inin any material respect. Plaintiffs, of course, can amend their complaint to include this information and clarify the bond issuance date.

6

its budget figures were misleading because the Spring 1998 enrollment was less than budgeted, while the amount of financial aid committed was $250,000 more than budgeted.  AC, ¶ 56.

The predictions for the forthcoming financial year were also false.  Although the Official Statement credited a reduction in the amount of financial aid to a new methodology in calculating aid, such a plan was a fiction.  There was no new methodology and the persons responsible for awarding financial aid were never advised or instructed to make any reductions or initiate changes. AC, ¶ 59.  Indeed, the College s 1998-99 budget, which was submitted to the Trustee Defendants just two days before the official date of the bond offering, budgeted 31.3% of student income, not 28.8% of student income, on Bradford financial aid.  AC, ¶ 57.  Moreover, the actual financial aid commitments, which had already been made to the incoming students prior to the May 1 issuance, proved to be even higher, coming in again at 35% of student income. AC, ¶ 70.

The Official Statement did not alert investors to any kind of student retention problem at Bradford.  Indeed, by only disclosing fall semester headcounts, instead of fall and spring semester, investors were unable to realize that Bradford s student retention problem was so severe that it lost significant numbers of students after just one semester.  Spring semesters historically manifested a 7% attrition rate.  AC, ¶ 54.

The Official Statement repeatedly referenced the College s plan to expand Bradford s enrollment and achieve financial equilibrium.  But as determined by NESAC, who did its decennial accreditation review just a few months after the bond issuance, there was no such plan.  There was no plan to deal with student retention, no plan to reduce financial aid, no plan to increase the student body to the target disclosed in the Official Statement and no plan to

determine why the College s budgeting process required it to go through annual budget crises. In short, NESAC concluded, there was no strategic plan.  AC, ¶60.

The Bondholder Plaintiffs each purchased bonds as part of the initial offering from Advest. Advest sought insurance to assist with continuing sales of the bonds.  It sent the Official Statement to Plaintiff ACA to review and ACA also had conversations with Kiszka.  Based on the representations in the Official Statement and the conversation with Kiszka, ACA agreed to provide financial insurance for $5.51 million of the bonds.  AC, ¶ 66, 67.

In the September after the bond issuance, the problems hidden by the Official Statement rose to the surface.  The fall 1998 enrollment was substantially lower than projected by the College, with much of the problem attributable to upperclass attrition.  AC, ¶ 68.  Those who did attend received record amounts of financial aid.  AC, ¶ 70.  Financial aid was provided to 90% of the student body, as opposed to a disclosed rate of 80%, and the average recipient got $9,660, far more than 50% of Bradford s gross tuition.  AC, ¶ 72.  Although there was no longer a need for expanded dormitory space, Bradford did not cancel the project and return the unspent funds to the Bondholders.  Instead, it continued to build dormitories for non-existent students elected to cut funding for student recruitment.  AC, ¶ 71, 72.

By the fall of 1999, it was clear that the College could not achieve the enrollment required to pay the bonds.  AC, ¶ 75.  In November 1999, the College announced that it would cease operations at the end of the school year.  AC, ¶ 76.  The bonds were declared in default in January, 2000.  AC, ¶ 78.

## PROCEDURAL BACKGROUND

TheThe Institutional Bondholders and ACA filed a class action lawsuit relating toThe Institutional Bondho

bondsbonds in this Court within a year of the announcement of the school s intended close.  AC, ¶bonds in thi

AtAt that time, At that time, howAt that time, however, there was some optimism that an orderly liquidation o

mightmight result in payment of the Bonds.  All ofmight result in payment of the Bonds.  All of themight result i

intointo tolling agreements relating to the Plaintiffs  claims, in exchange for the into tolling agreeme

BondholdersBondholders and ACA dismissing, without prejudice, tBondholders and ACA dismissing, wit

specificallyspecifically referenced the statutes of limitation and statutes of response rspecifically referenced the

federalfederal and state securities claims, and Defendants agreedfederal and state securities claims, and Defendants

statutesstatutes as a defense to all the Plaintiffs  claims[5].  Each.  Each of the Plaintiffs, is a party.  Each of the Plain

beneficiary of, the tolling agreements.  AC, ¶ 79.

BradfordBradford filed forBradford filed for bankruptcy in 2001, andBradford filed for bankruptcy in 200

concluded,concluded, itconcluded, it became clearconcluded, it became clear that the College s assets would not

bonds.bonds.  In July 200bonds.  In July 2004, the bondholdebonds.  In July 2004, the bondholder plaintiffs,

allegingalleging violations of Rule 10b-5alleging violations of Rule 10b-5 and Section 10 of the Securities Exchan

violationviolation of Section 20 of the 1934violation of Section 20 of the 1934 Act (Count II) and violation of Sec

of 1933 (Count III). of 1933 (Count III).  At the sameof 1933 (Count III).  At the same time, all of the plaintiffs

SuperiorSuperior Court alleging violations of the Massachusetts Uniform SecuritiesSuperior Court alleging viola

ConsumerConsumer Protection Act, and common law claims of fraud,Consumer Protection Act, and common law o

of fiduciary duty.

DefendantsDefendants moved to stay the state action pending resolution of the plaintiffs  federal

securitiessecurities claims in this Court and on January 18, 2005 the Superiorsecurities claims in this Court a

motion.motion.  Consequently, on January 21, 2005 the Plaintiffs amended their complaint to addmotion.  Conse

---

[5]        CopiesCopies of the tolling agreements are attached asCopies of the tolling agreements are attached as Exhibits 1 and
In Support Of Their Opposition To Defendants  Motions To Dismiss.

aa party and to add thea party and to add the state law causes of action previously only brought ina party and to add

IVIV through VIII of the Amended Complaint.  With the exception of those paragraIV through VIII of the Am

ACA sACA s issuance of insurance on the bonds, the factual allegations ofACA s issuance of insurance on the bon

NorNor were the allegations relating to the federal securities countsNor were the allegations relating to the

CoincidentallyCoincidentally the Trustee and OfficCoincidentally the Trustee and Officer Coincidentally t

compcomplaintcomplaint complaint on the same date.  The Amended Complaint, however, was filed before th

DismissDismiss and Plaintiffs were aware not of the Bradford DefendantsDismiss and Plaintiffs were aware no

of the complaint.[6]

Accordingly,Accordingly, although the Court has before it an AmeAccordingly, although the Court has

previouslypreviously had the opportunity to address any pleading deficienciepreviously had the opportuni

Defendants.Defendants.  Not surprisinglDefendants.  Not surprisingly, Defendants.  Not surprisingly, Defend

demonstrateddemonstrated below, Plaintiffs believe most of thesdemonstrated below, Plaintiffs believe most of

ignored.ignored.  In the event, however,ignored.  In the event, however, that theignored.  In the event, howeve

somesome of the pleading intricacies in asome of the pleading intricacies in a federal securities action, they reques

toto cure.  Plaintiffs have not pled evidence into cure.  Plaintiffs have not pled evidence in their complaint, but the

regardingregarding what the Defendants and Bradford did (and did not do) in connection regarding what the De

ofof the bonds and the Official Statement.  Given Rule 15 s mandate that amendmentof the bonds and the Offic

shouldshould beshould be liberally allowed and the acknowledged Byzantine complexity of theshould be liberally

requirements,requirements, see In re NumberIn re Number Nine Visual Technology Corp. Securities Litigation, 51

---

[6]    ThisThis explains why the Court has three motions to dismiss filed by two sets of defeThis explains why the Court
BecauseBecause the Amended Complaint did not alter the allegatioBecause the Amended Complaint did not alter the allegations relat
thethe Defendants would respond to the Amendedthe Defendants would respond to the Amended Complaint, butthe Defendants would r
motionmotion to dismiss on file, and would only have tomotion to dismiss on file, and would only have to address the recently added st
AmendedAmended Complaint.  Advest, whichAmended Complaint.  Advest, which had not filed a responsive pleading or motion to dis
state and federal claims in its motion to dismiss the Amended Complaint.

1,1, 27,1, 27, n. 22 ( <u>Number Nine</u> )(Young, J., noting the  gamesmanship  required to  )(Young, J., noting the  g

aa securities claim is now reminiscent of pre-Federal Rules pleading practices),a securities claim is now reminis

given at least one opportunity to repair any pleading deficiencies.

**ARGUMENT**

I.    **PLPLAIPLAINTIFFS PLAINTIFFS  HAVE  SUCCESSFULLY  ALLEGED  VIOLATIONS  O
      SECURITIES EXCHANGE ACT OF 1934 AGAINST ALL DEFENDANTS**

SevenSeven of the eight counts Plaintiffs have brought aSeven of the eight counts Plaintiffs have broug

omissionsomissions found in theomissions found in the Official Statement.[7]  Defendants assert that each of  Defen

thethe Plaintiffs have failed to plead the existencethe Plaintiffs have failed to plead the existence of a materially 

law,law, and that evenlaw, and that even if such statements or omissionslaw, and that even if such statements or on

applicableapplicable pleading standards that attach to these counts.  Tapplicable pleading standards that atta

standardstandard applies to Countstandard applies to Count I, Plaintiffs  claims for violation of § 10 of the 1934 

underunder the Act.  Consequently, if Plaintiffs establish thatunder the Act.  Consequently, if Plaintiffs establish

ofof action  against  the  Defendants  under  Count  I,of  action  against  the  Defendants  under  Count  I,  there s

successfullysuccessfully  plead  the  misrepresentation  elemensuccessfully  plead  the  misrepresentation  element

Plaintiffs will not repeat the misrepresentation analysis in those sections of this memorandum.

PlaintiffsPlaintiffs  allege  five  categories  of  misrepresentation  in  the  Official  Statement:  (1)

misrepremisrepresentationmisrepresentation of expected enrollment; (2) misrepresentation of financial aid awar

disclosuredisclosure anddisclosure and misrepresentation of student retention problems; (4)disclosure and misrep

ofof a strategic plan and (5) misrepresentaof a strategic plan and (5) misrepresentation of the of a strategic p

---

[7]       TheThe only exception is CoThe only exception is Count VIII,The only exception is Count VIII, against the Trust
fiduciaryfiduciary duties owed to the creditors offiduciary duties owed to the creditors of Bradfordfiduciary duties owed to the credito
Bradford Defendants  motion to dismiss this count.

improvementsimprovements being financed by the bonds.[8]  After setting forth the standards for evaluating  Af

sufficiencysufficiency ofsufficiency of the Plaintiffs  pleading, Plaintiffswillsufficiency of the Plaintiffs  pleading,

to determine whether they have successfully statedto determine whether they have successfully stated the existen

statement,statement, and whether, for each alleged misrepresentation, therearestatement, and whether, for each all

aa strong inference ofa strong inference of scienter.a strong inference of scienter.   Plaintiff will then examine the

toto their 1934 Act claims:  whether Plaintiffs have sufficiently alleged lto their 1934 Act claims:   whether

sufficientsufficient facts are alleged to tie the specific defendantssufficient facts are alleged to tie the specific defen

regardregard to the Officer and Trustee Defendants, whether Plaintiffs havregard to the Officer and Trustee Def

person liability under § 20.

A.    TheThe Standards ForThe Standards For Determining Whether Plaintiffs Have Adequately PledThe
       Action For Violating Rule 10b-5

EvenEven in connection Even in connection wiEven in connection with a motion to dismiss a securities

ofof Rule 12(b)(6) jurisprudence still guide this Couof Rule 12(b)(6) jurisprudence still guide this Court.

complaintcomplaint as true, and if, under any theory, the complaint as true, and if, under any theory, the allegat

inin accordance with the law, we must deny the motion in accordance with the law, we must deny the mot

SecuritiesSecurities Litigation, 106 F. Supp. 2d 161, 165 (D. Mass. 2000), citing 106 F. Supp. 2d 161, 165 (D. Ma

1414 F.3d14 F.3d 697, 700 (1st Cir. 1994).  All reasonable inferences must be granted in favor of the plaintiff.

In re Raytheon Securities Litigation, 157 F. Supp. 131, 145 (D. Mass. 2001).

ToTo state a cause of action under To state a cause of action under Rule 10To state a cause of ac

defendantdefendant made a false statement or omitted a material fact, with scientedefendant made a false st

_____

[8]    TheThe AmendedThe Amended Complaint does devote aThe Amended Complaint does devote a subsection, ¶s 47-4
diddid notdid not disclose the financial crisis recognized by the Trusteedid not disclose the financial crisis recognized by the Trustee and
that Defendants were obligated to disclose the content of that meeting in the Officialthat Defendants were obligated to disclose the content
however, however, the Officers and Trustees  recognition that Bradford washowever, the Officers and Trustees  recognition that Bradfor
cash to operate is highly relevant evidence of scienter.

reliancereliance upon the statement or omission caused the plaintiffs  injreliance upon the statement or omissi

9393 F.3d 987, 992 (1st Cir. 1996).  Claims unde93 F.3d 987, 992 (1st Cir. 1996).  Claims under 93 F.3d 987

pleadingpleading specificity requirements established by Fed.R.Civ.P. 9(b) and the Privpleading specificity

LitigationLitigation Reform Act, 15 U.S.C. § 78u-4.Litigation Reform Act, 15 U.S.C. § 78u-4.  Aldridge v. A. T. C

2002)( Aldridge) . ).  To meet these re ).  To meet these requir ).  To meet these requirements, the pla

misleadingmisleading statement or omission, including its time, place and content.  In Re PerkinElmer, Inc.

SecuritiesSecurities Litigation, 286 F. Supp. 2d 46, 51 (D., 286 F. Supp. 2d 46, 51 (D. Mass. 2003).  Plaintiffs must f

supportsupport for the claim that the statements or omissions were fraudulesupport for the claim that the statem

oror omissions were misleading.  Aldridge, 284 F.3d at 78.  Plaintiffs are also r, 284 F.3d at 78.  Plaintiffs are a

sufficientsufficient facts that give rise to a  strong infersufficient facts that give rise to a  strong inference  o

inference.inference.   In re CabletronIn re Cabletron Systems, InIn re Cabletron Systems, Inc. 311 F.

NotwithstandingNotwithstanding the specificity requirements established by Rule 9(b) and the PSLRA, the PlNotw

areare not required to are not required to plead are not required to plead evidence.  Cooperman v. Individual,

1999).

Here Here bothHere both sets of DefendantsHere both sets of Defendants assert that the alleged misrepresen

uponupon by theupon by the Plaintiffs are not material aupon by the Plaintiffs are not material as a mater of law

actualactual significanceactual significance in the deliberations of aactual significance in the deliberations of a r

F.3dF.3d at 34.  With regard to an allegedF.3d at 34.  With regard to an alleged omission, the omitted fact is mater

 that  that the disclosure of the omitted fact would have  that the disclosure of the omitted fact would have been view

materiallymaterially altered the  total mix  of information madematerially altered the  total mix  of information ma

224,224, 231-32 (1988).  While Rule 10b-5 does not224, 231-32 (1988).  While Rule 10b-5 does not create an affirm

willwill arise if an issuer has previously made a statement of material fact that iswill arise if an issuer has previously

13

incomplete,incomplete, or misleading in light of the undisclosed information.  Gross v. Summa Four, Inc

F.3dF.3d 987, 992 (1st Cir. 1996).  In general, the materiF.3d 987, 992 (1st Cir. 1996).  In general, the material

ofof fact that should normally beof fact that should normally be left to jury ratherof fact that should normally be le

Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 176 (1st Cir. 1994).

> WithWith these principlesWith these principles in mind the Court can analyze the sufficiency of the Plain

allegations.

> B.    Defendants Defendants  Disclosure of Information Regarding Future EnrollmenDefendant
> Misleading and Plaintiffs Have Sufficiently Alleged Necessary Scienter.

> 1.    FailureFailure to disclose Bradford s plummeting acceptFailure to disclose Bradford s
> numbernumber of deposits was misleading, particularly innumber of deposits was misle
> disclosure of an increased number of acceptances.

AsAs notedAs noted above, one of the critical issues for any potential purchaser of Bradford s As noted

waswas whether the fall 1997 increase in enrollment  was a fluke or the beginning of a trend that would

allowallow Bradford to generate operational surpluses.  Had the Official Statement merely stated the

College sCollege s goal to increase enrollment to 725 students, including 225College s goal to increase enrollment

academicacademic year, it is arguable that such forecasting academic year, it is arguable that such forecasting

statementsstatements about a company s futurestatements about a company s future thatstatements about a com

especiallyespecially whenespecially when accompanied by a disclaimer that the College might notespecially whe

e.g. In re Stone & Webster Securities Litigation, 253 F. Supp. 2d 102, 117 (D. Mass. 2003).

> TheThe The OfficialThe Official The Official Statement,The Official Statement, The Official Statement, how

statistics  some disclosed, some undisclosed  that purportedly confirmed the College s forecast.

> AsAs of April 3, 1998, applications received by the College to date total 879,
> anan increase of more than 18% from April 3, 1997.  The total ofan increase of more than 18% fro
> totaltotal applications received for the fall 1997. . . .Based on this increase in
> applications,applications, historicapplications, historic ratesapplications, historic rates for conver
> thethe number ofthe number of applications from freshmenthe number of applications from freshm

14

> College believes that it can reach its goal of the fall of 1998 while increasing the quality of it students and reducing slightly the average amount of financial aid a College funds. Official Statement, at A-13. (emphasis added)

As required by the PSLRA, the Complaint describes why this disc

misleading. To assert that the College s target is obtainable,

current and statistics known (or knowable) by

applications (which is disclosed); (2) the

(which is disclosed, but is misleading for reasons that are not disclosed), and (3) the

deposits received to date (which is not disclosed). Of t

the most reliable indicator of enrollment for the upcoming

to the College to reserve a place are most likely to attend

used to repay the bond debt. But the number of deposits received at the t

down by 20% from a year earlier[9], AC, ¶ 63, a very strong ind

would not increase, but fall. Which is what occurred, AC, ¶ 68.

The historic rate of conversion of appli

disclosed)[10] might be relevant if there was reason to beli

However, the College knew, but failed to disclose, that the accepta

dramatically, from 80% to below 70%. AC, ¶ 62. This was not bec

---

[9] The Defendant and Officer Defendants complain that ¶ 62 does not specify reduction applies to. It is obvious from the context of the Amended Complaint that from the prior year at the same time. These figures come from Ad of business by Bradford and circulated to, among others, the president and CFO such detail in an amended pleading.

[10] The conversion rate could be calculated from the fi on A-8 of the Official Statement. They ranged from a low of 19.7% for the fall of 1994 to year. Putting aside the extraordinary year of 1997-98, the historic average rate was 20.2%. Taking into account, the average was 21.6%.

15

more selective due to increased competition for available spots. Even though

intentionally trying to increase enrollment it was actually accepting less students. AC,

quality of student applying had declined. AC, ¶ 62.

The one figure the College fully disclosed, the number of applications,

relevant number for evaluating future enrollment. This was clear from the Admissions

on page A-8 of the Official Statement. The year Bradford received the fe

current year, it had the most enrollments and the highest headcount. The

applications, 1994, it had the lowest rate of converting ap

to 27.1% for 1997). Yet not only did Bradford tout the

a securities violation, but the Complaint properly alleges that this statistic was mislea

inaccurate because the application numbers were not comparable to prior years without financ

disclosure.

The Amended Complaint

to prior years because Bradford had begun to accept and count standardized web applications,

change the College knew artificially inflated the application numbers. AC, ¶ 62. Web ap

applied to more schools because of the ease in applying

any particular school to which they applied.[11] AC, ¶ 62. Defendants dispute AC,

applicants leads to a material change in the acceptance or matriculation rat

heightened standard applied to federal securities cases,

reasonable inferences in the Plaintiffs' favor. It is a reasonable inference that

---

[11]     A web applicant who applies, and is accepted to, ten schools will reject nine. A paper
only applies, and is accepted to, five schools, will only reject four. W
increases, its matriculation rate for accepted applicants will almost cer
application applicants into enrollees are much longer.

to a school with a push of a computer key have less commitment tha[n]

effort to obtain and return a paper application.

