UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE MCKEOWN, ROBERT LUTTS,<br>                    Plaintiffs,<br><br>vs.<br><br>ADVEST, INC., KAREN SUGHRUE, et al.,<br>                    Defendants | C.A. No. 05-10176-RGS<br><br>**CONSOLIDATED WITH** |
| T. ROWE PRICE TAX-FREE HIGH YIELD FUND, INC., et al.,<br>                    Plaintiffs,<br><br>vs.<br><br>ADVEST, INC., KAREN SUGHRUE, et al.,<br>                    Defendants | C.A. No. 04-11667-RGS |

**BRADFORD DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO BRADFORD TRUSTEE DEFENDANTS' MOTION TO DISMISS AND PROPOSAL FOR DISCOVERY ON TRUSTEE COMPENSATION**

The Bradford Defendants[1] respond to Plaintiffs' Supplemental Opposition to Bradford Trustee Defendants' Motion to Dismiss and Proposal for Discovery on Trustee Compensation ("Supp. Opp'n").  Contrary to plaintiffs' assertion, the charitable immunity statutes apply to, and bar, the state-law fraud and statutory claims against the Trustee Defendants.  The Court should reject plaintiffs' sweeping discovery proposal because plaintiffs do not need to review 60 boxes of Bradford College's documents to assess the truth of Karen Sughrue's sworn statement that the Trustee Defendants received no compensation (which plaintiffs have offered no reason to doubt in any event).

---

[1]   "Bradford Defendants" refers to all defendants in this action except Advest, Inc.  "Trustee Defendants" refers to all of the Bradford Defendants except Donald Kiszka.

I. **THE IMMUNITY THAT THE SECOND PARAGRAPH OF M.G.L. c. 231, §85K, GRANTS TO UNCOMPENSATED TRUSTEES OF EDUCATIONAL INSTITUTIONS APPLIES BY ITS PLAIN TERMS TO PLAINTIFFS' STATUTORY CLAIMS AGAINST THE TRUSTEE DEFENDANTS.**

As one of several grounds to dismiss the state-law claims against them, the Trustee Defendants have asserted complete immunity from those claims under the second paragraph of M.G.L. c. 231, §85K. *See* Bradford Defendants' Motion to Dismiss Amended Complaint at 36. That paragraph of the statute provides, in pertinent part:

> No person who serves as a director, officer or trustee of an educational institution … and who is not compensated for such services … shall be liable solely by reason of such services as a director, officer or trustee for any act or omission resulting in damage or injury to another….

M.G.L. c. 231, §85K (second paragraph) (emphasis added).

There is no merit in plaintiffs' argument that this provision applies only to "tort liability," and therefore does not immunize the Trustee Defendants against claims asserting violations of M.G.L. Chapters 93A or 110A. Supp. Opp'n at 3. Nothing in the second paragraph of §85K mentions tort liability or otherwise suggests that the immunity it grants is limited to tort liability. To the contrary, the provision's application to "liab[ility] … for any act or omission resulting in damage" spells out in the clearest of terms the Legislature's intent to immunize uncompensated trustees of educational institutions completely and against any kind of claim, regardless of the legal theory. M.G.L. c. 231, §85K (second paragraph) (emphasis added). Plaintiffs do not even try to explain how this language could reasonably be construed to exclude statutory claims from its broad and unambiguously defined immunity. They also fail to cite any case that has so held, and there is none.

Instead, plaintiffs' argument is based entirely on cases that have construed the wholly distinct language of the <u>first</u> paragraph of §85K, and that therefore have no relevance or even persuasive value in applying the <u>second</u> paragraph, which is the only paragraph that is relevant here. *See* cases cited in Supp. Opp'n at 3-4. The first paragraph of §85K establishes a cap on damages for "any cause of action based on <u>tort</u>" against a charitable corporation. M.G.L. c. 231, §85K (first paragraph) (emphasis added).[2] Because this cap applies by its terms only to "tort" claims, the cases on which plaintiffs rely quite unremarkably focused on whether claims under various statutes could be deemed "cause[s] of action based on <u>tort</u>," and thus subject to the damage cap in the first paragraph of §85K. *Id.* (emphasis added).[3]