Moreover, Defendants ignore the allegatio[n]

students who submitted web applications were less likely to attend, that

rate would decline (which it did), and that it knew counting web applications artificially inflate[d]

application numbers.[12]  If the College itself thought this statistic was not

admissions, it should have never bee[n]

between the two application figures.  Thus,

to establish that every element that allegedly supported the C[ollege's]

meet its September 1998 goal was misleading.

Defendants assert that Plaintiffs have not establish[ed] that the und[erlying]

statistics are material because there are no

the College had materially significant numbers of applications and accep[tances]

Defendants who made misleading

of applications already received and the College s acceptance rate.  The fact that Defendan[ts]

partially disclosed this information voluntarily demonstrates that they

were material in assessing whether Brad[ford]

semester.  Indeed, the Official Statement presents this information as if these statistic[s]

---

[12]     The Trustee and Officer Defendants question Plaintiffs source for these allegations.  Altho[ugh]
Plaintiffs are not required to plead evidence, these alega[tions]
presentation by Bradford admissions personnel explaining to the Board of Trustees
The memorandum describes the softness of internet applications, how half compl[eted]
included in the application count when a paper equivalent had not historica[lly]
these changes from historical treatment had been introduced by the new[?]
September 1997 prior to the bond issuance.
artificially increases numbers.  These facts can be included in an amended pleading.

material to this important factor.[13]

DefendantsDefendants contend that theyDefendants contend that they cannotDefendants contend that t

TheyThey relyThey rely on the First Circuit s opinion in <u>Shaw v. Digital Equipment, Corp.</u>,, 82 F. 3d 1194, 1209

(1st Cir 1996) ( <u>Shaw</u> ), asserting that its holding makes it plain that Bradford had no obligation to

disclosedisclose its forward looking projections or opinions.   But <u>Shaw</u> confirms that even if  confirms that eve

hadhad no obligation to disclose the projections,had no obligation to disclose the projections, once they had volunt

ifif there is no reasonable basis for the projection.  82 F. 3d at 1211, n. 21.if there is no reasonable basis for the p

PlaintiffsPlaintiffs raise an allowable inference that there was no reasonable basis for the prediction,Plaintiffs raise

Defendants did not act in good faith.  See Section I.B.2, <u>infra</u>.

ItIt is equally well established that  (w)hen a corporation doesIt is equally well established that  (w)hen a

bebe voluntary or required--there is a dutybe voluntary or required--there is a duty to make it complete and accurate

<u>Inc</u>.,., 814 F.2d 22, 26 (1st Cir.1987).   Disclosed facts may  not be  so., 814 F.2d 22, 26 (1st Cir.1987).   Disclos

<u>Backman v. Polaroid Corp</u>., 910., 910 F.2d 10, 16 (1st Cir.1990) (en banc) (quoting., 910 F.2d 10, 16 (1st Cir.19

<u>SulphurSulphur Co.</u>, 401 F.2d 833, 862 (2d, 401 F.2d 833, 862 (2d Cir.1968), <i>cert.cert. denied,</i> 394 U.S. 976 (1969

selectiveselective disclosure of admissions data could clearly be found to mislead; it publicized only the

favorable statistics, while concealing the more relevant unfavorable information.

MoreMoreover,Moreover,  disclosures which appear to be couched as a projection,  frequently make

actionableactionable represeactionable representations about the present.  A prediction about the future contains

<hr />

        [13]        DefendantsDefendants fail to consider the well-known admissions cycle for U.S. collDefendants fail to consider
ProspectiveProspective freshmenProspective freshmen file their applications in theProspective freshmen file their applications in the fal
inin the winter and early spring.  By May 1, the date ofin the winter and early spring.  By May 1, the date of the Official Statement, stud
toto guarantee their spaces.  Consequently, by Mayto guarantee their spaces.  Consequently, by May 13, the dateto guarantee their spa
onlyonly have  made its decisions on virtually all of itsonly have  made its decisions on virtually all of its applications, but it would have re
Thus,Thus, the admissions information available on MayThus, the admissions information available on May 13 (or May 1) was highlyTh
upcomingupcoming teupcoming term.  If the Court cannot take judicial notice of these facts, Plaintiffs can set them forth in an ame
pleading.

implicitimplicit factimplicit factualimplicit factual assertions: (1) that the statement is genuinely believed, (2) th

basis for that belief, and (3) the speaker is not aware ofbasis for that belief, and (3) the speaker is not aware of an

undermineundermine theundermine the accuracy of the statement. HelvigHelvig v. Vencor, Inc. 251 F.3d 540, 55

InIn reIn re Sepracor, Inc. Securities Litigation, 308 F. Supp. 2d 20, 33-34 (D. Mass. 2004). For, 308 F. Su

reasonsreasons described above, the selective disclosure described is actionablereasons described above, the sel

thatthat undermined the accuracy of the statemthat undermined the accuracy of the statementhat undermined th

therethere was no reasonable basis for belief in light of the most recent, most relevantthere was no reason

statistics.statistics. Further,statistics. Further, for the reasons setstatistics. Further, for the reasons set forth below,

thethe authors of thethe authors of the disclosurthe authors of the disclosure did not genuinely believe th

ComplaintComplaint does not allege misrepresenComplaint does not allege misrepresentation witComplaint d

instead alleges that  hard  present facts were either not disclosed or misleadingly disclosed.

ThisThis claim s focus on the failure to properly disclose preThis claim s focus on the failure to pro

invocationinvocation of the  bespeaks caution  doctrine.    That defense precludes liability foinvocation o

informatinformation,information, such as forecasts, estimates, projections and opinions when such statemen

accompaniedaccompanied by cautionary disclosures thataccompanied by cautionary disclosures that adequatelya

Shaw,, 82 F. 2d at 1213., 82 F. 2d at 1213. Here,, 82 F. 2d at 1213. Here, Defendants claim Plaintiffs w

enrollmenrollmentenrollment disappointments because directly following the enrollment disclosure, the Offi

StatementStatement also stated  failure to achieve thisStatement also stated  failure to achieve this enrollmeS

adversely affect the College s ability to reach Financial Equilibrium.

BuButBut as Shaw ma makes plain, the bespeaks caution doctrine has no application to a statement

whichwhich has the appearance ofwhich has the appearance of a projection, but also implicitly makes a false statem

ToTo the extent plaintiffs allege that the . . . statement encomTo the extent plaintiffs alleg
represerepresentatrepresentationrepresentation of *present fact*, and that such a representation wa

19

misleadingmisleading when made, the surroundingmisleading when made, the surrounding caution renderedrendered the statement immaterial as a matter of law.  *See Harden* [v. RaRaffensperger],], 65 F.3d [1392] at 1405-06 (explaining that the be], 65 F.3d [1392] at 140 cautioncaution caution doctrine cannot render misrepresentations of hard fact nonactionable]

8282 F.3d at 1213 (emphasis in original) <u>See also</u>  <u>In re Number Nine VisuIn re Number Nine Visual TIn r</u>

<u>SeSecuritiSecuritiesSecurities Litigation</u> 51 F. Supp. 2d 1, 19 (D. Mass. 1999)( <u>Number Nine</u> ) ( The bes

caution  defense is inapplicable where,caution  defense is inapplicable where, as here, the plaintiffs challenge th

regardingregarding *presepresent factpresent facts*  as opposed to forward-looking statements , citing <u>Shaw</u> (

original)).

TheThe projections of the fall enrollment are not immaterialThe projections of the fall enrollment are not im

havehave set forth sufficient facts explaining why the statement was false and misleading.  Ashave set forth suffic

below, they can also make a strong showing of scienter.

2.    TheThe Amended CoThe Amended ComplaintThe Amended Complaint The Amended Com
expected fall enrollment

LiabilityLiability under Section10(b) and Rule 10b-5 requires Liability under Section10(b) and Rule 10

intentintent to deceive, manipulate or defraud.  <u>ErnErnst & ErnstErnst & Ernst v. Hochfelder</u>, 425 U.S. 185, 1

(1976).(1976).  This can(1976).  This can be pled by allegations that give rise to an inference that defendants said(

whilewhile believing or knowingwhile believing or knowing another.  <u>In re Segue Software, Inc. Securities Litiga</u>

2d2d 161, 1662d 161, 166, (D. Mass. 2000).  Plaintiffs must show either that the defendants2d 161, 166 (D. Mass.

to defraud, or that they acted with a high degree of recklessness.  <u>Aldridge</u>, 284 F. 2d at 82.

ToTo meet the heightenedTo meet the heightened pleadingTo meet the heightened pleading requirements

forthforth sufficient facts that give rise to a  strong inference  of scienter.forth sufficient facts that give rise to a  st

notnot be irrefutable.  <u>Cabletron</u>, 311 F.3d at 38.   Plaintiffs need not foreclose all other

characterizationscharacterizations of fact, as the task of weighingcharacterizations of fact, as the task of weighing

Aldridge, 284 F. 3d at 284 F. 3d at 82. Even 284 F. 3d at 82. Even when evaluating the strength of Plain

Plaintiffs are still entitled to have all reasonable inferences drawn in their favor. Id.

Defendants assert that the Plaintiffs have not sufficiently plead scienter Defendants assert that th

traditional badges of scienter, such as insider trading or persona traditional badges of scienter, such

financing, are not present. financing, are not present. To require such eviden

securities fraud w securities fraud with reg securities fraud with regard to any bond issuance by a non-

organizations do organizations do not issue equity to shareholders. The First Circuit, however, has

formula for pleading scienter, preferring to formula for pleading scienter, preferring to rely on a  fact-speci

case. Cabletron, 311 F.3d at 38.

However, in the However, in the leading First Circuit case concerning scienter pleading under H

Greebel v. FTP Greebel v. FTP Software, Inc., 194 F.2d, 194 F.2d 185, 196 (1st Cir. 1999), the Court of A

certain fact patterns certain fact patterns that are relevant to demonstration of scienter, at least two of which

here: the divergence ere: the divergence betwee ere: the divergence between internal reports and externa

current factual current factual information before making statements. Here, of course, current factual inform

pronounced optimism in meeting the enrollment pronounced optimism in meeting the enrollment targe

reports, which indicated that the College would do significantly worse t reports, which indicated that th

pronouncement was also at odds with the current figures poss pronouncement was also at odds w

Statement.

Even more probative of scienter, however, is the nature of the s Even more probative of scienter,

summarized above, the summarized above, the officers, trustees summarized above, the officers, truste

relevance to the fall enrollment numbers. Only relevance to the fall enrollment numbers. Only one of th

positive; yet it was the only one disclosed. Not only were the two negative statistics (acceptance

21

rate and number of deposits) not disclose... the enrollment target could be met. If the officers, Trustees and underwriters were... give prospective investors insight as to the likelihood of Bradford achieving its goal, it is highly doubtful they would have publicized... statistics. On the other hand, if they were attempting to manipulate investors and statistics... weaknesses that would likely discourage investors from... precisely in the manner adopted in the Official Statement. The deliberate concealment of... relevant statistics while disclosing more favorable, but untrustworthy... that the Defendants did not act in good faith. And... consideration that the application data itself was misleading because... differences between the way applications were obtained in prior years.

The fact that Defendants included and focused upon the app... Statement, knowing that... the number of applications, AC, ¶ 62, is also strong evidence of scienter. Knowingly comparing statistics from two periods without disclosing changes in the method of compiling set da... make the comparison dubious is plainly evidence of intent to deceive or manipulate.

The Court can also take into consideration the subjective knowle... Officers, as evidenced by the February 1987 Trustee... of the authors of the Official Statement, Kiszka, informed the Board, that... only survive two or three more years if nothing change... Amended Complaint, or the disclosures in the Official Stateme...

Statements gives any indication that the financial situation had Bradford defendants' knowledge of the precarious financial condition, and their failure to make disclosures (or to check the accuracy of disclosures actually made loan funds to that institution, is information the Court can and should consider in weighing whether their conduct was knowing or reckless.

Although none of the Bradford trustees issuance, their knowledge that the school's survival was on in assessing scienter. Several cases have recognized that the serious deterioration of financial health is a motive for the alleged fraud and should be Cabletron,, 311 F.3d at 39; Aldridge, 284 F.3d at 83; Nathenson v. Nonagen, Inc., 267 F.3d 40 (5th Cir. 2001). This is particularly the case whe financial decline from investors. Even if they would not directly p Court can take into consideration that the Bradford Defendants had invested subs professional commitment to the College. It try to try to finance a project they viewed as the only viable alternative to liquidation, a s steadfastly refused to consider. AC, ¶ 73. watch would be a personal and professio manipulating the information provided to inv

Taken together, all of this conduct is more than adequate evidence of scienter.

---

[14]   The Financial Statement for 1997, attached as Appendi released seven months after the February 1997 trustees' meeting does not indicate any change in the financial condition of the College. Although net assets increased by $361,600, unrealized gain on investment assets, a surplus which could disappear in short notice investment gains and gifts of more than $1.35 million, Bradford's operations lost $4.5 million. Appendix did things look any better in the current year, in which the operational loss was about the same amount.

C.    Defendants Defendants  Defendants  DisclosureDefendants  Disclosure Defendants  Disclosure of
      Was Misleading and Plaintiffs Have Sufficiently Alleged Necessary Scienter.

      1.    TheThe stated expectationThe stated expectation that financial aid would likely decrease w
            mislemisleading, misleading, particularly in light of the fact that financial aid awards we
            actually increasing.

TheThe Official Statement devotesThe Official Statement devotes substantial attention to Bradford sThe

its students.  See, e.g. Officialits students.  See, e.g. Official Statement at A-10.  The tables on page A-10 show t

ofof such awards increased every year of such awards increased every year bof such awards increased every yea

itit clear that the Bradford s grit clear that the Bradford s grants of finit clear that the Bradford s grants of f

incomeincome it would otherwiseincome it would otherwise have earned.  MIFA s disclosure notes that the awar

studentsstudents (along with 10students (along with 10 other factors, such as  competition , legislation andstud

thatthat will affect Bradford s future revenue and expenses. that will affect Bradford s future revenue and exp

Statement makes it clear that financial aid awards are material to Bradford s finances.

InIn at least three locations,In at least three locations, the Official Statement declares thatIn at least three l

willwill continue to take steps to reduce thewill continue to take steps to reduce the amount of aid awarded andw

comparedcompared tocompared to total student revenue.[15]   The anticipated reduction is specifically stated to be th

---

[15]    On page A-13 the Official Statement states:

        [D]uring[D]uring the 1997-98 academic ye ar,[D]uring the 1997-98 academic year, the College estimates that financial[
        toto 29.9% of student income versus 30.3% the previous year.  This expto 29.9% of student income versus 30.3% th
        resultresult of change in methodology of aiding students wiresult of change in methodology of aiding students 
        additional loans funded by students and/or parents.  The College s financialadditional loa ns funded by studen ts and/o
        callscalls forcalls for a furthercalls for a further reduction of financial aid spending for 1998-1999 academic year to 28.8
        of student income.

        TwoTwo paragraphs later, as part ofTwo paragraphs later, as part of its discussionTwo paragraphs later, as part of its discussion
        thethe Official Statement states that based on an increase in applications, historic conversion rates and the number of
        depositsdeposits received, the Collegedeposits received, the College believes it can meetits fall enrollmentgoal  while. . . reducing slightly
        of financial aid awards to  such stude nts from C ollege fund s.

        AndAnd on page A-17, the OfficialAnd on page A-17, the Official Statement states:  The strategic initiatives of the CollegeAnd
        andand for the next three years are. . .3.  To increaseand for the next three years are. . . 3.  To increase net tuition revenues by close manage
        enrollmen t, prudent use of financial aid and setting of tuition and fee levels to attract stu dents.

ofof a new program to redof a new program to reduce aid, Offiof a new program to reduce aid, Official Stateme...

two year old initiative.  Official Statement at A-17.

TheThe Amended Complaint plainly pleadsThe Amended Complaint plainly pleads sufficient facts to demo... ComplaintComplaint alleges that the actual finaComplaint alleges that the actual financial aiComplaint alle... $250,000 higher than the budget referenced in the disclosure and that the actual$250,000 higher than the budget... toto student income was 35%,to student income was 35%, not 29.9%--an increase of 14% instead of a 1.3% decre...

ContraryContrary to Defendants' assertion, the ComplContrary to Defendants' assertion, the ComplaiC... werewere detewere determined later,were determined later, and that Plaintiffs are trying to hold them liable fo... targets.  The Complaint alleges that the actual numbers were known and knowable at the time the

OfficialOfficial Statement was published because in May,Official Statement was published because in May, just se... (and(and only(and only a week or two before the end of the academic term)(and only a week or two before the end o... aidaid it had given to its students for theaid it had given to its students for the school yearaid it had given to its stu... AC,AC, ¶ 56.  UnlikeAC, ¶ 56.  Unlike a traditional business, whichAC, ¶ 56.  Unlike a traditional business, whic... oror fulfillmentor fulfillment expenses seven weeks before its or fulfillment expenses seven weeks before its  fisca... studentstudent revestudent revenstudent revenue (and incurred all of its student aid expense) when studen... SeptSeptemberSeptember and January.  AC, ¶ 56.  By May, the College had real numbers,[16] not obsol not obsol...

---

[16]  EvenEven if theEven if the Amended Complaint didEven if the Amended Complaint did not allege Bradford's receip... ofof the discrepancy and the importance of the financial aid dataof the discrepancy and the importance of the financial aid data to... reasonablyreasonably infer the current falsity of thereasonably infer the current falsity of the projectio... materialmaterial falsity regarding Digital's representationmaterial falsity regarding Digital's representation that a restructuring reserve wa... monthsmonths later Digital did substantially increase its restructuring reservmonths later Digital did substantially increase its restruc... naturenature of the problems facingnature of the problems facing Digital, defendant s must have known about the forthcoming chan... stated that the reserve wasstated that the reserve was adequate.  82 F. 3d at 1212-1214.  See also Shaw, 82 F. 3d 82 F. 3d at 1210-11(rea... plaintiff splaintiff s unsubstantiated allegation that defendant knew about substantialplaintiff s unsubstantiated allegation that the projecti... announcement)announcement) Cooperman v. Individual, Inc.,, 171 F.3d 43,, 171 F.3d 43, 48 (1st Cir. 1999)(reasonable to infer that Def... knowknow about undisclosed dispute between CEOknow about undisclosed dispute between CEO andknow about undisclosed dispute... untiluntil 4½ months later).  See generally Number Nine, 51 F. Supp. at 14-17.  (Liability for , 51 F. Supp. at 14-17.  (Liability for... statementstatement basedstatement based solely on disclosure of problem at a later date when problemstatement based solely on disclosure... iitsits existence its existence at the time of the misleading statement; cannot infer knowledge of inventory valuation merely from an... announcementannouncement eight months later, but knowledge of other types of corporatannouncement eight months later, but know...

25

numbers, to base its disclosures upon.[17]

Once again, because Plaintiffs' claim rests on toto futo future projections, the bespeaks caution doctrine does not apply. <u>Shaw</u>, 82 F.3d at 121, <u>Number Nine Visual Technology Corp. Securities Litigation,</u> 51 F. Supp. 2d 1, 19 (

Here, the disclosure of the budget projections implicitly stated that Bradford of facts that contradicted the budget numbers data, and this was not disclosed to potential investors. Further, the bespeaks c apply bapply because there was no particularized disclaimer regarding financial aid. <u>In re Focus Enhancements Securities Litigation,</u> 309 F. Supp. 2d., toto investors insuffito investors insufficient to to investors insufficient to establish bespeaks caution defens related in subject matter and strong in tone). The Official Statement does not warn that financial aid awards, which would awards, which would appear to be within the complete contr

Case 1:04-cv-11667-RGS    Document 41    Filed 05/02/2005    Page 30 of 95

---

shorter than eight months.) Here, seven weeks before the end of the fiscal year and shorter th it is eminently reasonable to infer that defendants knew (or percentages were higher than Bradford's budget, even if those figures were no of Bradford's year end financials.