The second paragraph of §85K, however, is critically different in several respects from that of the first paragraph, including in the fact that it does not mention the word "tort." Indeed, the language of the two paragraphs shows that they are intended to further entirely different legislative goals. The second paragraph reflects the Massachusetts Legislature's intent: (1) to immunize a <u>different set of defendants</u> than the first paragraph (namely, uncompensated trustees of educational institutions, rather than all the charitable

---

[2] The first paragraph of §85K provides, in relevant part, as follows:

> It shall not constitute a defense to any cause of action based on <u>tort</u> brought against a corporation … that said corporation … was a charity; provided, that if the <u>tort</u> was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation …, <u>liability</u> in any such cause of action <u>shall not exceed the sum of twenty thousand dollars</u> exclusive of interest and costs.

(Emphasis added.)

[3] Plaintiffs rely on the following cases, all of which apply and construe the damage cap established by the <u>first</u> paragraph of §85K: *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 679 N.E.2d 191 (1997); *MacMillan v. Mass. Soc. for the Prevention of Cruelty to Animals*, 140 F.3d 288, 307 (1st Cir. 1998); *Ayash v. Dana Farber Cancer Inst.*, 443 Mass. 367, 882 N.E.2d 667 (2005); *Birbiglia v. Saint Vincent Hospital, Inc.,* 427 Mass. 80, 692 N.E.2d 9 (1998). None of these cases addresses the grant of immunity provided by the <u>second</u> paragraph of §85K.

organizations that are subject to the first paragraph's damage cap); (2) to grant such uncompensated trustees <u>full immunity</u> from liability arising from their services (rather than a mere cap on damages); and (3) to immunize them against <u>any</u> claim (not just claims "based on tort"). Because the two paragraphs address entirely distinct subjects of legislative concern and do so with different language, and because the cases on which plaintiffs rely turn on the construction of a statutory term in the first paragraph that is not present in the second paragraph, those cases cannot reasonably be deemed to suggest any limitation on the broad immunity that the <u>second</u> paragraph provides to uncompensated trustees of educational institutions. *See, e.g., Forbush v. City of Lynn*, 35 Mass. App. Ct. 696, 701, 625 N.E.2d 1370, 1373 (1994) (courts should not "ignore[ ] the Legislature's careful choice of words" and should instead "accord[ ] discrete, and not identical, meanings" to different language that legislature has used in creating and modifying liabilities and immunities).

In short, there is no validity at all in plaintiffs' argument that the immunity provided by the second paragraph of §85K is limited to tort liability. Because the Trustee Defendants have established that they are statutorily immune from all of plaintiffs' state-law claims, all such claims should be dismissed against them.

**II.    THE IMMUNITY THAT M.G.L. c. 231, §85W, GRANTS TO UNCOMPENSATED TRUSTEES OF CHARITABLE ORGANIZATIONS APPLIES TO PLAINTIFFS' STATUTORY CLAIMS AS WELL AS THEIR TORT CLAIMS.**

Plaintiffs are similarly mistaken in asking the Court to interpret M.G.L. c. 231, §85W, as applying only to "tort liability." That statute provides in pertinent part:

> [N]o person who serves without compensation … as [a] … trustee of any nonprofit charitable organization … shall be liable for <u>any civil damages</u> as a result of <u>any acts or omissions</u> relating solely to the performance of his duties as [a] trustee."

(Emphasis added.) This provision, like the second paragraph of §85K, makes no mention of "tort" liability. Instead, it clearly evidences the Legislature's intent to grant broad immunity to uncompensated trustees of charitable organizations against liability for "civil damages," and does not suggest that the immunity is limited in any way by the theory of liability on which those damages are sought.[4] Indeed, the statute has actually been applied to immunize trustees against claims other than tort claims. *See Patriarca v. Center for Living and Working, Inc.,* No. 99689B (Mass. Super. Ct. Sep. 8, 1999) (1999 WL 791888 at *5) (dismissing breach of contract claims under §85W immunity). In short, because all of plaintiffs' claims against the Trustee Defendants seek "civil damages" as a result of purported "acts or omissions" relating to the performance of their duties as trustees, §85W by its plain and unambiguous terms immunizes the Trustee Defendants against all the state-law claims.