[17]    Moreover, even if Court ignores the Amended Complaint allegations regarding the existence hard numbers at the time of the Official Statement, the Co were invalid because while the total amount of financial aid was comparable to what the spring enrollment figures were lower than predicted by the budget, decreasing student facts meant the percentage of i facts meant the percentage of financial aid to student revenue would nece decrease while the numerator remains the same, the percentage must increase.

[18]    The disclaimer on page A-13 states:

If these goals are in fact met and if the College can otherwise budget, it expects to achieve a small operating budget surplus for the 1998– Conversely, failure to achieve this enrollment goal ar adversely affect the College's ability to reach Financial Equilibrium.

The reference to "goals" in the first sentence quoted above does described two paragraphs earlier in the Official Disclaimer. Not only does the physical the nomenclature as well, supports this reading. In this section of the Official Statem attain a balanced budget and to enroll more students are described as "goa

26

it certainly does not disclose that the budget predictions advanced may be worthless because College had made financial aid commitments and awards prior to the not bothered to calculate whether their projections were consistent with granted.

The Amended Complaint also establishes material falsity for the estimate of financial aid awards for the upcoming year. While the Official Statement states that t financial aid for 1998-99 is a further reduction to 28.8% of student income, among the Bradford officers and Trustees at the time of the current level to 31.3%. AC, ¶ 57. This translates to a reduc amount since the superceded budget discussed in the Of operating budget surp See <u>Crowell v. Ionics, Inc.</u>, 343 F. Sup determined by effect on in income, not revenue; argumer only a small amount of revenue involved is specious ). Moreover, the to determining whether Bradford was in control of its financial steps to reduce such awards.

Defendants assert the Court sh its f its final version was completed after the offering, sometime in May 1998. Merely because the budget was finalized after the Official Statement do Courts can infer that informatio

disclaimer specifically refers to this enrollment goal , indicating that the pr to enrollment goals. At a m inium the disclaimer is ambiguous.

Yet even if it could be inte Yet even if it could be interpreted to warn of the uncertainty of m referring to estimates for the next academic year, 1998-99; it does year might be materially different.

27

statement was known before the date of th... responsible for the misrepresentation would likely have known the information. F. Supp. at 14-17. See also footnote 16, infra, and authorities cited therein. The budget, drafted by Defendant Kiszka, was circulated to the ... of the Official Statement, and reviewed by the Finance Committee of the Board of Trustees a week before the May 13 closing. Drawing all reasonable inferences in favor of th... can infer that the discrepancies between the financial aid ... the Bradford Defendants (and could have been discov... Accordingly, Plaintiffs have pled sufficient allegations to find that the fin... were false at the time of the Offering.

The Official Statement also recited that th... financial aid was the implementation of a new  methodology  which sought to replace ... with loans to students and parents.  Official Statement at A-13.  This initiative ... been in place for the past two years.  Official Statement at A-17.  But the Amended Compl... alleges that there was no initiative.  Not only was there was no plan to modify Bra... aid practices, no one instructed the persons responsible for ... the officers or Trustees took any steps to control the amount of aid...

---

[19]    In fact, a May 26, 1998 memorandum from Defendant Kiszka demon... to financial aid numbers between the original version circulated in April and the final version approved into financ... memorandum describes the changes that were made and th... various departments, which were cut by $300,000.  He identifies no changes... financial aid numbers.  Thus, earlier versions of the budget that were circulated before ... the increased financial aid to student income ratio that conflicted with the disclosu... Allegations containing this information, if necessary, can be added to an amended pleading.

[20]    The Amended Complaint does not set forth the e... existence of the alleged changes in financial aid a... Plaintiffs have reached this conclusion based on their examination of...

of any plan to control financial aid, especially in light of the increasing a

discounting is clearly something investors would find material. It would demonstrat

Bradford's optimistic statements that they

Indeed the lack of such a plan would help investors assess whether Bradford's goal of finan

equilibrium was likely. Asserting that a plan was in place to reduce financial

existed, is plainly a materially false statement.

> 2. Defendants' failure to disclose the financial aid data t
> contradicted the disclosures in the Official Sta
> in a negative light is strong evidence of scienter.

The same evidence that supports the strong inference of scienter with re

enrollment data supports such a finding with regard to the financial aid figures. Indeed

stronger. With regard to enrollment, De

falsely, disclosing favorable statistics while suppressing more relevan

Defendants possessed highly relevant information, Defenda

around, that directly contradicted the hard numbers presented in around, that directly contradicted the hard

Defendants were intentionally lying or they were practicing willfu

and disclose the most recent data. And in the case of the actual financial ai

these figures were not fresh, they were months old; an

have been updated as part of the complete disclosure that was mandated for a bond issuance.

Plaintiffs' scienter allegations compare favorably

---

aid records, none of which discuss a new financial aid methodology or contai
Additionally, plaintiffs' investigator interviewed, Jean Scott, the President of Brad
September 1998. When faced with a financial crisis
to understand the problem's origins. Plaintiffs believe she would testify that she
plan for reducing aid, but that over generous tuition discounting, o
principal reasons for the crisis. Factual allegations to this effect can be added, if necessary, to an amended pleading.

sufficientsufficient in <u>Number Nine</u>.  To support their claim that inventory was overvalued on a financial

statement,statement, the classstatement, the class plaintiffs in <u>NumberNumber Nine</u> relied upon articles in trade

thatthat computer hardware cthat computer hardware comthat computer hardware comparable to that marketed

shareshare and being replaced by newer techshare and being replaced by newer technology.  Tshare and bei

company scompany s products and there was no evidence that any of the defendants read the articles.

ReferenceReference to the articles was sufficient to meet the First Circuit s and the PSLRAReference to th

requirements.

> TheThe Court holds that the above-referenced trade publication excerpts satisfy
> thethe pleading requirement withthe pleading requirement with respect to scienter.  Acceptingthe
> asas representativas representativeas representative as representative ofas representative of as repres
> eithereither knowingly misrepresented the valueeither knowingly misrepresented the value ofeithe
> itit made the challenged statements, or recklessly disregarded sucit made the challenged stateme
> failingfailing to remain informed of important developments in the market for
> graphics cards.

5151 F. Supp. 2d at 27.  If failing to remain abreast of trade publications (and a consequent51 F. Supp. 2d at 27.

makemake an accountingmake an accounting adjustment based on such trademake an accounting adjustment based

toto inferto infer scienter, failing to stay abreast of important internal data that directly contradicts wto infer sci

representationsrepresentations must, at a minimum, also constitute arepresentations must, at a minimum, also con

CircuitCircuit has recognizedCircuit has recognized that publishing statements when DefendantsCircuit has reco

statementsstatements were inaccurate or misleadinglyinstatements were inaccurate or misleadinglyincompletestate

F.3d at 83.

AA strong inference ofscienter can also be inferred from the Official Statement s claims that

aa programa program was in place to reduce financial aid awards when no such program existed.  Plainly, the

positivepositive statement that a plan ispositive statement that a plan is ipositive statement that a plan is in pl

stronglystrongly infers thatstrongly infers that the authors and publishers of such statements intended to deceive th

thethe Official Statement, or that they were culpably reckless about reporting the non-existing policies

andand methodologies.  See e.g. In re Lernout & Haupsie SecuritiesIn re Lernout & Haupsie Securities Litigation

(D.(D. Mass. 2002)(officers likely knowledge(D. Mass. 2002)(officers likely knowledge of fictitious claims(D. M

was sufficient evidence of scienter).

EvenEven if no specific single allegatioEven if no specific single allegation contEven if no specific sin

enoughenough inference ofenough inference of scienter, the plaintiff may combine various facts andenough infere

fraudulentfraudulent intent to satisfy the scienter requirement.  Cabletron, 311, 311 F. 3d at, 311 F. 3d at 39.  Her

factsfacts and circumstances  the nature of the false statements, the ease with which truthful andaccurate

informationinformation could have been found, the internal documents known to Defendants thatinformation coul

truetrue  information,  true  information,  Defentrue  information,  Defendants   clear  knowledge  of  Bradford

Defendants Defendants  desire to save the College headed foDefendants  desire to save the College headed forI

anan audacious borrowing programan audacious borrowing program to attract potential enrolleesan audacious bo

stronglystrongly infer that the placementstrongly infer that the placement of false information instrongly infer tha

negligneglignegligence.negligence.  Either Defendants intended to deceive or they recklessly refused to check

financial records without concern of the financial danger they were creating for investors.

D.    Defendants Defendants  Failure To Disclose Bradford s Student Retention CriDefendants
      Misleading and Plaintiffs Have Sufficiently Alleged Necessary Scienter.

      1.    ByBy failing to makBy failing to make neceBy failing to make necessary disclosures of B
            retain students, the Official Statement was materially false and misleading.

TheThe Amended Complaint states that Bradford had an attrition rate of greaterThe Amended Complaint

aa historical, longstandinga historical, longstanding problem with retaining students. AC, ¶ 49. a historical, longsta

waswas a principal cause of Bradford s financial crisis, which was an  organiwas a principal cause of Bradfor

pre-eminent  pre-eminent  financial  fact.    AC, ¶ 53, 54.  Defendant  pre-eminent  financial  fact.    AC, ¶ 53,

31

Bradford was material and that it had to be disclosed; they defend[ed] adequately disclosed in the Official Statement.[21]  This is simply not so.  If the Plaintiffs Amended Complaint overstated the contents of the Official Statement [and offering] memoranda, the Amended Complaint would be summarily dismissed.

Defendants claim they adequately disclosed the College's attrition and student retention problem on pages A-7 and A-11, but, suspiciously, do not quote the language w[...] disclosure.  There are indeed references to student retention on those pages, but only a discl[osure...] would be able to divine the existence[...] disclosure on p. A-7 occurs in the middle of the section entitled The[...] Bradford intends to do with the bond proceeds, as opp[osed...] or operational condition.

_____

[21]  With regard to Plaintiffs non-disclosure claims in general, Advest asserts that there is only [a duty to] disclose when a defendant has omitted a material fact necessary to make the statements [made not] misleading when a defendant has omitted entirely accurate.  Disclosure is [also required] where there is a statute or regulation [requiring it]. *Summa Four, Inc.*, 93 F.3d 987, 992 (1st Cir. 1996)  Here, the requir[ements for] connection with a municipal bond offering are set forth in Rule[c...] disclosure of financial information or operating data. . . material to an eval[uation...] ruling on this rule, Release 33-7049, a copy of which is attached as Exhibit A, the SEC interprets this rule to require

    a description of known facts that would significantly affect the financial information presented or future financial operations of the issuer, operations.  For operations.  For example, in a hospital financing, a steadily declining pop[ulation of the] surrounding community that, in the future, would not sup[port...] built would be important to investors.  Disclosure of currently known conditions and their future impact is critical to informed decision making.

Release 33-7049, § IIIC3c[...] steadily declining population in the example provided by the SEC.  Both trends call in doubt the ability of the institution to pay and are facts investors would not likely know absent disclosure.  Such matters have to be disclosed.

    Additionally, as described below, there are misleading disclo[sures...] information regarding the attrition problem to be disclosed for [...] of the Official Statement entitled Bondholders Risks, the issuer warns of the futur[e...] difficulty attracting students.  When an issuer warns about a current problem as only being a futur[e problem, the] disclosure is misleading unless the truth about the current problem is fully disclose[d...] 24-25.  Also, the disclosure of fall enrollment statistics was misleading unl[ess...] disclosed.  See AC, ¶ 54, and footnote 23, *infra*.

> The primary purpose of the Project is to expand residential capacity, [...] will enable Bradford College to accommodate [...] addition, the Project will enhance the residential component of Bra[dford] College, with anticipated corresponding improvements to [...] position of the College and position of the College and its ability [...] Project is necessary due to the deteriorated condition of the West residence halls and the Cluster Houses.

Such language hardly constitutes the disclosure of a student [...] the reader would hardly know that most Bradford College enro[...] fact that the administration considers the Project useful in retaining students is not the equivalent of conceding an attrition problem.

The reference on p. A-17 is even more innocuous. In the section entitled Strategic Initiatives, the Official Statement desc[...] Planning and Transition.

> The Coordinator works with faculty and [...] to the Cabinet and the Trustees, to review, revise and establish programs [...] services to attract and retain students.

Paraphrasing the job description of an employee who is concerned with student attrac[...] retention is not the equivalent of informing potential i[...] at Bradford has been impossible because the College cannot accurately [...] students will be present in subsequent semesters. Alls[o] existing customers. Making brief references to these activities does not constitute [a] severe retention or attrition problem.

Defendants also contend [...] at A-8, the spring 1998 enrollment figures, which record a reduced enrollment from the fall numb[ers]. But the spring figures are not disclosed in the same manner as the fall figures, and it is difficult to

33

determine whether the difference between the total number of students (only a 2.7% decrease) or 36 students (a more there is no description, there is no description, much less analysis, of the difference in investors would not know whether such discrepancies are expected and normal (in semester attrition rate was lower than the historical 7% mid year attrition rate, AC ¶ otherwise accounted for, such as due to a group of juniors taking spot affiliated institution.  Even if a reader was a statistics, the publishing of a single spring s student numbers, without explanation not identify a material problem concerning attrition. most favorable to the Plaintiffs, the Official Statement is misleading.[23]

Finally, Defendants rely Statement drafted by MIFA.  In the subsection dedicated to  Dependence on Tuit MIFA describes Bradford s goal of increasing enrollm

---

[22]    The Official Statement recites  (s)pring 1998 full- and part-time enrollment was the same pages lists 550 full-time students and 32 part-time students for Fall 1997, an lists a headcount of 602.  The difference is due to a category in the table i Official Statement states whether the spring total is merely the sum of the full and discrepancy is only 16 enrollees) or i compare figures in the Official Statement that were not directly laid out for comparison purposes.

[23]    Indeed, the Amended Complaint alleges that the failure to track the spring several years, in a manner comparable to how ¶¶ 54.  Had several years of fall and spring enrollments been disclosed, potential investors would the routine loss of 7% of the student body between the fall and the spring, and seen that retention was a serious problem that haunted Bradford year after year.  Investors would have also known disclosed enrollment targets.  Investors would realize that the College not only had to find new the higher entering class targets, it would have to find substantial additional students to replace the abandoned the school after a semester.

Further, investors would certainly think twice before loaning the institution an unprecedented amount of if there would be far fewer alumni than would have been if there w is particularly important with regard to an institution that repeatedly budget.  If there would be fewer alumni in the following years due to heavy attrition, there gifts could be counted upon to pay the bond debt.

2000,2000, and notes  (a) failure by the Institution to attract and retain students2000, and notes  (a) failure by the

accomplishaccomplish such goal could adversely affect the abiaccomplish such goal could adversely affe

paymepayments. payments.   Officpayments.   Official Statement at 8.  This boilerplate truism concerning fu

constituteconstitute adequate disclosure of an existing, presentconstitute adequate disclosure of an existing, pres

and scienter.

DisclosingDisclosing a known, exiDisclosing a known, existing problem as mereDisclosing a known,

AppleApple ComputerApple Computer Securities Litigation, 886 F.2d, 886 F.2d 1109, 1115 (9th Cir. 1989)(dis

ofof future problems with new product when serious problemsof future problems with new product when serious

disclosuredisclosure was actionable);disclosure was actionable); NumberNumber Nine, 51 F. Supp. 2d at 24-25,

v.v. Herman & MacLean, 640 F. 2d 534, 544 (8th Cir.,, 640 F. 2d 534, 544 (8th Cir., 1981)(  To warn that the unto

whenwhen the event is contingent is prudent,when the event is contingent is prudent, to caution thatwhen the even

toto happen whento happen when they have already occurred is deceit.  ).  Here, a very real and threatening attriti

crisiscrisis affected the abilitycrisis affected the ability of the institution to survive andcrisis affected the ability of

werewere no more likely than revenue fluctuation due to   governmental regulation and developmewere no mor

affectingaffecting thaffecting the federaaffecting the federal or state tax-exempt status of non-profit organizatio

11.  Investors11.  Investors had a right to know11.  Investors had a right to know of a serious retention crisis at th

they were deliberately not informed.

      2.    FaFailureFailure to dFailure to disclose a known and urgent crisis raises a strong infere
            scienter.

TheThe attritioThe attrition crisis at Bradford is the 800 pound gorilla in the living room.  It waThe

dominatingdominating and pre-eminent financiadominating and pre-eminent financial fdominating and pre-em

OfficialOfficial Statement.  Just as one cannot honesOfficial Statement.  Just as one cannot honestly ignore O

failurefailure to deal with attrition could not be an accident; at best it was willful ignfailure to deal with attriti

35

equivalentequivalent of culpable recklessness. equivalent of culpable recklessness.  The scopeequivalent of culpal

it is evidence of scienter.

DefendantsDefendants contend that their referencesDefendants contend that their references to student re

intentintent to conceal or mislead.  Yet the alleged disclosures are so tepid, so colorless,intent to conceal or m

completelycompletely consistent withcompletely consistent with an intent to mislead.  They raised the possibility

without disclosing the reality actuallywithout disclosing the reality actually facing the College.  Had defendants

aa complete disclosure they would haveaa complete disclosure they would have been more forthcoming.  The fact

readingreading of what they wrote wouldreading of what they wrote would not lead a potential investorreading o

isis suffiis sufficient to ris sufficient to raise a strong inference of scienter.  <u>Cf.</u>  <u>Livid Hold</u>

<u>SalomonSmithBarney,SalomonSmithBamey, Inc.,</u> ___F.3d, ___F.3d ___, 2005 WL 767100, ___F.3d ___, 200

allegesalleges alleges thatalleges that alleges that defendantsalleges that defendants alleges that defendants knewalle

made, heightened pleading standard for scienter has been met).

AdditionalAdditionally,Additionally,  Additionally, of course, the other facts and circumstances descri

consideredconsidered in examining whether sufficient scienter has been alleged.  For the reasons described

above, scienter also exists regarding the failure to disclose the College s attrition situation.

E.    PlaintiffsPlaintiffs Have SufficientlyPlaintiffs Have Sufficiently Alleged Defendants  False Disclo
      of a Strategic Plan

TheThe Official Statement pegs BraThe Official Statement pegs Bradford sThe Official Statement pegs Bra

describeddescribed in the Official Statement as the College s strategidescribed in the Official Statement as the

referencesreferences to these initiatives in the Official Statement.  The Amended Complaint alleges, that there

waswas no plan to deal with the attrition crisis, nowas no plan to deal with the attrition crisis, no plan towas no pla

_____

24    AdvestAdvest claims that BrAdvest claims that Bradford never rAdvest claims that Bradford never represented that
OfficialOfficial Statement explicitly refers to Bradford s  strategic plan  onOfficial Statement explicitly refers to Bradford s  strategic pla
to being able to pay the bonds.

toto stated to stated goal) of increasing enrollment.  AC, ¶ 59.  Indeed, according to NEASC, the accredito stated

body,body, Bradford s currentbody, Bradford s current planning for  recruitment, retention, facultybody, Bradfor

manymany other parameters was inconsistent with their goal of enrolling over 700 students within two

and a half years.  AC, ¶ 60.  There may have been goals, but there was no plan.