Plaintiffs' assertion that the broadly defined immunity of §85W should be limited to tort liability, merely because the phrase "tort liability" appears in the statute's title and in the name of the act, is not only baseless but borders on the frivolous. Supp. Opp'n at 5. This argument contravenes long-standing principles of statutory construction, which hold that the title of an act should not be considered unless the statute is ambiguous, and, even then, that "the <u>title</u> of an act <u>cannot control the plain provisions</u> of the act."

---

[4] Contrary to plaintiffs' sweeping and unsupported assertion that "[t]here is no evidence that the Legislature intended §85W to provide directors and officers of non-profit organization [sic] carte blanche civil immunity from all statutory schemes," the very language of §85W – granting immunity for "any" civil damages resulting from "any" acts or omissions – evidences precisely such intent. Supp. Opp'n at 6. *See Ciardi v. F. Hoffmann-LaRoche, Ltd.,* 436 Mass. 53, 60-61, 762 N.E.2d 303, 310 (2002) ("the primary source of insight into the intent of the Legislature is the language of the statute").

5

*American Family Life Assurance Co. v. Comm'r of Ins.,* 388 Mass. 468, 474, 446 N.E.2d 1061, 1065 (1983) (emphasis added). *See also Comm. v. Krasner*, 358 Mass. 727, 730, 267 N.E.2d 208, 210 (1971) (the "title to … [a] statute … cannot limit its operation to a field more narrow … than that established by the statute itself"); *MacEachern v. City of Boston*, 9 Mass. App. Ct. 907, 907, 403 N.E.2d 951, 952 (1980) (refusing to consider title of act where statutory language was unambiguous).[5]

The plain language of §85W evidences as clearly as possible the Legislature's intent to grant broad immunity to uncompensated trustees of a nonprofit charitable organization. Plaintiffs do not attempt to suggest any ambiguity in this provision, and there is none. The title therefore has no relevance in applying the statute, and even if the title were considered at all, it could not narrow the broad immunity that §85W explicitly grants against liability for "any civil damages." Because §85W plainly immunizes the Trustee Defendants from all the state-law claims in this action, including the statutory claims, all the state-law claims against them should be dismissed.

### III.    THE CHARITABLE IMMUNITY STATUTES APPLY TO PLAINTIFFS' FRAUD CLAIM.

Plaintiffs are also wrong in asserting that their fraud claim falls within the exception that §85W provides for "acts or omissions intentionally <u>designed to harm</u>." Supp. Opp'n at 6 (emphasis added). Plaintiffs cite no support for their assertion that a fraud claim alleges an act or omission "intentionally designed to harm." This failure is

---

[5]    The cases on which plaintiffs rely in urging the Court to limit the statute's immunity by reason of its title are inapplicable here because, unlike this case, they both involved questions as to the meaning and application of the statute that made it appropriate to consider the title. Moreover, neither case held that the title could limit the reach of the statute as determined by its plain language. *See Nunez v. A & M Rentals, Inc.*, 63 Mass. App. Ct. 20, 822 N.E.2d 743, 746-47 (2005) (addressing potential conflict between two applicable statutes); *Botello v. Massachusetts Port Authority*, 47 Mass. App. Ct. 788, 790, 716 N.E.2d 664, 666 (1999) (addressing whether statute imported notice requirement from another statute, and construing notice requirement).