DefendantsDefendants attempt to trivialize tDefendants attempt to trivialize this allegatiDefendants atte

OfficialOfficial Statement lieOfficial Statement lied wheOfficial Statement lied when it claimed that Bradfor

MischaracterizingMischaracterizing Plaintiffs  allegations will not make them go away.Mischaracterizing Plaintif

havinghaving a dream and having a planhaving a dream and having a plan to make the dreamhaving a dream and ha

did not exist.  Falsely stating that such a plan existed is a materially false misrepresentation.[25]

TheThe Bradford Defendants point to affirmative steps that DefThe Bradford Defendants point to

enrollment,enrollment, particularly relyingenenrollment, particularly relying on marketing plan the College commi

Associates,Associates, which is referenced inAssociates, which is referenced in the Official StatementAssociates

inin the pasin the past doin the past does not mean that it had a current plan at the time of the offering to

objectives setobjectives set out by its former consultant.[26]  Moreover, the Official Statement acknowledges  Mor

thethe Dehne plthe Dehne plan was methe Dehne plan was merely a marketing plan, not a strategic plan

continued existence.  The fact that thecontinued existence.  The fact that the Trustees solicited a marketing plan

_____

[25]    TheThe difference between a representation about the existence of aThe difference between a representation about the e
aboutabout attempting to meet the goals of the plan must be maabout attempting to meet the goals of the plan must be made cleabout
DefendantsDefendants did not misrepresent current conditions that made attainment of the plan s goals unlikely, Defendants cannot
bebe helbe held liable merelybe held liable merely for not meeting the plan s goals.  Indeed, securities law assumes the market disc
assertionassertionsassertions about meeting distant plan goals.  But even if the market does not expect the issuer to meet all of its goaas
itit clearly is material that there is a concrete plan.  With Bradford s track record,it  clearly is material that there is a concrete plan.  With
wouldwould have entrusted any funds with Bradford hadthe college disclosedwould have entrusted any funds with Bradford hadthe colleg
the investor that it had no concrete plan to meet the goals necessary to permit repayment of the bonds.

[26]    AccordingAccording to the Official Statement, the Dehne planAccording to the Official Statement, the Dehne plan wa
1997,1997, a year before the offering.  It is not1997, a year before the offering.  It is not the strategic plan or strategic initiative that the Off
then currently existing at the time of the bond offering.

conclusive evidence that the strategic plan claimed by the Official Statement really existed.

TheThe CourThe Court must take the allegations of the Complaint as true.  If no plan existed, bThe Co

CollegeCollege represented the existence of such a plan to get investors to fund unachievable objectives,

thethe Official Statement contained a material falsehood.[27]  Further,  Further, the f  Further, the false represen

existenceexistence of a fictional planexistence of a fictional plan leadsexistence of a fictional plan leads to a stron

plan in a document designed to raise money intended to deceive the potential investors.

F.     Defendants Defendants  Disclosure That Bradford Would Contribute $1 MiDefendants  Dis
RenovationRenovation ProjectRenovation Project When It Had No Intention of Making Such a C
False, Misleading and Intentional

TheThe final material misrepresentation alleged by the Plaintiffs are the statements onThe final material n

ofof the Officialof the Official Statement that the dormitory construction and renovation project will be paid forof

thethe bond proceeds and an equity contribution of $1 million from Bradford. the bond proceeds and an equity cont

AlthoughAlthough Bradford s commitment is not conditioned in the Official Statement,[28] minutes o  minutes o

BoardBoard of TBoard of Trustees demoBoard of Trustees demonstrate that the Trustees had no intention to m

behalfbehalf of the College.  The Financebehalf of the College.  The Finance and Building and Groundsbehalf of

ofof Trustees, composed of 11 of the individual defendants, recognizedof Trustees, composed of 11 of the individ

bebe insufficient to pay the full costs of the renovation, but refused to be insufficient to pay the full costs of th

---

[27]     FurtherFurther evidence of the lack of a plan, notFurther evidence of the lack of a plan, not currently included in the con
byby an amendment, is the fact that the budget cuts being considered byby an amendment, is the fact that the budget cuts being considere
DefendantsDefendants at the time of the Offering directly contradictedDefendants at the time of the Offering directly contradicted theDe
The cuts being consideredThe cuts being considered (and ultimately adopted) included cuts to the admissions andThe cuts being consi
thethe officers and trustees knew would hinder the ability to meet their enrollment targets, fthe officers and trustees knew would hind
Statement stated would be hired,Statement stated would be hired, and student services which the Official Statement claimed the Colleg
improve.improve.  Indeed, while the Official Statement discloses planned growth and expansion, theimprove.  Indeed, while the Official S
that would make it impossible to recruit the students or carry out the programs necessary to pay the bond debt.

[28]     OnOn page 10, the OfficialOn page 10, the Official Statement states thatOn page 10, the Official Statement states tha
toto build and renovate campus buildings.   A table on theto build and renovate campus buildings.   A table on the same page informs
million. AC, ¶ 46.

make up the difference.  Instead, the committee

added) be made to reduce construction costs so added) be

If a contribution had to be made, Bradford would only do so at the end

The Official Statement did not disclose the conditional an

contribution.

Defendants  primary defense to this claim is

the meeting minutes do not support the allegatio

contribution.  But the minutes are clear.  *Every effort* is to be used so

to make the contribution.  Only if it absolutely must,

the end of the project.  The primary thrust of the committees  conclusion is that if

project will be built solely using the bondholders  money.  The meeting minutes, which

verbatim in the Amended Complaint, AC, ¶ 65, support the allegation.[29]

Defendants also claim that by May 1998 the Trustees had changed their position and decided

to make the contribution.  But there are no facts in the Amended Complaint to support such

assertion.  Nor do Defendants present any documents

to Plaintiffs  knowledge, the meeting minutes referenced in paragraph

Board prior to the Bond issuance.  Defendants  desire to have the Court dismiss this

their uncorroborated assumption that the Board must have changed its mind flies

requirement that the Court must decide the motion to dismiss on the

the reasonable inferences that can be drawn in the Plaintiffs  favor.

Plaintiffs  do not devote any paragraphs of the

---

[29]    In fact, Bradford never made the contribution.  This fact is not in t

inserted in an amended pleading.

materialitymateriality materiality of tmateriality of the misrepresentation.   Yet materiality is obvious.   In

representationrepresentation that therepresentation that the borrower will make a sizeable equity contribution, in

isis clearlyis clearly material.  Such a contribution insures the bondholders that it isis clearly material.  Such a con

isis at risk, and that the project has value to the borrower as well.  Further, the amount of an equity

contributioncontribution is directly relevant to the valuecontribution is directly relevant to the value of property the

considerationconsideration if the bconsideration if the bondholders are nconsideration if the bondholders are r

borrowerborrower to obtain repayment, as, of course, occurred in this case.  To the extent Plaintiffs' failure

to explain materiality is a pleading defect, this defect can easily be cured by amendment.

ScienterScienter is not an obstacle to this cScienter is not an obstacle to this claim.  At Scienter is no

OfficialOfficial Statement and the underwriteOfficial Statement and the underwriter would Official Statement a

thatthat Bradford had in fact authorized thethat Bradford had in fact authorized the bond issuance.  Thethat Bradfor

makemake an equity contribution unless there was no other choice would have been reviewed at the same

timetime and both the authorstime and both the authors and the underwriter would have known that thetime and bo

anan equity contribution.  Nonetheless, they did not correct or modify the disclosures in the Official

Statement.Statement.  Ignoring the black and white mandateStatement.  Ignoring the black and white mandate of the

scienter.

G.    PlaintiffsPlaintiffs Have Met The Minimal BurdPlaintiffs Have Met The Minimal Burden P
      Adequately

Although a Rule 10b-5 complaint mustAlthough a Rule 10b-5 complaint must allegeAlthough a Rule 10

isis not subject tois not subject to the heightened pleading standards for allegations of misrepresentationis not subje

CrowellCrowell v. Ionics, Inc., 243 F. Supp. 2d., 243 F. Supp. 2d 1, 22 (D. Mass.., 243 F. Supp. 2d 1, 22 (D. Mass.

v.v. Broudo, Docket No. _____, slip op. at 10 (April 19, 2005 ) ( Dura PharmaceuticalDura Pharmace

(causation(causation  pleading rules are not meant to impose(causation   pleading rules are not meant to impose a g

40

isis the is the causis the causal connection between a material misrepresentation and the alleged loss.

Pharmaceutical at 6.  The common law principles of proximate causation are applied to determine

whetherwhether lowhether loss causwhether loss causation has been properly alleged.   Dura Pharmaceuti

RestatementRestatement (Second) of Torts, treatises on Tort law and Massachusetts commonRestatement (Secon

be examined to determine elements of loss causation).

AlthoughAlthough DuraDura Pharmaceuticals, the recent Supreme Court decision on securities, the recent

causation,causation, does notcausation, does not provide much guidance on the necessary nexuscausation, does not

lossloss and loss and thloss and the alleged misrepresentations,[30] courts have required  that the subject of the fr

statementstatement or omission was the cause of the actual lossstatement or omission was the cause of the actual los

F.3dF.3d 161, 173 F.3d 161, 173 (2$^{nnd}$ Cir. 2005) citing Suez Equity Investors, L.P. v. Toronto-Dominion Bank

F.3dF.3d 87, 95 (2nd Cir. 2001).  Stated another way, Cir. 2001).  Stated another way, the loss must be foreseeabl

causedcaused by the materialization of the concealed risk.   Lentell, 396 F.3, 396 F.3d at 173.   Such , 396 F.3d a

mademade when a jury could findmade when a jury could find that by failing to disclose materialmade when a jury c

thethe very risk to which plaintiff fellthe very risk to which plaintiff fell victim.  Castellano v. YoungCastellano v.

Cir.Cir. 2001).  Or, asCir. 2001).  Or, as Judge Mazzone stated in MillerMiller v. New America High Income Fund,

1099,1099, 1108 (D. Mass. 1991) the Plaintiffs  must allege that they1099, 1108 (D. Mass. 1991) the Plaintiffs  m

materializedmaterialized were the risks of which they were unaware as a result of defendants  misleading

statements.

Here,Here, Plaintiffs allegeHere, Plaintiffs allege that the very risks they contend defendants concealed    th

discloseddisclosed disclosed expected enrollment in the fall 1998 , AC ¶ 68; the ballooning financial aid awards

---

[30]     DuraDura Pharmaceuticals merely holds that a simple allegation of a pur merely holds that a simple allegation of a p

sufficientsufficient pleading of loss causation.  Slip op. at 7-9.  The Court expressly declined tosufficient pleading of loss causation.  Sli

or loss-related questions.  Id. at 9.

tuitiontuition discounting,tuition discounting, AC, ¶¶tuition discounting, AC, ¶¶ 70, 75; the historic level of stude

ofof a strategic plan, ¶ 74    led to the financial crises that caused theof a strategic plan, ¶ 74    led to the financial c

andand defaultand default on the bonds.  AC, ¶¶ 74-76.  As a result of that default, the principal amounan def

bondsbonds remains unpaid. AC, bonds remains unpaid. AC, ¶ 78.  bonds remains unpaid. AC, ¶ 78.  Plaintif

losseslosses are caused by the materializalosses are caused by the materialization of the losses are caused b

concealedconcealed in theconcealed in the Official Statement.concealed in the Official Statement.  Moreover, it is

result in an inability to pay the bonds.

Defendants contend that the allegations in theDefendants contend that the allegations in the Amended Co

pleadingpleading thpleading thatpleading that the Plaintiffs  losses were caused, as a matter of law, by other

adequatelyadequately warned about in the Official Statement.  By ignoring the allegations of the Amended

ComplaintComplaint cited in thepreceding paragraph, and relying on those allegations favored by Defendants,

thethe the Court would violate a cardinal rule of Rule 12(b)(6) jurisprudence, that all allegationthe Court woul

ComplaintComplaint must be viewed in theComplaint must be viewed in the light most favorableComplaint must

SecuritiesSecurities LiSecurities LitSecurities Litigation, 224 F. Supp. 2d 319, 338 (D. Mass. 2002)(although ot

complaintcomplaint were possible, loss causation adequately alleged when all inferences drawn in plaintiffs

favor).

NorNor can defendants rely upon allegationsNor can defendants rely upon allegations relevant to theNor c

countcount to attempt to dismiss the 1934 Act claims.  Rule 8(e)(2) permits the Pcount to attempt to dismi

alternativealternative theories of liability and suchalternative theories of liability and such claims do not have to b

a causation allegationa causation allegation related to one theory of liability cannot be used as ana causation alle

anan aan an alternian alternative count.  Rodriguez-Suris v. Montesinos, 123 F.3d 10, 20-21 (1st Cir. 1997).  Th

merelymerely because plaintiffs alleged in their breach of fiduciary dutymerely because plaintiffs alleged in their

the failure of the Bradford Defendants to close the Colleg[e]

enrollment in fall 1998, AC, ¶ 72, or that the fa[…]enroll[…]

assured that the College could never recruit sufficient students t[o]

¶¶ 71, does not mean that these events were[…]

misrepresentations in the Official Statemen[t]

Moreover, a defense that the plaintiffs' losses were caused by some intervening event other that the

alleged misrepresentations indisputably [raises] a

12(b)(6) motion to dismiss. Emergent Capital Investment Managem[ent,]

Inc., 343 F. 3d 189, 197 (2nd Cir. 2003); Swack v. Credit Suisse First Boston, 2004 WL 2203482 *12[…]

(D. Mass 2004)(Woodcock, J.).

Defendants' argument that Plaintiffs lo[sses were Def…]

knowledgeable is also unavailing. Once again De[fendants…]

were the basis of their 'bespeaks caution' defense.

---

[31]    Even if the inconsistent allegations related to the breach of [… in] evaluating whether causation had been adequately alleged, the Court would have to deny the Defendan[ts]. First, the Amended Complaint does not allege that these two events were the *sole* cause of Plaintiffs' damage. While these events may have harmed the plaintiffs, these allegations do not require a finding that the misrepre[sentations were] not a material factor in causing Plaintiffs' damages. The damage caused[…] is completely consistent with Plaintiffs' claim that the misrepresentations caused their investments[… The] budget crisis was directly caused by the lower than pre[…] and the historic attrition problems, all of which Defendants knew[…] Statement. These undisclosed events caused the College to make additional cuts that destroy[ed] their financial goals, a completely foreseeable event given the looming financial bad news Defendants failed to[…] in May 1998.

The allegations here must be contrasted with the facts in MilleM[…] Supp. 1099, 1108 (D. Mass. 1991), the case relied upon by the Defendants. There, t[…] that their losses were not caused by the subject of the misrepresentations. The alleged[…] defendants, managers of a junk bond fund, would only invest in[…] management tactics. Had plaintiffs allege[d…] bonds promised, Judge Mazzone found the complaint would ha[ve…] admitted the losses were caused solely by the collapse of admitted the losses[…] analogous concession for example, that Bradford[…] to fail would the Court be justified in dismissing on loss causation grounds at this stage.

43

achieachieveachieve its desired objectives fails to sufficiently warn investors that there are present fachive

known(orknown(or recklknown(or recklessly iknown(or recklessly ignored) by Defendants that strongly indica

werewere not going to be met.  See RodiRodi v. Southern New England School of Law, 389 F. 3d 5, 15 (1st

Cir.Cir. 2004), discussed in detail at 80,Cir. 2004), discussed in detail at 80, infra.  I  If Defendants  arg

ddisclaimerdisclaimer that an investment involves risk and the investor might lose his invesdisclaimer that a

immunizeimmunize all transactions from liabilityimmunize all transactions from liability on loss causation grounds

thethe fraud, the investor was warned about the very contingency which occurred, the lthe fraud, the investo

investment.

H.    PlaintiffsPlaintiffs Can Sufficiently Tie All of the Defendants To Violations of thePlaintiffs Can S

AllAll Defendants allege that even All Defendants allege that even if PlaintAll Defendants allege that e

againstagainst Bradford, who is notagainst Bradford, who is not a party in against Bradford, who is not a

demonstratedemonstrate that the persons the Plaintiffs have sued have violated the securities laws.  Tdemonstra

threethree categories of Defendants againstthree categories of Defendants against whomthe Plaintiffs have alleged

underwriter,underwriter, Advest;underwriter, Advest; the Officer Defendants, and the Trusteeunderwriter, Advest;

claims against each of them in turn.

1.    AdvestAdvest was reckless in failing to confirm easily accessible infoAdvest was re
       relevant to the bond offering

AdvAdvestAdvest concedes, as it must, that as the underwriter for the bond offering it had a dAdvest co

performperform a reasonable investigation.perform a reasonable investigation.  Glassman v. Computervision Cor

1996).1996).  This is particularly true for1996).  This is particularly true for 1996.  This is particularly true

exemptexempt from the registration requirements, but the SEC has exempt from the registration requir

underwritersunderwriters to provide accurate disclosures underwriters to provide accurate disclosures to prospe

1717 CFR §240.15c2-12.  Where an underwriter s conduct constitutes a sufficiently extremedeparture

44

from the standards of the profession, scienter is established.  SEC v. Dain Rauscher, Inc., 254 F.

852, 859 (9th Cir. 2001).

The First Circuit has identified at least two components

investigation.  First, the underwriter must continue to investigate the issuing entity

of the offering.  Glassman, 90 F.3d at , 90 F.3d at 628.  Second, the underwriter cannot rely solely

representations of management where it is possi

of the Complaint make it plain that Advest failed both of these duties.

Here, plaintiffs have alleged that material out of d

Official Statement, particularly the obsolete financial aid data and the predictions from outdated

budgets.  AC, ¶¶ 56, 57, 62, 63. It can reasonably be inferred that A

determine whether updated information w

Advest plainly knew that the College possessed actual data

financial aid spending for the almost completed school y

which would have contained the latest financial

among Bradford Officers and Trustees at the time the bond offering was in its final stages.[32]

It is also clear from the Complaint s allegations that Adv

projections contained in the Official Statement.  The true status of the College s enrollment

prospects for the next year we

The most recent report would have verified the selective disclosure relating to

_____

[32]     The Official Statement, at A-17, states that a revised budget for the up
Trustees and the Finance Committee in May.

[33]     To the extent this fact is not currently i
pleading.

45

updatedupdated budgupdated budgets wupdated budgets were also readily available from Defendants Kiszka

Trustees.Trustees.  TheTrustees.  The February 1998 Trustees minutes, which Advest would have reviewed to in

thethe bond offering had been authorized, would have let Advest know that thethe bond offering had been authoriz

toto make ato make a $1 million equity contribution, andto make a $1 million equity contribution, and a review of

revealerevealedrevealed the depth of the financial crisis, including Kiszka s accurate prediction that the Collrev

couldcould only survivecould only survive for tcould only survive for two or three more years, and the extent o

AA simple request to reviewA simple request to review the A simple request to review the Strategic Initia

Statement,Statement, or the  newStatement, or the  new meStatement, or the  new methodology  that allegedly

determined that these programs and plans did not exist.  It is impossibledetermined that these programs and plan

whowho waswho was actuallywho was actually attempting to verify the statements in the Official Statement would

these discoveries.

TheThe ease with which the truth could have been determined bThe ease with which the truth could ha

sufficientsufficient to infer sufficient recklessness onsufficient to infer sufficient recklessness on the part of an und

toto question and investigate.  However, thereto question and investigate.  However, there are additionalto questio

CourtCourt does not believe these are sufficient facts are alleged in the Amended Complaint.  Court does not

includeinclude thatinclude that Advest only visited the College twice, that it neverinclude that Advest only visit

projectionsprojections provided by Bradford, that it never requested contingency plansprojections provided by Bra

thatthat it acceptedthat it accepted projectithat it accepted projections with facially unreasonable assumptions an

obsoleteobsolete budget data provided byobsolete budget data provided by Bradfordobsolete budget data provi

updateupdate the information.  Ifupdate the information.  If the current allegations are insufficient, Plaintiffsupda

to further describe Advest s reckless conduct.

AdvestAdvest also contendsAdvest also contends that it cAdvest also contends that it cannot be held

46

because it was not the author of the false and misleading statements in the Official Statement, but

onlyonly had review and approval responsibilities.  Relying on <u>Central Bank of DenCentral Bank of Denver</u>

<u>InterstateInterstate Bank of Denver, N.A.,</u> 511 U.S.  511 U.S. 164 (1994) it 511 U.S. 164 (1994) it contends o

mademade the alleged misrepresentations can be found liable under Section 10(b).  Homade the alleged misre

<u>Bank</u> does not always shield underwriters from primary does not always shield underwriters from primary liability.