6

not surprising, as the law is directly to the contrary. As the First Circuit concluded in addressing the requirements for federal bank fraud in *United States v. Kenrick*, 221 F.3d 19, 28-29 (1st Cir. 2000), it is "well settled," and has been recognized by "[c]ommentators of the 19th and 20th centuries," that an intent to deceive is <u>not</u> the equivalent of an intent to harm, and that "common law fraud has <u>no</u> additional 'intent to harm.'" *Citing, inter alia,* W. Page Keeton *et al.*, Prosser & Keeton on the Law of Torts, §107 at 741 (5th ed. 1984) (emphasis added). *See also United States v. Welch*, 327 F.3d 1081, 1104-06 (10th Cir. 2003) (same; no intent to harm required for mail or wire fraud).

    Moreover, plaintiffs' complaint does not even squarely allege that the Bradford Defendants intended to <u>deceive</u> the plaintiffs, much less to <u>harm</u> them (and, as discussed in the defendants' principal motions, plaintiffs have in any event failed to plead with particularity the requisite intent to deceive). *See* Amended Complaint ¶97 (alleging that the "Defendants" as a group made false statements "fraudulently, intentionally and/<u>or</u> with <u>reckless</u> disregard as to [their] truth or falsity … <u>or aided and abetted</u> in the making of such statements") (emphasis added). Because plaintiffs' complaint does not even adequately allege a fraud claim against the Trustee Defendants (and, by their own admission, <u>cannot</u> do so), much less any conduct that was intended to harm the plaintiffs, plaintiffs have failed to plead any facts which, if proven, might constitute an exception to the immunity provided by §85W.[6]

---

[6] As noted at page 24 of the Reply in Support of Bradford Defendants' Motion to Dismiss, plaintiffs have expressly acknowledged that they cannot link any of the Trustee Defendants to any of the alleged misstatements or omissions in the Official Statement. *See, e.g.,* T. Rowe Price plaintiffs' Opposition to Bradford Defendants' Motion to Dismiss at 51; McKeown plaintiffs' Opposition to Bradford Defendants' Motion to Dismiss at 22.

## IV. <u>PLAINTIFFS' DISCOVERY PROPOSAL SHOULD BE REJECTED BECAUSE IT IS FAR BROADER THAN NEEDED TO CONFIRM THE DISCRETE FACT THAT THE TRUSTEE DEFENDANTS WERE NOT COMPENSATED.</u>

At the hearing on defendants' motions to dismiss, the Court recognized that the Trustee Defendants' arguments for dismissal under the charitable immunity statutes involved a discrete factual issue that was outside the scope of the pleadings, namely, whether the Trustee Defendants had been compensated for their services as trustees of Bradford College. Although plaintiffs were (and still are) unable to articulate any reason to doubt the truth of Trustee Defendant Karen Sughrue's affidavit testimony that the Trustee Defendants had <u>not</u> been compensated, the Court allowed plaintiffs an opportunity to submit a proposal for limited discovery on this discrete issue of trustee compensation, solely for the purpose of applying the immunity statutes on a motion under Fed. R. Civ. P. 12(c) and 56.

In response, plaintiffs have proposed to review every one of the remaining documents that belong to Bradford College – nearly 60 boxes – which are in the possession of the College's bankruptcy counsel. The Court should reject this proposal because plaintiffs have failed to show that they need anything resembling such broad-ranging discovery to have a "reasonable opportunity" under Rule 12(c) to verify that the trustees were not compensated. Indeed, not only do plaintiffs acknowledge that "<u>not all</u> of the material in the boxes relates to the compensation issue," they do not claim that <u>any</u> of the 60 boxes (which they claim to have "already reviewed once") is likely to contain

anything relevant to the issue of the trustees' compensation.[7] Supp. Opp'n at 12 (emphasis added). Particularly where plaintiffs cannot point to any reason to believe that the trustees of the charitable, non-profit Bradford College might actually have been compensated, and where Ms. Sughrue has given her oath that they were not, there is no tenable justification for plaintiffs' sweeping discovery request.

Instead, the obvious disconnect between plaintiffs' request and the issue of the trustees' compensation strongly suggests that plaintiffs are seeking to take advantage of this narrow opportunity under Rules 12(c) and 56 to try to open the door to full-blown document discovery. Such a request should be denied because it is not proper in this limited procedural context, and also because it asks the Court to allow discovery that would contravene the discovery stay mandated by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(b)(3)(B) ("[i]n any private action arising under this chapter, <u>all discovery and other proceedings shall be stayed</u> during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party") (emphasis added).