2d2d 330, 341 (D.2d 330, 341 (D. Mass. 2005).2d 330, 341 (D. Mass. 2005).    Primary liability may be impose

fraudulentfraudulent misrepresentations but also onfraudulent misrepresentations but also on those who had know

perpetration.  perpetration.    <u>SEC v. First Jersey Securities, Inc</u>, 101 F.3d 1450, 1471 (2nd Cir. 1996) quoting

<u>Azreilli v. Cohen Law Offices</u>, 21 F.3d 512, 517 (2nd Cir. 1994).

InIn evaluating Advest sIn evaluating Advest s roleIn evaluating Advest s role in the fraud at issue, the C

thethe underwriter plays in municipal bond offerings.  As willthe underwriter plays in municipal bond offerings.

II.A.1II.A.1 <u>infra</u>, the issuers and beneficiaries of municipal bond offering, the issuers and beneficiaries of mun

registration,registration, particularly when the offering is made for the bregistration, particularly when the offer

non-profitnon-profit entity.  15 U.S.C. §§ 77c(a)(2) and (4).  To insure that investors do receive accurate

disclosudisclosuresdisclosures regarding the relevant entities in a municipal bond offering, the SEC has passedis

15c2-12,15c2-12, 15 CFR15c2-12, 15 CFR §240.15c2-12, which places primary responsibility for the distribution1

andand operating information material to the evaluation of the offeringand operating information material to the o

Rule,Rule, a securities dealer cannot underwrite or even recommend a municipal security unless it has

reviewedreviewed the offering s official statement, taken responsibility for distributingreviewed the offering s o

purchaserspurchasers and potentialpurchasers and potential purchasers of the bonds, and insuredpurchasers and p

thethe bond othe bond offering will be available through municipal security information repositories.  15 CI

§240.15c2-12b§240.15c2-12b and c.  The SEC also requires the§240.15c2-12b and c.  The SEC also requires the un

47

ofof the key representations made by an issuer in thof the key representations made by an issuer in the Offic

Responsibilities,Responsibilities, Securities Exchange Act Release No. 26100, § III, 53 C.F.R. 37778 (Sept. 2

1988)

InIn its official InterpretaIn its official Interpretation of aIn its official Interpretation of an underw

municipalmunicipal securitymunicipal security offering, which the SEC promulgated at the same time it proposed

thethe SEC hasthe SEC has emphasized the  vital position  the underwriter plays in such offering. the SEC has emp

regardregard to negotiated municipal offerings, such as the one involved in this case, theregard to negotiated mun

thatthat the underwriter will be  involved in the preparation of thethat the underwriter will be  involved in the pre

thethe underwriterthe underwriter must review a near complete draft of the official statement beforethe underwrit

offering,offering, the offering, the SEC expoffering, the SEC expects it will often influence the content of

committingcommitting to an offering.  Municipal Underwriter Responsibcommitting to an offering.  Munic

ReleaseRelease No. 26100, § III, 53 CFR 37778, 37789-90 (Sept. 28, 1988Release No. 26100, § III, 53 CF

expectationsexpectations have beexpectations have been proven expectations have been proven correct, the und

documents,documents, including the disclosures.  See e.g. SEC v. Dain Rauscher, Inc., 254 F.3d 852, 854 (9th

Cir. 2001).

WhileWhile it iWhile it is possibleWhile it is possible for the plaintiffs to conduct pre-discovery investig

whetherwhether misreprewhether misresenwhether misrepresentations have been made in an offering docum

actualactuallyactually actually draftedactually drafted actually drafted whatactually drafted whatactually drafted wh

onlyonly to Advest and the individual defendants who sionly to Advest and the individual defendants who sig

determinesdetermines that theredetermines that there are not sufficient allegations to determine whether thedeterm

held liable as a primaryheld liable as a primary violator, it should allow the Plaintiffsheld liable as a primary vio

48

before it dismisses these claims against Advest with prejudice[34].

_____

[34]     SuchSuch discovery will not defeat tSuch discovery will not defeat the purSuch discovery will not defeat the pur 4(b)(3)(B)4(b)(3)(B) because Plaintiffs4(b)(3)(B) because Plaintiffs have demonstrated that they have a meritorious securities fraud4(b)( requestedrequested discovery is not torequested discovery is not to determine if thererequested discovery is not to determine if there is a v AdvestAdvest willAdvest will still remain in the actionAdvest will still remain in the action under Plaintiffs  Section 12 claims, Uniform Se representationrepresentation and 93A claims,representation and 93A claims, see Section II and III, _infra_, granting Plaintiffs discovery o aa party who would otherwise be exempt from discovery demands of this action.  Plaintiffs will be entitled to the same discoverydiscovery to defediscovery to defend against Adiscovery to defend against Advest s  due diligence  and  reasonable efforts claims.

2.    PlaintiffsPlaintiffs Have Stated Causes ofPlaintiffs Have Stated Causes of ActioPlaintiff
Officer Defendants

TheThe Bradford Defendants do not contest the Plaintiffs  ability to tie the Officer Defendants,

ShortShort andShort and KiszShort and Kiszka, to the misrepresentations and omissions in the Official Stateme

Short,Short, after all, signed the appendix to theShort, after all, signed the appendix to the Official Statement con

TheThe BradfordThe Bradford Defendants, however, do contest whether Plaintiffs have sufficiently allegedThe B

with regard to these individuals.

AsAs the As the As the two senior ofAs the two senior officers of the College, Short and Kiszka, had acc

recreceivedreceived threceived the reports and data which contradicted the Official Statement s projections re

enrollmentenrollment and fienrollment and financial aid.enrollment and financial aid.  AC, ¶ 34.[35]  Kiszka, a

initiatedinitiated and circulatedthe budgetsinitiated and circulatedthe budgets that contradicted the financialinitia

werewere circulated to the President. AC, ¶were circulated to the President. AC, ¶ 57.  Kiszka also hadwere circu

datadata that belied the Official Statement s predictions regarding the currentdata that belied the Official S

predictions.predictions.  Similarly, the admissions data that predictions.  Similarly, the admissions data that contradi

routinelyroutinely generated by the school s admissions officroutinely generated by the school s admissions of

to the President and the CFO.

TheThe PresidentThe President and CFOThe President and CFO would also know whether or not a studen

Bradford.Bradford.  Indeed,Bradford.  Indeed, the dire situation was disclosed inBradford.  Indeed, the dire situati

himself was the onehimself was the one who predicted only two to three more years for thehimself was the one v

wouldwould have both known of the non-existence of the financial aid reductionwould have both known of the

strastrategicstrategic plan.  With regard to the Board decision to use all efforts to avoid makingstrategic plan

---

[35]    ToTo thTo the extent such allegations pled w ith sufficient specificity  in the current complaint, tTo the extent such a
detailed by an amended pleading.

contrcontribution,contribution, Short attended the meeting where this policy was decided.  AC, ¶ 65.  Although

allegedalleged in the Amended Complaint, the minutes of the Board Comalleged in the Amended Complain

BradfordBradford Defendants have attached as ExhibitBradford Defendants have attached as Exhibit 2 to their sup

was also present and made the financial presentation to the Committee members.[36]

InIn short, the Plaintiffs haveIn short, the Plaintiffs have alleged, or can easily amend to allege, that Short a

knowledgeknowledge ofknowledge of all of the material factsknowledge of all of the material facts that were eithe

theythey signed the Bradford appendix contained withithey signed the Bradford appendix contained within the

failedfailed to check the records and information they possefailed to check the records and information t

misrepresentedmisrepresented tmisrepresented them.  misrepresented them.  Combined with the other circum

describeddescribed above, these facts are sufficientdescribed above, these facts are sufficient to raise a strong infe

two defendants.

       3.     TheThe Trustee Defendants May Be FounThe Trustee Defendants May Be Found
             Bradford

TheThe Bradford DefendantsThe Bradford Defendants correctly state that the Plaintiffs have not pled sp

connectconnect any of the Trustee Defendants  to tconnect any of the Trustee Defendants  to the misrepresc

Statement[37]..  Although.  Although many of the Trustees had knowledge regarding the contested.  Although m

TrusteesTrustees did not sign the Official Statement, and without discoveryTrustees did not sign the Official Staten

allege the roles the individual Trustee Defendants had in drafting, preparing and approving it.

The Trustee Defendants, however, are stillThe Trustee Defendants, however, are still liable to the Plainti

_____

[36]     Kiszka,Kiszka, in fact, appears to have drafted the minutes of the Committee meetings, sinceKiszka, in fact, appears to
at the bottom of the document.

[37]     Plaintiffs doPlaintiffs do not consider Defendant Short to be a TrusteePlaintiffs do not consider Defendant Short to b
satsat sat on the board of trustees, he was also the President.  He signed the disclosure and most certainly can sat on the board o
responsible for its contents.

§§ 20(a). To establish a §20(a) claim, a plaintiff§ 20(a). To establish a §20(a) claim, a plaintiff must§ 2

controlledcontrolled person or entity; and (2) that a defendant controlled the violator.controlled person or entity;

85; GarveyGarvey v Arkoosh, 354 F., 354 F. Supp. 2d 73, 85 (2005). The Complaint clearly depicts Rule 10b-5

violationsviolations by Bradford, the entity the Trustee Defviolations by Bradford, the entity the Trustee De

BradfordBradford has filed for bankruptcy and is not a party to action is immaterial. SeBradford has file

WorldComWorldCom Inc. Securities Litigation, 294 F. Supp. 2d 392, 419-20 (S, 294 F. Supp. 2d 392, 419-20 (S.D.N

§§ 20(a) claim§ 20(a) claim against Director§ 20(a) claim against Director Defendants based on their control of Wo

that WorldCom was not a defendant in action.) .

TheThe Bradford Defendants also allege tThe Bradford Defendants also allege that the PThe Bradford

controlcontrol over Bradford. The Bradford Defendants forget, however, tcontrol over Bradford. The Bradfor

pleadingpleading standards do no apply to § 20 claims. In reIn re WorldCom Inc. SecuritiesIn re WorldCom Inc

Supp. 2d at 415-16. Liability under § 20 is notSupp. 2d at 415-16. Liability under § 20 is not premised on the d

statementstatement or material omission, orstatement or material omission, or having acted with a particular state

oooor 15 U.Sor 15 U.S.C. § 78u-4(b) apply. Moreover, the First Circuit has recognized that (c)ontrol is a

questionquestion of factquestion of fact that will not ordinarily be resolvedquestion of fact that will not ordinarily be

F.3dF.3d 11, 41 (1st Cir. 2003). Accordingly, Plaintiffs control claims again Cir. 2003). Accordingly, Plaintiffs

survivesurvive if the Amended Complaint alleges that theysurvive if the Amended Complaint alleges that they ex

with Rule 8(a). The Amended Complaint meets this showing.

TheThe Amended Complaint states (as does the OfficialThe Amended Complaint states (as does the Officia

byby the Trusteeby the Trustee Defendants. AC, ¶ 40.by the Trustee Defendants. AC, ¶ 40. It also alleges that the

thethe management and activities ofthe management and activities of the College, AC, ¶ 37,the management and ac

52

diddid indeed direct the management of Bradford.[38]   It further state   It further states    It further states that

drafting,drafting, prepdrafting, preparation drafting, preparation and/or approval of the Official Statement and

disregardeddisregarded the misrepresentations and material omissions contaidisregarded the misrepresentations

allegatioallegationsallegations constitutallegations constitute a short, plain statement that the Board had the a

exerciseexercise control over the College, including the activities thatexercise control over the College, including

this stage of the proceeding, that is all that is required.[39]

## II.    PLAINTIFFSPLAINTIFFS HAVE STATED A CLAIM AGAINST ADVEST UNDER SECTION 12 OF THE SECURITIES ACT OF 1933.

### A.    PlainPlaintiffPlaintiffs Plaintiffs  Interest In Bradford s Contract To Repay The Bond Debt Is A Security That Is Not Exempt From The Antifraud Provisions of the 1933 Act.

#### 1.    TheThe agreement of a beneficiaryThe agreement of a beneficiary of conduit financingThe aa municipal bond offeringa municipal bond offering is a separate security which may be su antifraud provisions of the 1933 Act.

CountCount Count IIICount III, which Plaintiffs have brought against Advest alone, alleges that Advest sold

toto them tto them through the use of a prospectus that contained untrue statements of material fact ato the

materialmaterial material omissions in violation of § 12(a)(2) of the 1933 Act, 15 U.S.C. §77l(a)(2).   Advest

principrincipalprincipal defeprincipal defense is that the bond offering was exempt from Section 12.   Exempt

securitiessecurities lsecurities laws are nasecurities laws are narrowly construed and Advest bears the burden

Tcherepnin v. Knight, 389 U.S. 332, 336 (1967); S.E.C. v. Ralston Purina Co., 346 U.S., 346 U.S. 119, 126

(1953)

---

[38]  See   See e.g. ¶¶ 47,  See e.g. ¶¶ 47, 51  (attempting to engage in financial planning), ¶ 50 (approving dormitory construc project),project), ¶¶ 57, 69 (reviewingproject),¶¶ 57, 69 (reviewing and approving Bradford s budget), ¶ 65 (deciding to not make aprojec renovationrenovation project), ¶ 72 (deciding to continue with renovation project), ¶ 72 (deciding to continue with renovations and to ex 73 (refusing to liquidate Bradford regardless of bleak financial future).

[39]     ThereThere can be no doubt that PlaintiffsThere can be no doubt that Plaintiffs have allegedThere can be no doubt t OfficerOfficer Defendants, who areOfficer Defendants, who are plainly alleged to have had andOfficer Defendants, who are plainly alleg

SectionSection 3(a)Section 3(a) of the 1933 Act exempts several categoriesSection 3(a) of the 1933 Act exe

ofof the Act s provisions.of the Act s provisions. Pursuant to subsection (4), any security issued by a personof th

operatedoperated exclusively for reloperated exclusively for relioperated exclusively for religious, educationa

purposespurposes and not for pecuniarypurposes and not for pecuniary profit is exempt. The subsectionpurpose

fromfrom the registration requirementsfrom the registration requirements of tfrom the registration requiremen

coverscovers all securities covers all securities whether or covers all securities whether or not exempted , ex

andand (14) of §3(a). Only if the Bradford bonds qualify under these later exclusions is Advesand (14) of §3(a

from Section 12 liability.

AdvestAdvest contends that because the formal issuer of the bonds Advest contends that because the formal i

FinanceFinance Agency, a body politic of the Commonwealth, the bonds are exempt under the provision

forfor governmental issuers, subsection (2). But neither MIFA or any other division of the

CommonwealthCommonwealth had any obligationCommonwealth had any obligation to makeCommonwealth h

thethe obligation of Bradford. Thisthe obligation of Bradford. This type of municipal bond financing isthe oblig

becausebecause the state entity issuing the bonds is merelybecause the state entity issuing the bonds is merely a con

andand the resources and credit of the state or municipality do not stand behind the financingand the resource

generally,, United States v. Massachusetts Industrial Finance Agency, 910 F.Supp. 21,, 910 F.Supp. 21, 24 (D. Ma

1996).

IfIf the pIf the priIf the private parties who are the beneficiaries of conduit financing are exempt from

registrationregistration and antifraud provisions of the securiregistration and antifraud provisions of the secu

§3(a)(2),§3(a)(2), substantial danger exists for investors. The SEC recognized the potential for abuse as far

backback as 1968, when it promulgated Rule 131, 15 CFR §back as 1968, when it promulgated Rule 131, 15 CFR

itsits position that more than one security is offered its position that more than one security is offered and i

the underlying agreement by the private entity that received the proceeds of a conduit financing to

repay those monies was a separate security distinct from the

Recognizing that the typical conduit financing arrangement represents a financing

company, it analyzed the situation as follows:

> The municipality of other governmental units usual
> obligation under the bond, except to the
> received from the private company to the
> The investor cannot look to the municipality for interest payments or
> repayment of the principal; he can only
> failure of the private company. The municipality serves as a
> which the amount
> private company to the bondholder. <u>In these circumstances, the investor is
> offered an interest in an oblig
> security within the meaning of the securiti
> benefit of the disclosures require
> Securities Exchange Act of 1934 when applicable.</u>  (emphasis added)

Industrial Revenue Bonds, Notice of Proposed Rulemaking, 33 FR 3

Comm., February 16, 1968).  The SEC has also recognized that there are two issuers in co

financings, the official government entity and the

e.g. 15 CFR 240.15c2-12(f)(4)( issuer of municipal securities  defined as  governmental

specified in section 3(a)(29) of the Act and the issuer of any separate se

follows that if the  separate security  is no

involved in the offering must meet the requirements of the Act.

of Proposed Rulemaking, 33 FR at 3142-43.

Courts, commentators and even Congress have accept

Act regarding the existence of two securities in conduit financing transactions.  See, <u>McCay v. Juran</u>

<u>& Moody</u> 1998 WL 1780694 *5 (D. N.D.,1998) (finding a separate non-exempt security in a

financingfinancing for purposes of North Dakota Bfinancing for purposes of North Dakota Blue Sky lawsfinan

Regulation,, sec. 4.3[A][1] (, sec. 4.3[A][1] (5th e, sec. 4.3[A][1] (5th ed., 2005); Louis Loss and Joel S

SecuritiesSecurities Regulation, pp. 268-72 (3d ed. 1995).  The most concrete, pp. 268-72 (3d ed. 1995).  The mos

aa separate securitya separate security in conduit financing is the action taken by Congress when it decided, agains

SEC sSEC s wishes, to not require registration of many ofSEC s wishes, to not require registration of many of the b

InsteadInstead of amending the§ 2(1) definition of  security  to clarifyInstead of amending the§ 2(1) definition of

oror were or were not  securor were not  securities  under the 1933 Act,[40] in 1970 it expanded the exemption u

specificallyspecifically exempting  any security which is an industrial development bond  that bears interest

thatthat is excludable from gross income under spethat is excludable from gross income under specithat is exc

Code.  See Pub.L. 91-373, Title IV, §401(a).[41]

PlaiPlainly,Plainly, if Congress intended alPlainly, if Congress intended all securities issued b

automataautomaticallyautomatically exempt from the 1933 Act, it would not have amended the statute to speci

exemptexempt cerexempt certain types of conduit financing issues; the existing form of the statute would e

providedprovided suchprovided such an exemption.  Congress  action implicitly recognizes that someprovided su

sesecuritiessecurities are not exempt, even when a body politic of a state has formally issued the ssecurities a

FurtFurther,Further, there must be some significance that Congress did not exempt all types of tax-exempFur

municipalmunicipal securities permitted by the tax code, but omunicipal securities permitted by the tax code, b

bonds.

AdvestAdvest contendsAdvest contends that only those types of conduit financings directly within the scop

---

[40]    ContrastContrast Pub.L. 10Contrast Pub.L. 105 -5Contrast Pub.L. 105-554 § 1(a)(5) which deleted non-security b definitiondefinition of  security  in Securities Exchange Act of 1934 through thdefinition of  security  in Securities Exchange CongressionalCongressional action,Congressional action, which was also taken in response to a regulatory position that Congress disapp Congress will clarify the definition of  security  if it believes a regulatory agency has incorrectly interpreted it.

[41]    The actual text of the provision is set forth in footnote 45, infra.

56

131, which is limited to financing for the benefit of an industrial

create separate securities. It asserts that if the Bradford offering did not fall within Rule 131, no non-

exempt separate security exists. Advest misunderst[ands]

its powers. While the SEC has some discretion to define what ty[pe]

it does not have the ability to create a "security". it does no[t]

understands a "security" to exist under the 1933 Act. A under[...]