---

[7]   Plaintiffs mischaracterize their dealings with the respective counsel of Bradford College and of the Bradford Defendants in asserting that the documents they seek to review were "voluntarily provided to them" by Bradford's bankruptcy counsel, that such counsel "voluntarily agreed" to provide them to plaintiffs, and that the Bradford Defendants are "unilaterally block[ing]" plaintiffs' access to the documents. Supp. Opp'n at 8, 10. In fact, Bradford College's bankruptcy counsel, as a courtesy, allowed the parties' respective counsel to briefly review approximately 150 boxes of Bradford College documents that were being stored in a building in Haverhill that was being sold in connection with the bankruptcy. The purpose of this exercise, which took some six hours on June 3, 2005, was solely to determine whether any documents should be retained in view of the pending litigation. All other documents were to be destroyed. Bradford College's bankruptcy counsel informed plaintiffs' counsel that they could not have additional access to the documents unless counsel for the Bradford Defendants agreed to such review. In light of the pendency of the motions to dismiss, which the Bradford Defendants believe should dispose of this action, as well as the significant burdens that such review would impose, counsel for the Bradford Defendants has not agreed to such access.

Plaintiffs defy reality in suggesting that the massive document review they seek does not qualify as "discovery" under PSLRA's stay provision. Supp. Opp'n at 10-11. The PSLRA's stay does not distinguish between discovery from parties and non-parties, but bars "all discovery" alike. *See Powers v. Eichen*, 961 F. Supp. 233, 235 (S.D. Cal. 1997). Where, as plaintiffs acknowledge, the non-party who is in possession of Bradford College's remaining documents has refused to allow plaintiffs to review them further without the consent of the Bradford Defendants, any order this Court might enter to compel such review would necessarily constitute "discovery." Plaintiffs are also disingenuous in suggesting that an order allowing them to review 60 boxes of Bradford College's documents would not "impos[e] a burden on the Defendants" or cause the defendants to "incur [any] expense." Supp. Opp'n at 8, 11. It is grossly unrealistic to assume that one party's review of a large number of documents in an ongoing and complex lawsuit will not cause its opponents to incur significant attorney's fees in reviewing the documents, as well as expenses in processing the documents. It is precisely such expenses and burdens that the PSLRA stay was intended to avoid. *See In re Lernout & Hauspie Sec. Litig.,* 214 F. Supp. 2d 100, 106 (D. Mass. 2002) (Congress enacted PSLRA stay in response to concerns about "indications that the cost of discovery often forces innocent parties to settle"), *citing* H.R. Conf. Rep. No. 104-369, at 37, 735 (1995).

Plaintiffs utterly fail to convince in arguing that their request falls under the very limited exception the PSLRA allows for "[p]articularized discovery" that a party needs to avoid "unfair prejudice." 15 U.S.C. §78u-4(b)(3)(B); *Lernout & Hauspie*, 214 F. Supp. 2d at 106 (stay may be aside only for "certain exceptional circumstances"). Plaintiffs

10

claim "unfair prejudice" here because, they assert, they purportedly have no other way to confirm that the Trustee Defendants were not compensated. Supp. Opp'n at 11. This plea rings hollow in light of plaintiffs' failure to offer any reason to believe that the Trustee Defendants were actually compensated; in light of their failure to provide any reason to believe that anything in the 60 boxes will show that the trustees were compensated; and in light of the undisputed availability of other, more limited and efficient, mechanisms to allow plaintiffs to satisfy themselves on this discrete issue. Plaintiffs trot out an entirely fanciful parade of possible problems with limited-scope depositions, but these assertions appear to be a ploy to distract the Court from the impropriety of their discovery request, as plaintiffs do not even broach the most obvious and efficient way to address the discrete factual question at issue here, namely, a narrowly crafted written interrogatory asking each Trustee Defendant to provide sworn confirmation that he or she did not receive various types of compensation or other benefits for his or her services for the College. Supp. Opp'n at 7-8. Because it is obvious that plaintiffs can confirm the Trustee Defendants' lack of compensation far more simply, directly, and efficiently than by reviewing 60 boxes of miscellaneous documents whose relevance to the issue at hand is questionable at best, they cannot show any "undue prejudice" under the PSLRA if they are not allowed to review those documents at this time.[8] And even if plaintiffs could satisfy such requirement, they make no attempt to explain how a request to review 60 bankers' boxes of unspecified documents (some 120,000 pages worth, assuming conservatively that each box contains 2,000 pages) could