If a debt instrument falls within the definition, whether the SEC acknowledges it[...]

to the Act's requirements.

Thus, merely because the SEC did not include conduit

entities within the scope of Rule 131 does not mean separate s[...]

revenue bond financings.[42] If separate securities exist in conduit financings

not a state or municipal entity, stands behind the ultimate payment, i[...]

treatment of the offering is determined by the indust[...]

other provisions. There is no reason under the securities laws wh[...]

in one type of conduit financing, but not another.

This is borne out by <u>McKay v. Juran & Moody, Inc.</u> 1998 WL 1780694 *5 (D.

which involved a North Dakota Blue Sky Act claim[43] for failing to register certificates of

participation in lease agreements that defendants sold

---

[42]   There is a reason why the SEC only included industrial re[...]
and not municipal bond conduit financings involving non-profit entities. and not municipal bond con[...]
to require the private entities profiting from industrial revenue bond[...]
Bradford, and other educational, benevolent and non-profit entities, however, are exempt from[...]
§3(a)(4). There is no reason to include them within the scope of Rule §3(a)(4). There is no reason to include th[...]
expanded, such entities, unlike private for profit companies, would be exempt from registration in any event.

[43]   The plaintiff's federal securities claims were dismissed on st[...]
1780694 *3.

issued by North Dakota counties, and defendants, like Advest here, claimed they qualified

statutory exemption for securities issued by a state e

were similar, but distinct, from revenue bonds, and the municipal iss

responsibility for their payment. The District Court examined Rule 131,

of Rule 131 apply in this case, even though the certi

It found that there were two separate securities, one issued by the

party responsible for repayment. Because the later was

exempt.

The same result applies here. The Bradford bonds compr

MIFA, and the second, which contained the College s promise of

Because Bradford is exempt from registration as an educational entity, t

register the Bonds. But because entities qualifying for the subsection (4) exemption

from Section 12, Advest can be held liable for any misstatements in any prospectus pursuant to

which the securities were sold.

> 2.    Neither the structure of exemptions permitted un
> purpose of the governmental issued security ex
> position.

Advest claims that the tax exempt status of bond issua

exemption. While Congress did expand the

development bonds in 1970, there is no doubt that the Br

---

44    Although not expressly stated, the financing would
of the certificates of participation was to fund the construction
Indeed, Rule 131 could not apply under any circumstances since the violation alleged w
North Dakota s securities laws. Rule 131, ev
Nor does it purport to identify what constitutes a "security" under state securities statutes.
to have had a state equivalent of Rule 131.

exemptions parameters,[45] the bonds are not industrial revenue bon their behalf excluded from gross income on account of the specific tax code provisions statute.[46]  Nor can Advest claim Congress intended Congress passed only a narrow exemption in 1970.  If Congress intended to exempt all conduit financings that benefited tax exempt entities such as Bradford, it would have exemption or amended Section 12 so it no longer applied to se (4) and (14) of §3(a), instead of just (2) and (14).  By granting institutions such exemption from registration, Congress clearly did not i institutions enjoy a broad exemption from the antifraud provisions of the 1933 Act.

Advest strongly relies on Judge Zobel s opinion in 7749, Fed.Sec. L. Rep. ¶ 93,173 (D. Mass. 1987) and two other cases In re Bexar County Facility Development Corp. Sec. Litigation, 125 F.R.D. 625 (E.D. Pa. 19 Cambridge Partners, LLC 2003 WL 229921, Fed. Sec. L. Rep. ¶ 92,650.  These cases merely focus on whether the debt instrument at issue fell within Rule 131. whether separate securities exist in the conduit financings regardless of the literal applicability of Rule 131.  Indeed Bexar County purports to require proof that Congress intended t entities of their purported exemption from Section 12 s antifraud provision.  Th

---

[45]     The 1970 amendment to subsection (2) expanded the exemption industrial development bond (as defined in section income under section 103(a)(1) of Title 26 if, by reason of the application of paragraph (4) o Title 26 (determined as if paragraphs (4)(A), (5), and (7) were no such section 103(c) does not apply to such security.

[46]     In any event, it appears that this exemption is no longer available.  When Congres Internal Revenue Code in 1986 it completely overhauled development bonds  no longer exist under the Code, and the specific statutes to qualify for the exemption no longer exist. necessary for qualification of the exemption, Congress must be presumed to have eliminated the exemption.

ignores Congress  clear mandate that charitable and educational entities should only be ex

the 1933 Act s registration provisions because Congress

securities from Section 12.

Finally, the Court must consider whether expa

exemption to cover the types of private entities Congress deliberately chose not t

is consistent with the policies of the federal se

Alloyd Company, 513 U.S. 561, 571 (1995) has already cautioned against interpreting §3(a)(2) to

illogically allow this exemption to be enjoyed by private entities.

> Why would Congress grant immunity to a p
> recission suit for no reason other than that the seller s
> toto relate to securities issued by a government
> The anomaly disappears, however, when the term
> toto documents that offer securities to
> exemption for government-issued securities makes perfect sense on that
> view, for it then becomes a precise and appropriate means of giving
> immunity to governmental authorities.

Permitting the government-issued security ex

underwriters does not serve the precise and ap

it clear that §3(a)(2) is designed to protect true government financings.  Applying the exemption to

a private party Congress did not ori

unnecessarily expands an exemption that is supposed to be construed narrowly to effectuate its

purpose.

B.    Plaintiffs Have Properly Pled The Elements of a Section 12(a)(2) Claim

1.    Rule 9(b) Pleading Standards Do Not Apply To This Count

Fraud is not an element of a Section 12 claim and Plaintiffs are not required to plead fraud or reliance. _Gustafson v. Alloyd Co._ 513 U.S. 561, 582 (1995); Consequently, Rule 9(b) heightened pleading standards do not apply to a Section 12 claim sounds in fraud. Section 12 claims allegations of scienter or reliance. _Shaw_, 82 F.3d at 1223. Nor do claims based on negligence _Number Nine_, 51 F. Supp. 2d at 13.

Here, in contrast to Plaintiff's Rule 10b-5, fraud and negligent Plaintiffs do not allege that they relied on the ¶¶ 92 with AC, ¶¶ 85, 97 and 100. Also, in contrast to their Rule 10b-5 and fraud only allege negligent conduct in Count III as opposed counts.[47] Compare AC, ¶ 90 with AC, ¶¶ 83, 97. Accordingly the Amended Complaint sound in fraud and Rule 8 pleading rules apply to this claim.[48]

2.    Plaintiffs have appropriately pled that

---

[47]    Plaintiffs do alternatively plead that Advest knew about the false statements but such an allegation does not convert their claim into one which sounds in fraud.

Although the complaint does assert that defendants actually possessed the information that they failed to disclose, those allegations cannot be thought to constitute averments of absent any claim of scienter and reliance. Otherwise, any allegation material information would be transformed into a material information 9(b).

_Shaw_, 82 F.3d at 1223. _See also_ _Number Nine_, 51 F. Supp. 2d at 13.

[48]    Advest asserts that because the Plaintiffs are pleading the same misstatements and omissions under their Rule 10b-5 and Section 12 claims, the latter necessarily sound in fraud. However, to conserve judicial and to avoid duplicative actions, the same misrepresentation However, the Plaintiffs may not submit any evidence conduct was done knowingly, intentionally, or with reckless disregard for

materially false statements and misleading material omissions.

AdAdvestAdvest correctly states that the same misrepresentations and omissions that constituAdvest co

Plaintiffs Plaintiffs  Rule 10b-5 claims, are also thePlaintiffs  Rule 10b-5 claims, are also the misstatements and

SectionSection 12 claim.  For the reason set forth in Section I, the PlaiSection 12 claim.  For the reason se

allegationsallegations to state a claim under the most stringent standard.  Consequently, they meeallegations to

rigorousrigorous Rule 8 standardrigorous Rule 8 standard that appliesrigorous Rule 8 standard that applies to this

not need to add anything further.

3.      Plaintiffs have standing as purchasers in the initial offering

PlaintiffsPlaintiffs have alleged that they purchased theirPlaintiffs have alleged that they purchased their

solesole underwriter for the May 1998 public offering. AC, ¶¶ 13, 90. sole underwriter for the May 1998 public o

especiallyespecially from the size of the positions taken by the Institutional Bondholders, that Plaintiffs

purchasedpurchased their holdingspurchased their holdings in the primary offering and not in the secondary mark

isis nois not a reasonable inference, Plaintiffs, all of whom are initial purchasers, can amend their

complaint to repair this technical error.

## III.      PLAINTIFFSPLAINTIFFS HAVEPLAINTIFFS HAVE PLAINTIFFS HAVE STATED
MASSACHUSETTS STATUTORY AND COMMON LAW CLAIMS

TheThe Amended Complaint includes five claims under Massachusetts Law: vThe Amended Complain

UniformUniform Securities Act, M.G.L. c. 110, § 410; violation of Chapter 93A;Uniform Securities Ac

misrepresentation;misrepresentation; and breachmisrepresentation; and breach of fiduciary duty to creditors.mis

fiduciary duty claims, but have stated viable causes of action for the remaining state law counts.

A.    PlaintiffsPlaintiffs Have Stated ClaimsPlaintiffs Have Stated Claims Against All Defendants For V
Securities Act

TheThe Massachusetts version of the Uniform SecuriThe Massachusetts version of the Uniform SecuritiesTh

securitiessecurities ofsecurities offerings isecurities offerings in the Commonwealth, but contains only

misrepresentationsmisrepresentations and omissions, misrepresentations and omissions, § 410.  MMarram v. K

50,50, 809 N.E. 2d 1017, 1025 (2004) ( Marram)  ).  Sec ).  Section 410(a)(2) provides a cause of action

againstagainst any person that offers oragainst any person that offers or sells a security by means of any untrue st

or any omission of a material fact.  Section 410(b) also provides liability for

> EveryEvery person who directly or indirectly controls a seller liablEvery person who di
> subsectionsubsection (a), subsection (a), esubsection (a), every partner, officer, or director of
> personperson occupying a similar status or performiperson occupying a similar status or perfo
> employeeemployee of such a seller who materially aids in the sale, andemployee of such a seller v
> dealerdealer or agent who materially aids in tdealer or agent who materially aids in the saldea
> severally with and to the same extent as the seller. . .

TheThe Amended Complaint alleges that BradfordThe Amended Complaint alleges that Bradford and Advest are

PlaintiffsPlaintiffs seek to hold the Bradford Defendants, as officers, directors and control persons of

Bradford, liable under subsection (b).

1.    TheThe The MaThe Massachusetts Uniform Securities Act Applies To An Offering
Massachusetts Securities

AllAll DefendantsAll Defendants contest the Plaintiffs  standing to bring claims under Ch. 110AAll Defend

thatthat the complaint does not allege where the bonds werethat the complaint does not allege where the bonds we

statute,statute, however, is not correctly stated by the Defendants, statute, however, is not correctly stated by

SectionSection 414(a) statesSection 414(a) states that § 410 applies to persons who sell or offer to sell   whenSecti

isis made in the commonwealth,is made in the commonwealth, or (2) an offer to buy is made andis made in the co

Subsections (c) and (d) elaborate when these conditions have been met.  Subsection (c) states:

> ForFor the purpose of this section, an offeFor the purpose of this section, an offer tFor th

63

commonwealthcommonwealth,commonwealth, wcommonwealth, whether or not either par
commonwealth,commonwealth, whencommonwealth, when the offer (1) originates from thecomm
is directed by theis directed by the offeroris directed by the offeror to the commonwealth and rec
which it is directed. . .

TheThe Amended Complaint specifically alleges thatThe Amended Complaint specifically alleges that Bradford,

statestate offices, offered the securitiesstate offices, offered the securities to the Plaintiffs.state offices, offered th

Bradford sBradford s offerBradford s offer  originated  in the Commonwealth,Bradford s offer  originated  in th

aa security be made in the Commonwealth.  Indeed, it is inconceivable that aa security be made in the Comm

MassachusettsMassachusetts stateMassachusetts state agency on behalf of a Massachusetts educational institution

toto to  orito  originate  in Massachusetts.  Where the Plaintiffs were located and whether Advest sold the

securitiessecurities from theirsecurities from their main office isecurities from their main office in Hartford

specificallyspecifically statesspecifically states that the presence of the buyers or the sellers inspecifically states

offer or sale is unnecessary.

2.    TheThe Bradford Defendants cannot escape liability as theThe Bradford Defendants canno
ofof the entity that issued a misleading Officof the entity that issued a misleading Of
Advest underwrote a firm commitment bond offering.

Section 410(b)  Section 410(b) establishes broad  Section 410(b) establishes broad secondary liability for fi

specifiedspecified relationships with a primaryspecified relationships with a primary violator.  However,specified

seller   seller  for seller  for such liability to  seller  for such liability to arise; the statute does not impose liability

oror broker/dealersor broker/dealers of §410(a)(2) violators who only offer a security.  Relyingor broker/dealers o

authority,authority, the Bradford Defendantsauthority, the Bradford Defendants argue that only Advest, the unde

seller  and, consequently, they must be dismissed.

TheThe Bradford Defendants  argumentThe Bradford Defendants  argument arises out of <u>Pinter v. Dahl</u>,

aa United States Supreme Court decision interpa United States Supreme Court decision interpreting a United S

19331933 Act.  The Court ruled that  sellers  are limited to1933 Act.  The Court ruled that  sellers  are limited t

plaintiff and any other person who successfully solicited the plaintiff's purchase of securi

provided the solicitor was motivated at least in part by a desire

or those of the security owner. <u>Id.</u> The Court specifically rejected an alternativ

seller, adopted by numerous lower courts, that would also hold liable seller, adopted b

a substantial factor in causing the transaction to occur. <u>Id.</u> at 648-51.

In <u>Shaw</u>, the First Circuit examined the effect of <u>Pinter</u> in a firm commitment u

such as the one alleged in the Amended Complaint, in a Section 1

Where the underwriter purchases the entire i

underwriter is the person who has transferred title to the purchaser. Accordin

the issuer and its officers, notwiths

statements in the prospectus, are not liable unless

<u>Id.</u> at 1216. Such solicitation, the Court found, does not occur when the

to it participate in the preparation of the pros

securities offering. <u>Id.</u> There must be factu

survive a Rule 12(b)(6) motion. <u>Id.</u>

The mechanical application of the

as the elevation of form over substance. For no valid reason, an issuer and his officers and dire

can be held liable for Sect

underwriter effectively acts as the issuer's agent but have no liability, despite

for the contents of the prospectus, in a firm commitment underwriting. 3B

Securities and Federal Corporate Law (2d. Ed. 2004), §

this senseless result be carried over to the Uniform Securities Act. But the structure of th

65

Act is significantly different than the 1933 Act, and the purp

unthinking adoption of federal precedent.  Moreover, there is evid

Uniform Act did not intend issuers and their c

circumstances.  Not surprisingly, therefore, the sole state Suprem

whether an issuer re

be a statutory  seller  under the Uniform Securities Act has rejected the

result the Massachusetts Supreme Judicial Court would likely reach were it faced with the issue.

For the reasons set forth below, the Institutio

Bradford with regard to this offering.

    a.    The Uniform Securities Act did not i
in public offerings and the o
purposes of the civil liability provisions.

The purpose of §410(a)(2) is to create a strong incentive for sellers of sec

fully all material facts about the security.  <u>Marram</u>, 442 Mass at 51, 809 N.E. 2d at 102

allowing rescission without proof of scienter,

provides a heightened deterrent to prevent m

furthers this deterrent effect by imposing joint and several personal liability on p

with the primary violator who are in a position to th

control persons, officers, directors, partners, and all persons having a similar status or fulfilling

similar function, as well as those employees who materially aided in the

If the seller employs a broker/dealer or other agent to aid in the sale t

if he materially aided in the sale.

In a public offering where the issuer is the seller, this circle of secondary liabi

66

eminent sense. These control persons, employees and agents are generally the persons resp

for the offering memorandum that is required in pub

liability provides the incentive to assure the complete and ac

of the statute, regardless of the solvency or financial condition of the issuer.

Secondary liability, however, is distributed irrationally in public offerings where an

underwriter is deemed to be the sole seller. Liability is no longer coterminous

In a firm commitment offering managed by an und

officers and directors of the underwriter would be able to influence

Bradford, much less insure their accuracy.

fail because high level executives of a sizable un

qualify for the reasonable care defense provided by

liability of a broker/dealer makes no sense. The u

another. At the same time, the persons who have the most culpability for misstateme

prospectus, those affiliated with the issuer, have no th

not even as an aider or abettor. When seller is too narrowly construed, many of the s

incentives for accurate disclosure are lost, while much of the remaining liabi

ineffective or serve no purpose.

Due to the different structure of the Securities Act of

definition of seller does not create anomalous se

Securities Act. Unlike the Uniform Act, the Securities Act has two primary

one for sellers who make false statements (§12, 15 U.S.C. § 77l) and a second

---

[49]    It is precisely for this reason Plaintiffs have not named the officers
technically viable claims against them exist.

a false registration statement (§ 11, 15 U.S.C. § 1933 Act, § 15, 15 U.S.C. § 77o, reaches both violations. even if the officers and directors of the issuer cannot be held prospectus as the control person of a Sect responsibility for such statements because misrepresentations in a registration an incentive to provide accurate disclosures to the persons who the Uniform Act, however, has a single civil liability provision, narrowing the definition of seller confounds the incentives of the Act.

Given this background, it is not surprising that there is evidence that the drafters of the Uniform Securities Act did not intend iss Massachusetts adopted the Uniform Securities Act in 1972, and it was promulgated Laws Commission in 1956, decades before the Supreme definition of seller. Although the commentary to the 1956 draft of the Uniform Act doe address who should be deemed a seller under §410(a)(2), comments to the 1985 revision address who Uniform Act indicate that issuers should be sellers under the Uniform Act s civil liabilit provisions.

The 1985 revision of the Uniform Securities Act restructured the prior The prohibition against selling a securit moved to §501(2) and the private right However, the civil liability provisions, with one exception not

be substantively changed by the revisions.[50]   Section 605 (a), the prim

continued to impose liability on a person who offers to sell

2 to §605 plainly stated that seller s liability under

included persons whose participation wa included persons whose participation was a s

definition that would clearly cover issuers who published false prospectuses:

> Section 501(2) follows closely Section 12(2) of the Securities Act of 1933
> which imposes liability for material misrepresenta
> disclosures given to buyers. *As in the case with the latter, liability may be*
> *imposed on a person in addition to the immediate seller if the person s*
> *participation was a substantial contributi*
> Davis v. Avco Financial, 739 F.2d 1057 (6th Cir. 1984)(emphasis added).

Indeed, to confirm that officers and directors of

the secondary liability provision, § 605(d),[52] no longer limited the liability of contro

and directors to persons who were related to a violating  seller. Section 605(

person related to a violator of Section (a) is liable, regardless o

---

[50]   Comment 1 to §605 of the 1985 revision state
exception of subsection (c)[relating to market manipulation], is not intended to alter significantly existing law.

[51]   Section 605(a) of the 1985 revision of the Uniform Securities Act states in relevant part:

A person who offers to sell or sells a security in violation of Section 501(s) .
one who purchases the security from that person.

[52]   Section 605(s) of the 1985 revision of the Uniform Securities Act states in relevant part:

A person who directly or indirectly controls another person who is liable under subsec
(a) or (c), a partner, officer, or director of the person liable, a person occupying a
status or performing similar functions, an emplo
materially aids in the act, omission, or transaction constituting the violation, and a broker-
dealer of sales representative who materially aids in the act, omission, or transaction
constituting the violation, are also liable jointly and severally with a
the other person . . .

merelymerely offered to sell.[553]   This clarification confirms liability of individuals in the Bradford

Defendants Defendants   position in a firm commitment underwriting when the prDefendants   position

misrepresentations.