---

[8] Indeed, plaintiffs' purported need to confirm the fact that the Trustee Defendants were not compensated is doubtful in the first instance in view of their acknowledged inability to link any of the Trustee Defendants to any of the alleged misstatements or omissions on which their state-law claims are based. *See* note 6 above.

11

reasonably be considered "particularized discovery," and it plainly is not. *See, e.g., Faulkner v. Verizon Communications, Inc.,* 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001) (request to review 45,000 documents not sufficiently "particularized" to meet undue prejudice exception to PSLRA discovery stay).

There is likewise no merit in plaintiffs' attempt to justify their overreaching discovery request by asserting that they are merely seeking to "investigate" their securities fraud claims, which they assert does not run afoul of PSLRA's discovery stay. Supp. Opp'n at 10.  The fact that the PSLRA requires plaintiffs to conduct a proper investigation <u>before</u> asserting a federal securities claim in no way suggests that a plaintiff may circumvent PSLRA's stay by asserting the need for additional "investigation" of claims after the claims have been filed.  To the contrary, one of Congress's stated purposes in enacting the PSLRA and its discovery stay was precisely to prevent plaintiffs from "fil[ing] frivolous lawsuits in order to conduct discovery in hopes of finding a sustainable claim…." *In re Lernout & Hauspie,* 214 F. Supp. 2d at 106, *quoting* S. Rep. No. 104-98 at 14 (1995).  Given the clarity of the Legislature's intent on this point, it would be frankly perverse to interpret the stay provision of the PSLRA as allowing plaintiffs to conduct discovery to seek to buttress their baseless claims (which they have already had several years to investigate). *See, e.g., SG Cowen Securities Corp. v. U.S. Dist. Ct. for the N. Dist. of Calif.,* 189 F.3d 909, 913 (9th Cir. 1999) ("a plaintiff's inability to muster facts sufficient to survive a motion to dismiss is not grounds for lifting the stay").

And finally, even if the PSLRA had never been enacted, plaintiffs' sweeping discovery request would be improper under the applicable discovery rules.  It is well

12

settled in this Circuit that fishing expeditions are not allowed, and that "discovery cannot be used as a vehicle for discovering a cause of action." *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir. 1987), *quoting* 4 Moore's Federal Practice ¶ 26.56[1], at 26-95 n.3 (1987). Where plaintiffs do not seek to justify their search of 60 boxes of documents other than by their purported need to find documents relating to the Trustee Defendants' compensation, but offer no basis to believe that the search will actually yield any such documents, and where they ignore the most obvious and efficient way to address the only factual question that is relevant at this procedural juncture, there can be little doubt that their discovery proposal is nothing more than a fishing expedition that should be rejected out of hand.

        THE BRADFORD DEFENDANTS
        By their attorneys,

        /s/ Scott A. Roberts
        Robert E. Sullivan, BBO #487820
        Scott A. Roberts, BBO #550732
        A. Lauren Carpenter, BBO #551258
        SULLIVAN, WEINSTEIN & McQUAY, P.C.
        Two Park Plaza
        Boston, MA 02116
Dated: November 15, 2005    (617) 348-4300
        Email: sroberts@swmlawyers.com

**CERTIFICATE OF SERVICE**

  I, A. Lauren Carpenter, hereby certify that a true and correct copy of the foregoing document was served by hand on all counsel of record on this 15th day of November, 2005.

              /s/ A. Lauren Carpenter
              A. Lauren Carpenter