Plaintiffs,Plaintiffs, of course, recognize that Massachusetts has not adoptedPlaintiffs, of course, recogniz

UUniformUniform Securities Act.  However, when the drafters of a statute adopted by the MUniform Securit

LegislatureLegislature clarify what they intended whenLegislature clarify what they intended when the original st

isis entitled to weight in construing the statute.  Cf. Kale v. Combined Insurance Co., 861 F.2d 746,

752,752, n.7 (subsequent legislative statements are entitled to interpre752, n.7 (subsequent legislative statemen

intent of original body is unclear).

PlaintiffsPlaintiffs have been able to only find one court in aPlaintiffs have been able to only find one court i

SecuritiesSecurities Act thSecurities Act that has squarely addressed the issue of who is a  seller  in a firm

underwriting,underwriting, and thatCourtunderwriting, and thatCourt has repeatedly ruled that the purposes of the

issuerissuer is recognized as a  selleissuer is recognized as a  seller.   The Supissuer is recognized as a  seller.

HabermanHaberman v. Washington Public Power SupplyHaberman v. Washington Public Power Supply System

aa bondholders  sua bondholders  suit aa bondholders  suit arising out of the infamous Washington Pu

(  WPPSS  )(  WPPSS  ) default in the mid 1980s.(  WPPSS  ) default in the mid 1980s.  The(  WPPSS  ) default in

statestate of Washington that had issued bonds to construcstate of Washington that had issued bonds to construc

plantsplants far exceeded original estimates and the agency defaulted onplants far exceeded original estimates an

bondsbonds shortly after constructbonds shortly after construction of thbonds shortly after construction o

BondholdersBondholders brought suit under theBondholders brought suit under the civil liability provision of Wa

[53]      TheThe Bradford Defendants have practically conceded that if § 410(b) liability extended to officers and directorsdirectors ofdirectors of a violator of subsection (a)(2), as opposed to only a  seller  who has violateddirectors of a violator of su they are persons who could be found  liable under subsection (b).

70

thethe Uniform Securities Act against the issuerthe Uniform Securities Act against the issuer and other persons w

inin the sale of the bonds.  The trial court dismissed the bondholders  claim on the ground that the

bondsbonds were sold in a firm commitmentbonds were sold in a firm commitment underwriting and only thebond

Washington s securities  laws for selling the bonds to the plaintiffs.

RecognizingRecognizing that Washington s stRecognizing that Washington s staRecognizing that Was

SecuritiesSecurities Act, the Washington SupremeSecurities Act, the Washington Supreme Court surveyed the ap

courtscourts on how to define   seller. [54]  After reviewing the approac  After reviewing the approache  Afte

concludedconcluded that liability should attach when the defendaconcluded that liability should attach when

bringingbringing about thebringing about the transaction.   109 Wash 2d atbringing about the transaction.   109

influencedinfluenced by theinfluenced by the Commentary to the 1985 Revision to the Uniform Securities Act cit

ItIt wasIt was particularly concernedIt was particularly concerned that too narrow a definition would defeat the re

statutestatute in firm underwritten bond issustatute in firm underwritten bond issuestatute in firm underwritten b

supported the remedial purposes of the Act.

The Court explained its ruling with the following:

> OurOur substantial contributive factor analysisOur substantial contributive factor analysis simply
> apapproachapproach to sellers so as to include those parties who have the attributeapproach to se
> aa seller and thus who policy dictates should be a seller and thus who policy dictates should
> RCWRCW 21.20.430(1) [theRCW 21.20.430(1) [the WRCW 21.20.430(1) [the Washington sta
> who would escape primary liability for want of privity.

> Here,Here, for example, the Supply System sold all the bonds toHere, for example, the Supply Syste
> thenthen sold them to plaintiffs then sold them to plaintiffs and interthen sold them to plaint
> privityprivity for liability under RCW 21.20.430(1),privity for liability under RCW 21.20.430(1), or
> potentiallypotentially liable for prospectus fraud, cutting off allpotentially liable for prospectus frau
> thethe issuer of the bonds and others acting the issuer of the bonds and others acting togethethe i
> thethe actual beneficiaries of the sale proceeds. Thethe actual beneficiaries of the sale procee

---

[54]        TheThe Court noted that the federalThe Court noted that the federal courts  interpretation of stateThe Court noted that th
becausebecause the federbecause the federabecause the federal courts usually only repeated what their circuit had ruled with regard t
interpreting the state enactment. 109 Wash 2d at 129, 744 P. 2d at 1051.

securities to insulate themselves from liability to ultimate purchasers
by selling to middlemen beyond their control,
know that the securities will be resold immediately to buyers
on Official Statements and Annual Reports written by the issuer to
the sales. Unlike the federal Securities Act of 1933, §
provide for separate issuer liability. Thus, if privity were required
under RCW 21.20.430(1), an issuer
would never be liable, regardless of its culpabili
contrary to the clear purposes of the WSSA.

109 Wash 2d. at 132, 744 P.2d at 1052.

Haberman was decided before Pinter. After the Supreme. After the Supreme Court s decision, the Wa

Supreme Court had an opportunity to change its position in light of Supreme Court had an opportunity

v. Hoffer, 113 Wash 2d 148, 151-52, 776 P.2d 963, 964-65 (1989).

the substantial contributive factor test was the still the appropriate standard under the

Securities Act in light of the Act s structure and policies. The Court ga

Pinter. First, the purpose of the state statute was different than the federal

the latter was also concerned with protecting the latter was also concerne

primarily was concerned with protecting investors and

Second, the structure of the two statutes are different. While the federal statute had a se

provision for liability for issuers (§ 11), the Uniform Securities Act did not. Third, the Court

returned to the problem of firm commitment underwritings,

Legislature would insulate issuers from liability when

and reports that were critical in informing investors. Id. 113 Wash 2d. at 152, 776 P. 2d at 965.

The concerns of the Washington Supreme Court in Haberman and Hoffer, and their

understanding of the purposes of the Uniform Securities Act, are same

the Supreme Judicial Court demonstrated in its analysis of the Uniform Securities

TheThe SJC has clearly stated its view that the Act is  redressive  andThe SJC has clearly stated its view that the

toto provide substantial protection to the buyerto provide substantial protection to the buyer of secto provi

information.information. information.  442 Mass. at 51-52, 809 N.E. 2dinformation.  442 Mass. at 51-52, 809 N.E.

investors,investors, it isinvestors, it is likely that the Court would recognizeinvestors, it is likely that the Court wo

obtain the statute s objectives.

> b.     Some of the Plaintiffs were solicited by Bradford.

EvenEven if the Court finds thatEven if the Court finds that  seller  should be defined in accordance with

thatthat does notthat does not necessarily mean that Bradford and its officers andthat does not necessarily mean th

§410.§410.  Persons that successfully §410.  Persons that successfully solici§410.  Persons that successfully sol

ownown financial ends may be held liable as  sellers.   <u>Pinter</u> 48 486 U.S. at 687.   486 U.S. at 687.  Here, a

currentlycurrently alleged in the Amended Complaint, Kiszka, on behalf of Bradford,currently alleged in the Ame

atat least oneat least one of the Institutional Bondholders before its purchase  regarding theat least one of the Instit

bondbond issue.  Such contact couldbond issue.  Such contact could be found to constitute  solicitation  and suc

bebe sufficientbe sufficient be sufficient to allow the § 410 claims against the Bradford Defendants to go forwar

<u>LadiesLadies Investment Club v. SchlotzsLadies Investment Club v. Schlotzsky Ladies Investment Club v</u>

solicitationsolicitation by issuer in a firm underwriting issuance issolicitation by issuer in a firm underwriting issuan

claim;claim; whether issuer acted as underwriter s agent is issue for summary judgment).  The Institutional

Bondholders should be given leave to amend to allege solicitation.

3.    PlaintiffsPlaintiffs have sufficiently stated a Plaintiffs have sufficiently stated a claimPl
Uniform Securities Act.

DDefendants Defendants  attack on the merits of Plaintiffs  Uniform Securities Act claim repeatDefen

assertionsassertions that the complaintassertions that the complaint fails to state the existence in theassertions tha

falsefalse or misleading statements or omissions.  For the reasons set forthfalse or misleading statements or omiss

statementsstatements identified in Section I do state claims for false and misleading sstatements identified i

unnecessary to repeat the analysis.

InIn evaluatingIn evaluating the sufficiency of Plaintiffs  Uniform Securities Act claims, theIn evaluating

keepkeep in mind that plaintiffs are not required tokeep in mind that plaintiffs are not required to plead negligence

toto state a claim under § 410.  Marram, 442 Mass at 51-53, 809 N.E., 442 Mass at 51-53, 809 N.E. 2d at 1025-27 a

Further,Further, becausFurther, because frauFurther, because fraud is not an element of the statutory claim, Plai

particularitparticularityparticularity rparticularity requirements of Rule 9(b).  Stolzoff v. Waste Systems Intern

App.Ct.App.Ct. 747, 764, 792 N.E. 2d 1031,App.Ct. 747, 764, 792 N.E. 2d 1031, 10App.Ct. 747, 764, 79

erroneously dismissed for failure to comply with Mass.R.Civ.P. 9(b))

TheThe Bradford Defendants  assertion that estimates and projections cannot be the basisThe Bradford D

claimclaim under § 410 is erroneous.  The Supreme claim under § 410 is erroneous.  The Supreme Judicial

actionableactionable if it isactionable  if it is inconsistent with factsactionable  if it is inconsistent with facts known

atat 58, 809 N.E. 2d at 1030 n. 24.  Similarly incorrect is their assertion that general written

disclaimersdisclaimers can overcome specific misrepresentations of fact. disclaimers can overcome specific misrep

warningwarning that investment manager couldwarning that investment manager could concentrate holdings in o

lawlaw refute plaintiff s claim that that defendant made specific misrepresentation concerning

diversification).diversification).  Indeed thediversification).  Indeed the Court cited authority that alleged misrepres

volatility ordinarily raise genuine issues of fact.  Id. at 58, 809 N.E.2d at 1030.

74

4.   Plaintiffs Claims Are Not Precluded By A Statute of Repose

Astonishingly, the Bradford Defendants now assert that the claims they knowingly signed to induce Plaintiffs to dismiss voluntarily their original timely action—Plaintiffs' Uniform Security Act claims—are barred by a statute of repose. This assertion is astonishing for at least two reasons: (1) § 410(e) is not a statute of repose, and (2) the Defendants are contractually bound not to raise the defense.

Statutes of repose completely eliminate a cause of action before the cause of action has accrued or been discovered. Klein v. Catalano, 386 Mass 701, 708, 437 N.E. 2d 514 (1982). They commence from a "definitely established date" such as when an act or omission occurred which forms the basis of the cause of action. Nissan Motor Co. v. Commissioner Of Revenue, 407 Mass 153, 158, 552 N.E. 2d 84 (1990). A statute of repose provides a bright line method of determining when the statutory period starts and a bright line method to obtain certainty that potential liabilities are extinguished. Nett v. Net, N.E. 2d 130, 137 (2002). A statute of limitations "normally" governs the time within which legal proceedings must be brought after the cause of action accrues. They ordinarily do not begin to run until the date of discovery. McGuiness v. Cotter, 412 Mass 617, 621-22, 591 N.E. 2d 659 (1992). Ordinarily, when the Legislature intends to create a statute of repose, it does so directly by language that unambiguously announces no exceptions to the statutory period. Id. 412 Mass at 622, 591 N.E. 2d at 663.

Section 410(e), which provides that no person may sue for a violation of the Act more than four years after its discovery does not creat[e]

limitation period runs or a  bright line  which will enable a defendant to

liability has been extinguished. Indeed, commencement o

discovery,  which is a classic commencement of a normal limitations period.  N

period tied to an act or omission by the defendant.  Thus, it is hard to see how

any defendant repose, since it starts to run at

(or even decades) after the event in question.   The langua

unambiguous  without exception  finality that is

the best evidence that § 410(e) is a statute of limitation and not repose is that

Court has described the four year term of § 410(e) as a  limitation

Marram, 442 Mass at 54, 809 N.E. 2d at 1028, and n. 20.

Even if § 410(e) was a statute of repose,

be tolled, but whether it can be waived.  Plaintiffs do not rely on an

proceed with their action, but rather on Defendants  intentional waiver of their

of limitations or statute of repose defense based on the time covered by the T

Defendants raise no reason why they could not legally

clear that they can.  Unlike most statutes, the Uniform Securities

which provisions of the statute cannot be waived.[56]  Only a person acquiring a secur

waive another person s compliance with the Act s p

limitations period is as essential to the statutory scheme

---

[55]    To the extent the Court cannot reasonably infer
waived their rights to raise

[56]    Section 410(g) states that  any condition, stipulation, or provision binding any person acquiring any
security to waive compliance with any provision of this chapter or any rule or order hereunder is void.

non-waiver provision would also cover the protections the Act grants to security sellers.[57]

Finally, the Bradford Defendants fail to info

from raising this argument. The Tolling and Standstill Agreements signedfro

Defendants state that

> Each Potential Defendant hereby agrees and acknowl
> shall not plead or raise and is estopped from pleading or raising the p
> time during the Tolling Period as part of a defense of bar time during the Tolling Period as
> Limitations Period with respect to any Claim. (emphasis added)

The Bradford Defendants do not explain w

allowed to enjoy the valuable consideration they received for executing them    Plaintiffs allowed to enjoy

of a timely filed of a timely filed law suit    while the Plaintiffs should be wholly deprived of t

bargain. The Court should not tolerate the Bradford Defendants bargain. The Court should not to

with regard to this purported defense.

B.    Plaintiffs  Fraud Claims Plead Reliance Withl
Could Reasonably Rely on the Representations In Bradford s Official Statement

Defendants  arguments in favor of dismissing Plaintiffs  fraud claim

their earlier assertions that the Amended Complaint fails to plead material misrepresen

scienter and personal involvement of the individual defendants to the requisite

required by Fed.R.Civ.P. 9(b).  Plaintiffs have addressed th

Rule 10b-5 causes of action and there is no need to repeat the analysis.

---

[57]    In fact, the Bradford Defendants fail to cite any authority that statutes of repose i

cannot be voluntarily waived.  Undoubtedly, this is because the purpose of stat

of defendants the benefit of a date certain when liability will end, al

reasonable expectation that they will not be called upon to resist a

may be lost.  Nett v. Bellucci, 437 Mass.630, 639, 774 N.E. 2d 130, 137 (2002)

protection of a statute of repose, particularly sophisticated liti

expectation of repose and understand the risks taken by agreeing to such a

for the specific benefit of a class of persons, there is no reason that members of that class cannot intelligently wai

protection, particularly if they are receiving valuable consideration in return.

InIn evaluating Plaintiffs' common law fraud claims, however, the Court should recall that

althoughalthough the circumstances of fraud must be plead with specificity under Rule 9(b), the heightened

pleadingpleading standards for scienpleading standards for scienterpleading standards for scienter and proof of

commoncommon common law fraud, the specificity requirement only extends to the particulars of the mislea[d...]

statement.statement. <u>Rodi v. Southern New EnglandRodi v. Southern New England School of Law,</u> 389 F. 3d 389

ItIt is satisfied when the complaintIt is satisfied when the complaint states the "who, what, where andIt is satisfie[d...]

fraudulent misrepresentation." <u>Alternative Systems Concepts, Inc. v. Synopsys, Inc.</u> 374 F.3d 23,

2929 (1st Cir. 2004). The other elements29 (1st Cir. 2004). The other elements of fraud, such as intent and kno[...]

general terms. <u>Rodi,</u> 389 F. 3d at 15

AllAll Defendants assert that Plaintiffs' have failed to adequately plAll Defendants assert that Pl[...]

BondholderBondholder Plaintiffs' however, have pled that the false statements in the Official Statement were

mademade for the expressmade for the express purpose of inducing the Plaintiffs to purchase the bonds, AC,made[...]

theythey did indeed purchase thethey did indeed purchase the bonds in reliance upon the Defendants' false statemen[...]

AC,AC, ¶¶AC, ¶¶ 85, 97, 100 and that they would not have purchased the bonds if they had not beenAC, ¶¶ 85, 9[...]

AC,AC, ¶ 85. With regardAC, ¶ 85. With regard to ACAC, ¶ 85. With regard to ACA, the Amended Co[...]

Statement,Statement, AC, ¶ 66, that its conversation with Kiszka reinforced the misleadiStatement, AC, ¶ 66, t[...]

omissions,omissions, ¶ 66, that the misleading statements in thomissions, ¶ 66, that the misleading statements i[...]

ACAACA to issue anACA to issue an insuranceACA to issue an insurance policy, ¶¶ 97, 100 and that ACA relie[...]

OfficialOfficial Statement (and in the conversation with KiOfficial Statement (and in the conversation with [...]

AuthorityAuthority cited by the Defendants establisAuthority cited by the Defendants establishes that Authority[...]

<u>BeazerBeazer East, Inc.,</u> 18 F. Supp. 2d 70, 86 (D. Mass. 1998)(allega, 18 F. Supp. 2d 70, 86 (D. Mass. 1998)(allegati[...]

falsefalse representations, theirfalse representations, their agent reviewed the representations and that they then pu[...]

78

in reliance upon representations adequately pleads reliance in conformity with Rule 9(b)).[58]

The Bradford Defendants contend that Plaintiffs could not reasonably rely on the misrepresentations and omissions because the other disclosures in the Official Statement warned them of the dangers faced. Putting aside the Bradford disclaimers in the Official Statement and the financial results,[59] they argue the warnings that Bradford might not be able to achieve its financial objectives make it unreasonable for Plaintiffs to rely on other information that might be incorrect or misleading. In essence, they argue that since the investors were warned of the potential risk, it is irrelevant if the Defendants concealed or misstated facts that would have allowed Plaintiffs to evaluate the risks for themselves.

The First Circuit's recent decision in <u>Rodi v. Southern New England School of Law</u>, 3d 5, 14-17 (1st Cir. 2004) makes short work of the Bradford Defendants' contentions. In that case, plaintiff alleged that the Southern New England School of Law held out its prospect for ABA certification when he applied for admission and matriculated. The law

---

[58]    The cases cited by the Bradford Defendants clearly relate to situations not before the Court. In re
<u>Lupron Marketing and Sales Practices Litigation</u>, 295 F. Supp. 2d 148,175 (D. Mass. 2003), there, no
dispute the plaintiffs either did not consult the fraudulent average wholesale price or knew it was inflated. Here
the Plaintiffs read the Official Statement and did not know... (To the extent the Complaint
does not explicitly state that the Plaintiffs read the Official Statement, Plaintiffs are willing to amend.) In re
<u>Brown & Williamson Tobacco Corp.</u>, 122 F. Supp. D 194, 208 (D. Mass 2000), the Plaintiffs identified
specific promotional material that contained misstatements...
sufficiently identified the false statements their fraud claims are based upon.

[59]    The Bradford Defendants breathless characterization of the Official Statement...
believe that every page contained a black legend "IMPENDING DOOM". They ignore that the Official Statement
investment grade. They also ignore that the Official Statement investment grade. They also ignore that...
in eight years (400 to 550), the endowment had increased 204% in the same period and net assets
increased from $11.9 million in 1994 to $16.8 million in 1997. Although...
for several years in a row the Official Statement also reveals that Bradford's alumni gave generously... a
company that ran nine years of deficits might likely be out of business, the Bradford Defendants fail...
that it is not uncommon for non-profit entities to routinely run operating deficits...
contributions. If professionals as sophisticated as Standard & Poor's rated...
Defendants can hardly argue that plaintiffs' claims should be dismissed at the pleading stage because, as...
any investor who perused the Official Statement would obviously know this was a financial black hole.

claimed the former student could not reasonably rely on the representations because the school catalogue specifically disclaimed any representation that the school would be accredited prior to graduation. The law school argued that since the plaintiff's promise of accreditation, and the disclaimer flatly contradicted any such promise, the promise was objectively unreasonable.

The First Circuit rejected such arguments:

> This argument erects, and then attacks, a straw... complaint allege that the defendants falsely implied... to achieve near-term accreditation. This is a meaningful distinction... thing for an actor to demur when asked to... It is quite another for an actor to mislead a person into believing... actor possesses means and abilities fully within its control... distinction, the defendants... as the disclaimer does not cover the alleged misrepresentations, it cannot defeat them.

389 F.3d at 16

The parallel to this case is obvious. Here Defendants characterize Plaintiffs... flowing from the broken promise to repay the bonds or meet enrollment goals. Defendants claim that since Bradford warned that it might not be able to meet these goals, any reliance on promises was unreasonable. But Plaintiffs do not complain that... flow or class enrollments. They claim Defendants misrepresented and concealed... financial data that would have allowed them to realize... the bond debt, and that Bradford had objective information... disclosed objectives.

A second ground in <u>Rudi</u> for denying the law school's unreasonable reliance... that Massachusetts courts consistently have held that disclaimers...

80

fraudulent misrepresentation claims. 379 F.3d at 17, citing Bates v. Southgate, 308 Mass

N.E. 2d 551, 558 (1941) and others. The Court recognized that

policy that a party may not contract out of fraud,

on an undeveloped record at the motion to dismiss

decision. 379 F.3d at 17. Indeed, decision.

reliance argument relies were all decided on a full factual record at summary judgment or trial.[60]

Under Massachusetts law, reasonable reliance is or

See Roti, 389 F.3d at 16, Marram, 442 Mass. at 59-61, 809 N.E. 2d at 1031-32., 442 Mass. at 59-61, 809 N.E. 2d

specifically cautions against granting such motions without a complete factual re

should follow those appellate courts' advice and deny Defendants' motion

count.

---

[60]    None of the cases relied upon by the Bradford Plaintiffs are remotely analogous. All three invo
alleged oral misrepresentations. In two of the cases, the representat
plaintiff had either signed or was bound by. Sound Techniques, Inc. v. Hoffman, 50 Mass. App. 425,, 737 N
(2000) (lease contradicted oral representation); Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass
459, 781 N.E. 2d 787 (2003)(price quotation contradicted oral
the parts of the Official Statement on which the Plaintiffs rely. There is nothing inconsistent with d
and objectives but then observing that there can be no promise that the goals will be met.
had personal knowledge that the representation was false. Cote v. Astra
1998). The Amended Complaint does not allege that any of the Plaintiffs had a
read the Official Statement.

C.    The Bradford Defendants Responsible For the Misrepresentations In the Official
Statement Can Be Held Liable For Negligent Misrepres
Bond Purchasers.

The only argument unique to Defendants' opposition to Plaintiffs' negl

misrepresentation count is the Bradford Defendants' assertion that

purchasers for a failure to use reasonable care.  They contend that since the Plai

bonds from Advest and had no contact with them, they owed no duty to the Plaintiffs.

Putting aside that the Amended Complaint expressly states

relied upon his representations before issuing insurance on the bonds,

the duties owed by persons who know third parties will rely upon the informa

misguided.  As the Bradford Defendants reluctantly concede, in Massachusetts liabi

misrepresentation is not limited by privity.  Ins

determined by the principles of § 552 of the Restatement (Second) of

has adopted.  That section provides:

> One who, in the course of his business, profes
> other transaction in which he has a pecuniary interest, supplies false
> information for the guidance of others
> subject to liability for pecuniary loss cause
> reliance upon the information, if he fai
> competence in obtaining or communicating the information.  (Emp
> added).

See. e. g. Marram, 442 Mass at 60, 809 N.E.2d at 1031, n. 25; Golber v. BayBar

46 Mass. App. Ct. 256, 257 (Mass. App. , 1999).

The persons who may reasonably rely on the information provided is limited.  Section

limits the loss suffered to  a  person or one of a limited group o

guidance he (the information provider) intends to supply

82

intendsintends to supply it... .intends to supply it... .  Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass 491,, 4 1368,1368, 1371-72 (1998).[61]  Third parties who do not deal  Third parties who do not deal directly with the infor havehave a cause of action, accordingly, if thhave a cause of action, accordingly, if the informathave a caus information.information.  Further, the comments to § 552 makeinformation.  Further, the comments to § 552 make isis to become a plaintiff be known oris to become a plaintiff be known or identified to the defendant. is to becom representationrepresentation intendsrepresentation intends it trepresentation intends it to reach either a particula muchmuch larger class who might   sooner or later   have access to the information, and that the plaintiff provesproves to beproves to be a member or such a particular class.  Restatement (Second) of Torts,proves to be h.h.  SeeSee also, Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass at 497, 688 N.E. 2d at 1372.   In short,short, the  absence  of  privity  can  be  short,  the  absence  of  privity  can  be  overcome  short,  the  absence defendant s knowledge of reliance by a particular class of persons.

Here,Here, the Complaint sufficiently alleges that the Plaintiffs are within theHere, the Complaint sufficien BradfordBradford Defendants expected the Official StatementBradford Defendants expected the Official Stateme AmAmendedAmended Complaint states that the negligent statements were made for the   express purpose Ame indinducinginducing the Plaintiffs to purchase the bonds and write an insurance policy.  At this stage of tinduc litigation, this is all that needs to be alleged.

TheThe Bradford Defendants citeThe Bradford Defendants cite authority that holds that corporateThe Br negligentnegligent representation to open market security purchasers who rely upon their publicly issued statements.statements.  Thstatements.  There is a sustatements.  There is a substantial difference, however, betw aaa public company whose stock can be purchased by anyone, and the rea public company whose stock can be

_____

[61]    TheThe The informationThe informationThe information mustThe information must The information must alsoThe infor or aor a similar transaction.or a similar transaction.  Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass at 496, 688 N.E. 2d at 13 71-7 is no dispute that the Bradford Defendants prepared the Official Statement for the bond offering.

Official Statement for a bond offering of an entity that does not otherwise issue public [securities]. In the later case, the statements are made to a much smaller class, within the class will rely upon them is much greater.

A purchaser of securities in an initial public offering is necessarily dependant upon the Offering Statement about the previously private organization. Such organizations do not publicly issue financial statements or other informational briefings. They do [not publish] statistics and operational results. They are generally not followed by [analysts]. Bradford and the Bradford Defendants had to have expected that [purchasers of the] debt securities would view the Offering Statement as the prim[ary source on the] advisability of the investment. The Offering Statement was written and promulgated by the Bradford Defendants specifically for the pur[pose of soliciting] investors in the initial offering. It knew recipients of the Offering Statement [would use the] information contained therein in making their investment decision.

On the other hand, secondary market purchasers of securities of a public corporation [are a] far more diffuse group. They represent a group of people [buying at different] points in time. They have been exposed to a great variety of information abo[ut the] corporation, including S.E.C. [filings], media coverage, and even rumor and supposition. They do not necessarily know who the holders of the securities are, and have probably never communicated intentionally with many of them. The [decision to buy] might be the result of a wide variety of factors, only one of which is information flowing from

management.

NotNot surprisingly, therefore, those cases which lookNot surprisingly, therefore, those cases which look at

findfind that it is different from the secondary market find that it is different from the secondary market situfind

InIn re Bank of Boston Securities Litigation 762 F.Supp. 762 F.Supp. 1525 762 F.Supp. 1525 (D. Mass. 1991) is t

thisthis this District.  In that case, Judge Harrington considered the state law negligent misrepresentatthis Distri

claiclaimsclaims of secondclaims of secondary market purchasers and dismissed them because they were based

disseminateddisseminated information  disseminated information  and there disseminated information  and the

extentextent of public reliaextent of public reliance on itextent of public reliance on its public statements.  I

broughtbrought by brought by the brought by the public offering purchasers (the  acquisition class ), but simp

acquisitionacquisition class plaintiff would be required at trial to show direct reliance on the defacquisition c

representations.representations.  In refusing to dismiss the  acrepresentations.  In refusing to dismiss the  ac

regardingregarding the plairegarding the plaintregarding the plaintiffs  ability to prove reliance at trial,  ...at th

makemake a detmake a determinmake a determination as to their ability to do so.  Id. at 1536.   See also E

ExtrusionExtrusion Technologies, 150 F.R.D. 433 (D. Mass. 1993)(same holding)., 150 F.R.D. 433 (D. Mass. 199

thatthat the small class of public offering purchasers stand on a different footing from the secondary

marketmarket purchaser who presumptively cannot satisfymarket purchaser who presumptively cannot satisfy the e

in the initial offering, cannot have the negligent misrepresentation claims dismissed at this time.

Finally,Finally, theFinally, the Bradford Defendants have raised the novel argument that theFinally, the Bra

ofof the Restatementof the Restatement apply only to professionals such as lawyers, accountants, and architects, an

toto corporate officers and directors who prepare securities filings. to corporate officers and directors wh

unsupportedunsupported by anyunsupported by any Massachusetts case law, and flies in the faceunsupported by a

specificallyspecifically attaches liability to a providerspecifically attaches liability to a provider of negligent info

business,business, profession, *or employment*...   Clearly the drafters of t...   Clearly the drafters of the Rest...

corporatecorporate employees, in addition to businesses and professionals,corporate employees, in addition to busi

nnegligentnegligent misrepresentation.   The Bradford Defendants provide no rationale why corporate

employeesemployees who fail to exercise reasonable care in providingemployees who fail to exercise reasonable ca

relyrely upon should be treated differenrely upon should be treated differentlyrely upon should be treated differ

includingincluding <u>Marram</u>, have corporate officers , have corporate officers who th, have corporate officers

misrepresentation.misrepresentation.  misrepresentation.   This Court should avoid a wholesalemisrepresentation.

law.

D.      There Is No Basis To Dismiss The Plaintiffs  Chapter 93A Claims

TheThe arguments to dismiss Plaintiffs The arguments to dismiss Plaintiffs  Chapter 93AThe arguments t

to Plaintiffs  other causes of action. Plaintiffs willto Plaintiffs  other causes of action. Plaintiffs will only address

thethe Chapter 93Athe Chapter 93A claims and rely on the early sections of this memorandumthe Chapter 93A cla

arguments.

Defendants Defendants  arguments that Plaintiffs  complaiDefendants  arguments that Plaintiffs  com

rascalityrascality israscality is baseless.  rascality is baseless.   It is well established that actionable claims of

negligentnegligent misrepresentation cannegligent misrepresentation can qualify as unfair and deceptive trade pra

c.c. 93A, § 11.  <u>Marram</u>, 442 Mass, 442 Mass at 62, 809 N.E., 442 Mass at 62, 809 N.E. 2d at 1032-33 (conduct th

misrepresentationmisrepresentation or violations of M.G.L. c. 110A may constitute violations ofmisrepresentation

StStolzStolzoffStolzoff v. Waste Systems Int. Inc. 58 Mass. App. Ct. 747, 765, 792 N.E. 2d 1031, 1045 (2003)

(conduct(conduct that constitutes fraud or negligent misrepresentation may constitute violation of M.(conduct th

c.c. 93A, § 11).  Accordingly, if any of plaintiffs c. 93A, § 11).  Accordingly, if any of plaintiffs  claims c. 9

action for violation of § 11.

86

TheThe BradfordThe Bradford PlaintiffsThe Bradford Plaintiffs assert they have not had a  business relatio

andand therefore 93A liability will not attach.  Privity is notand therefore 93A liability will not attach.  Privity is n

thethe plaintiffs and defendants are involved in a commercial relationship which ithe plaintiffs and defendan

insignificant.insignificant.  See ReismaReisman v. KPMG PeReisman v. KPMG Peat Marwick 965 F.Supp.

BostonBoston Survey Consultants 388 Mass. 320, 321. 446 N.E. 2d 681 (1983) ; Reisman v. KPMG Peat

Marwick 57 Mass. App. Ct. 100, 124, 787 N.E. 2d 1060, 57 Mass. App. Ct. 100, 124, 787 N.E. 2d 1060, 1078 (2

whetherwhether the  commercial relationship  between the preparers and signerswhether the  commercial relati

forfor a publicly offered securityfor a publicly offered security and the initial purchasers of suchfor a publicly offe

Massachusetts precedent demonstrates that it is not.

ItIt is apparentIt is apparent that there has been a convergence, if not outright identity, betweenIt is apparen

ofof  reliance  under §of  reliance  under § 552 of the Restatement (Second) of Torts, discussed in Sectionof  r

andand the concept of a  transactional business relationship  which and the concept of a  transactional business rela

Chapter 93A.   This is most evident in the case ofChapter 93A.   This is most evident in the case of Spencer v.Sp

N.E.N.E. 2d 1082 (2000).  In thatN.E. 2d 1082 (2000).  In that case, the Appeals Court reviewed theN.E. 2d 1082

accountingaccounting firm to purchasers of securities of a public company thataccounting firm to purchasers of sec

rejectedrejected the claim because the record was devoid ofrejected the claim because the record was devoid of a

knowledge of any reliance by participants on the audit soknowledge of any reliance by participants on the audit

ThisThis is precisely the This is precisely the sameThis is precisely the same factor which determines liab

MassachusettsMassachusetts decisions addressing the applicabilitMassachusetts decisions addressing the app

followedfollowed thfollowed the same line as cases deciding the applicability of § 552 of the Restatement.  Se

example,example, Salkind v. Wang, 1995 WL 170122 (D. Mass. 1995) (open market p, 1995 WL 170122 (D.

commercialcommercial relationship withcommercial relationship with corporate officials); Young v. Deloite & T

87

18 Mass. L. Rptr. 287 (Mass. Super.) (no commercial relationship where defendant s activities

not intended to help solicit people to purchase the company s

809 N.E. 2d at 1017 (93A claim upheld for original purchaser

v. Waste Systems International, 58 Mass. App. Ct. at 765, 792

for original purchasers misled by corporate officials);

App. Ct. at 124, 787 N.E. 2d at 1078 (auditor with direct contact with prospective

to liability).

Of the factors cited in those cases as supporting 93A liability,

The Bradford officials certainly knew that prospective purchasers would look at

on the Official Statement. They prepared and signed the Official Statement

and Advest intended to use it to attract investors to purchase the securities

prospective purchasers had few or no other sources of info

importantly, they knew prospective purchasers would rely on the Statement. These

overwhelmingly support the viability of a 93A claim. At a

to conclude that there is no possible set of facts that would preclude t

from the Bradford Defendants under ch. 93A, and accordingly, this claim cannot be dismissed at this

stage of the proceedings.

E.    TTheThe Court Cannot Consider The Trustee Defendants  Affirmative Defense ThThe Court
MassachusettsMassachusetts StatutesImmunizeMassachusetts StatutesImmunize Them From Liab
EstablishEstablish TheEstablish The Defense CannotEstablish The Defense Cannot Be Found In T
Documents The Court May Consider On a Motion To Dismiss

TheThe Trustee DThe Trustee DefendThe Trustee Defendants seek to dismiss the Massachusetts cause

MassachusettsMassachusetts statutes limit liability for uncompensated trustees of non-profitMassachuse

corporations,corporations, M.G. L. c. 231, §§ 85K and 85W. corporations, M.G. L. c. 231, §§ 85W. Be

notnot receive compensation other than reimbursement for actual expenses to obtain the immunity.not receive com

allegationsallegations to that effect are contained within the Amended Complaint, but Defendants rely upon

an Affidavit of Karen Sughrue to make the necessary factual showing.

TheThe Court must deny the TrusteeThe Court must deny the Trustee Defendants  efforts to apply the sta

aa Motion To Dismiss. this court may onlya Motion To Dismiss. this court may only consider affirmative defenses

fromfrom the allegations offrom the allegations of the complaint,from the allegations of the complaint, the docume

record,record, and other matters of which the court may take judicial notice.    Banco Santander de Puerto

RicoRico v.  Lopez-Stubbe (In re Colonial Mortgage Bankers, Corp.), 324 F.3d 12, 16 (1st Cir.  2003).

ConsiderationConsideration of documents not attached to Consideration of documents not attached to theCon

forbidden.forbidden.  Waterson v. Page, 987 F.3d 1, 3 (1st Cir. 1997).  Nor may, 987 F.3d 1, 3 (1st Cir. 1997).  No

Shabazz v.  Cole, 69 F.Supp.2d 177, 185 (D.  Mass.  1999).[62]

WithoutWithout consideration of the Sughrue affidaWithout consideration of the Sughrue affidavit, the

_____

[62]    TheThe Plaintiffs woulThe Plaintiffs would vigoroThe Plaintiffs would vigorously oppose any effort to convert the
DismissDismiss in toDismiss into a Motion For Summary Judgment pursuant to Fed.Dismiss into a Motion For Summary Judgment pursu
untiluntil the Court rules on the sufficiency of their complaint pursuant to the PSLRA.  Accordingly, they cannot conduct
thethe the factual investigation to determine whether the Trustee Defendants truly qualify for the Massachusetts immuthe factual inve
statutes.

factual showing necessary to qualify for the statutory immunities.[63]  Consequently, their motion to

dismiss on these grounds must be denied.[64]

## IV.    PLAINTIFFS SHOULD BE GIVEN LEAVE THEY HAVE FAILED TO PROPERLY PLEAD ACTION.

In the event the Court finds that there are pleading deficiencies in the Amended Complaint,

leave is requested to correct them.  Given the requirement that Pla

dismissed unless it is beyond doubt that plaintiffs can prove no set of facts that would  entitle them

to relief, <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002), and the liberal amendment, 534 U.S

Rule 15, such leave is ordinarily granted.

Advest, however, has already stated that it opposes

ground the Plaintiffs have already amended their complaint once.  That

not substantive.  It merely added state court claims which derived from the sa

when the Superior Court stayed the Plaintiffs  parallel s

before Defendants filed and served their motions to dismiss and, accordingly,

points raised by their briefs.  Plaintiffs should have at least one

claimed by the Defendants in their motions.

Nor have Plaintiffs unduly delayed.  Plaintiffs served this action

on the nineteen defendants in October 2004.  It is the Defend

---

[63]    M.G.L. c. § 85K also requires proof that Bradford was qualified as a tax-exempt organiza 26 U.S.C. § 501(c)(3).  There are no allegations in the Complaint to that effect and the Bradford Defend provided no evidence of Bradford's status with the IRS.

[64]    Plaintiffs do not accept that if Trustee Defendants be entitled to dismiss the state law claims.  However, as this matter is not properly before th not brief these defenses at this time.

thanthan four months to prepare motions to dismiss.  Plaintiffs have rthan four months to prepare motions to d

understandunderstand that Defendants require an additional two months to file a reply. understand that Defendants

Defendants Defendants  good faith in requesting these extensions, butDefendants  good faith in requesting these

these motions to dismiss fully briefed is not attributable to the Plaintiff.

AsAs demonstrated above, in theAs demonstrated above, in the event theAs demonstrated above, in the eve

futilefutile and the Plaintiffs havefutile and the Plaintiffs have acted equitably and appropriately.  Amendment sh

if necessary.

## CONCLUSION

WHEREFORE,WHEREFORE, for the reasons set forth above,WHEREFORE, for the reasons set forth ab

denied in their entirety.

T.T. ROWE PRICET. ROWE PRICE TAX-FREE HIGHT. ROWE
INC.,INC., SMITHINC., SMITH BARNEY INCOMEINC., SMITH
BARNEYBARNEY  MUNICIPAL  HIGH  INCOMEBARNEY  M
DRYDEDRYDENDRYDEN DRYDEN NATIONALDRYDEN NA
LOLOISLOIS aLOIS and JOHN MOORE, and ACA FINANCIA
GUARANTY CORPORATION

By their attorneys,


/s/ Michael Tabb
Thomas Hoffman, Esq.  BBO # 237320
Thomas Greene, Esq. BBO# 210020
Michael Tabb, Esq. BBO # 491310
Greene & Hoffman, P.C.
125 Summer Street, 14th Floor
Boston, Massachusetts  02110
Dated: May 2, 2005                    (617) 261-0040

91